IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| CORTEX MCP, INC., | § | |
| | § | |
| PLAINTIFF | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 6:23-CV-00048-FB |
| | § | |
| VISA, INC. | § | |
| | § | |
| DEFENDANT | § | |

**DEFENDANT VISA INC.'S MOTION TO DISMISS PLAINTIFF'S CLAIMS FOR INDIRECT INFRINGEMENT AND PRE-SUIT WILLFUL INFRINGEMENT IN PLAINTIFF'S FIRST AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ......................................................................................................... 1

II.     PLAINTIFF'S ALLEGATIONS ................................................................................. 2

III.    LEGAL STANDARDS ............................................................................................... 4

IV.     ARGUMENT ............................................................................................................... 4

     A.      Cortex's Claims for Pre-Suit Indirect Infringement of the '854, '859, and '973 Patents Should Be Dismissed Because Cortex Fails to Allege Any Pre-Suit Knowledge of These Patents or Visa's Alleged Infringement ................ 4

     B.      Cortex's Claims for Pre-Suit Willful and Indirect Infringement of the '531 Patent Should be Dismissed Because Cortex Fails to Plausibly Allege Pre-Suit Knowledge of the Patent or Visa's Alleged Infringement ............................ 7

          1.      Cortex Fails to Plead Pre-Suit Knowledge of the '531 Patent ................... 8

          2.      Cortex Fails to Plead Pre-Suit Knowledge of *Infringement* of the '531 Patent ......................................................................................................... 9

     C.      Cortex's Post-Suit Indirect Infringement Claims Should Be Dismissed ............. 12

          1.      Cortex Fails to Plead Specific Intent to Cause Induced Infringement ....................................................................................................... 12

          2.      Cortex's Generic Allegations of Contributory Infringement Are Deficient ....................................................................................................... 17

V.      CORTEX'S INDIRECT INFRINGEMENT AND PRE-SUIT WILLFUL INFRINGMENT CLAIMS SHOULD BE DISMISSED WITH PREJUDICE ............... 19

VI.     CONCLUSION ........................................................................................................... 20

i

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Addiction & Detoxification Inst. L.L.C. v. Carpenter*,
   620 F. App'x 934 (Fed. Cir. 2015) ...................................................................13

*Affinity Labs of Texas, LLC v. Blackberry Ltd.*,
   No. W:13-CV-362, 2014 WL 12551207 (W.D. Tex. Apr. 30, 2014)................................7

*Affinity Labs of Texas, LLC v. Toyota Motor N. Am. Inc.*,
   No. W:13-CV-365, 2014 WL 2892285 (W.D. Tex. May 12, 2014) .........................14, 17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................4, 9, 18

*Ballard v. Devon Energy Prod. Co., L.P.*,
   678 F.3d 360 (5th Cir. 2012) ....................................................................4, 19

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................................4

*Bench Walk Lighting LLC v. LG Innotek Co.*,
   530 F. Supp. 3d 468 (D. Del. 2021)..................................................................11

*BillJCo, LLC v. Apple Inc.*,
   583 F. Supp. 3d 769 (W.D. Tex. 2022).................................................1, 7, 8, 10, 11, 17

*Blackberry Ltd. v. Nokia Corp.*,
   No. 17-cv-155-RGA, 2018 WL 1401330 (D. Del. Mar. 20, 2018) ...........................17, 19

*Bot M8 LLC v. Sony Corp. of Am.*,
   4 F.4th 1342 (Fed. Cir. 2021) ...........................................................................6

*Collins v. Morgan Stanley Dean Witter*,
   224 F.3d 496 (5th Cir. 2000) ..........................................................................16

*Commil USA, LLC v. Cisco Sys., Inc.*,
   575 U.S. 632 (2015)......................................................................................4

*CyWee Grp. Ltd. v. HTC Corp.*,
   312 F. Supp. 3d 974 (W.D. Wash. 2018).............................................................14

*Diamond Grading Techs. Inc. v. Am. Gem. Soc'y*,
   No. 2:14-cv-1161, 2016 WL 3902482 (E.D. Tex. Mar. 30, 2016) ....................................5

*Dynamic Data Techs. v. Google LLC*,
   No. 19-1529-CFC, 2020 WL 1285852 (D. Del. Mar. 18, 2020), *report and
   recommendation adopted sub nom. Dynamic Data Techs., LLC v. Google
   LLC*, No. CV 19-1529-CFC, 2020 WL 3103786 (D. Del. June 11, 2020)........................11

*Fluidigm Corp. v. IONpath, Inc.*,
    No. C 19-05639 WHA, 2020 WL 408988 (N.D. Cal. Jan. 24, 2020)................................11

*Fujitsu Ltd. v. Netgear Inc.*,
    620 F.3d 1321 (Fed. Cir. 2010)................................................................................17

*In re Bill of Lading Transmission and Processing Sys. Patent Litig.*,
    681 F.3d 1323 (Fed. Cir. 2012)..........................................................................18, 19

*Iron Oak Techs., LLC v. Acer Am. Corp.*,
    No. 6:17-CV-00143-RP-JCM, 2017 WL 9477677
    (W.D. Tex. Nov. 28, 2017) ......................................................................................14

*Iron Oak Techs., LLC v. Dell, Inc.*,
    No. 1:17-CV-999-RP, 2018 WL 1631396 (W.D. Tex. Apr. 4, 2018) .............................18

*Joao Control & Monitoring Sys., LLC v. Protect Am., Inc.*,
    No. 1-14-CV-134-LY, 2015 WL 3513151 (W.D. Tex. Mar. 24, 2015) ..........................12

*LaserDynamics USA, LLC v. Cinram Grp. Inc.*,
    No. 15 Civ. 1629 (RWS), 2015 WL 6657258 (S.D.N.Y. Oct. 30, 2015) .........................11

*MasterObjects, Inc. v. Amazon.com, Inc.*,
    No. C 20-08103 WHA, 2021 WL 4685306 (N.D. Cal. Oct. 7, 2021) ............................6, 7

*Maxell Ltd. v. Apple Inc.*,
    No. 5:19-CV-00036-RWS, 2019 WL 7905455 (E.D. Tex. Oct. 23, 2019) ........................5

*Memory Integrity, LLC v. Intel Corp.*,
    144 F. Supp. 3d 1185 (D. Or. 2015) ...............................................................14, 15

*Michigan Motor Techs. LLC v. Volkswagen Aktiengesellschaft*,
    472 F. Supp. 3d 377 (E.D. Mich. 2020)..........................................................8, 9, 15

*MONEC Holding AG v. Motorola Mobility, Inc.*,
    897 F. Supp. 2d 225 (D. Del. 2012).........................................................................7

*Nncrystal US Corp. v. Nanosys, Inc.*,
    No. 19-1307-RGA, 2022 WL 1091283 (D. Del. Apr. 12, 2022)........................................6

*Polaris PowerLED Techs., LLC v. Vizio, Inc.*,
    No. SACV 18-1571 JVS (DFMx), 2019 WL 3220016 (C.D. Cal. May 7,
    2019) .........................................................................................................11

*Stephens v. John Bean Techs. Corp.*,
    No. 6:18-CV-00133-ADA, 2018 WL 7288584 (W.D. Tex. Dec. 12, 2018) ....................19

*Takeda Pharms. U.S.A., Inc. v. West-Ward Pharm. Corp.*,
    785 F.3d 625 (Fed. Cir. 2015)............................................................................15

*Traxcell Techs., LLC v. Verizon Wireless Pers. Commc'ns, LP*,
    No. 6:20-CV-01175-ADA, 2022 WL 299732 (W.D. Tex. Jan. 31, 2022) .......................19

*USC IP P'ship, L.P. v. Facebook, Inc.*,
    No. 6:20-CV-00555-ADA, 2021 WL 3134260 (W.D. Tex. July 23, 2021).......................5

*Vasudevan Software, Inc. v. TIBCO Software Inc.*,
    No. C 11-06638 RS, 2012 WL 1831543 (N.D. Cal. May 18, 2012) ...................................6

iv

## I.      INTRODUCTION

Plaintiff Cortex MCP, Inc.'s ("Cortex's") First Amended Complaint (Dkt. 25; "FAC" or "Amended Complaint") fails to cure the deficiencies in Cortex's initial complaint.  Visa Inc. ("Visa") thus moves again to dismiss Cortex's willful and indirect infringement claims on the same grounds on which it did five weeks ago.  Dkt. 21.  The Amended Complaint continues to rely on boilerplate recitations of legal elements and fails to plead facts that sufficiently allege indirect or pre-suit willful infringement by Visa as to any of the Asserted Patents.[1]  Both willful and indirect infringement—induced as well as contributory—require, at a minimum, *knowledge* of the allegedly infringed patent(s).  *See, e.g.*, *BillJCo, LLC v. Apple Inc.*, 583 F. Supp. 3d 769, 775 (W.D. Tex. 2022).  Moreover, willful and indirect infringement require knowledge not only of the patents-in-suit, but also of the nature of the claimed infringement.  *Id.*  Plaintiff does not, and cannot, allege facts to support pre-suit knowledge of any of the Asserted Patents, and certainly not that Visa had knowledge that any of its products infringe any of the Asserted Patents, and in what manner.  Indeed, in its Amended Complaint, Cortex is still selectively citing (but failing to attach) the same purported communications that were insufficient to establish knowledge in its initial complaint.  Furthermore, Plaintiff still fails to plead factual allegations to support that Visa had specific intent to infringe, a required element of induced infringement, or that the accused product has no substantial non-infringing use, a required element of contributory infringement.

Given the continued deficiencies in Plaintiff's Amended Complaint, Cortex's claims for pre-suit willful infringement and the entirety of Plaintiff's indirect infringement claims should be

---

[1] The Asserted Patents are U.S. Patent Nos. 9,251,531 (the "'531 Patent"); 9,954,854 (the "'854 Patent"); 10,749,859 (the "'859 Patent"); and 11,329,973 (the "'973 Patent") (collectively, the "Asserted Patents").

dismissed with prejudice.

## II.     PLAINTIFF'S ALLEGATIONS

After Visa moved to dismiss Cortex's initial complaint on the same grounds asserted here, Cortex filed the Amended Complaint alleging patent infringement on April 10, 2023.  Dkt. 25. According to Cortex, the Asserted Patents are for "Officially Verifiable Electronic Representation" or "OVER File technology," which Cortex alleges "allows consumers to store credit card data, and associated personal identifying information, on a mobile device without the associated risk if this data is accessed by hackers."  *Id.* ¶ 9.[2]  Cortex accuses the Visa Token Service ("VTS" or the "accused product") of infringing Cortex's patents.  *See id.* ¶¶ 16, 37, 60, 80.

As in its initial complaint, Cortex alleges that its representatives communicated with Visa and Visa's subsidiary in 2013 and 2016-2017.  *Id.* ¶¶ 10, 11.  Specifically, Cortex asserts that in 2013, it met with representatives from CyberSource—a payment platform owned by Visa—"to discuss a possible business or commercial relationship between Cortex and Visa[,]" and the parties entered into a non-disclosure agreement.  *Id.* ¶ 10.  While Cortex alleges that it presented its "OVER File technology" to Visa in 2013, Cortex acknowledges that this presentation did not address the Asserted Patents since none of the Asserted Patents had issued at that time.  *Id.*; *see* Dkt. 25-1, 25-2, 25-3, 25-4 (FAC Exs. 1-4).  In these communications, Cortex alleges only that it "informed CyberSource that it had filed a patent application for the OVER File technology[.]" FAC ¶ 10.

Cortex further contends that in "April 2016," it emailed Visa information on the "OVER File technology" in response to a request from Visa for "a summary of potential 'synergies' between the two companies, again in the context of a possible business relationship."  *Id.* ¶ 11.

---

[2] For the avoidance of doubt, Visa disputes Cortex's characterization of the Asserted Patents.

Inexplicably, Cortex still does not attach the purported email to the Amended Complaint but alleges that the email provided "a three-page overview of Cortex's technologies and their potential application to Visa's Digital Enablement Program" and a "one-page summary of potential synergies between Cortex and Visa[.]" *Id.*

Cortex selectively quotes from these unattached documents to allege that Cortex informed Visa that its "'Tokenization capabilities can add significant value, IP, and capacities to the Visa Token Service'" and could be "'an effective leverage tool for Visa across the board.'" *Id.*  Notably, the Amended Complaint fails to include a single quotation from the documents identifying the title, patent number, or claim language of any of the Asserted Patents.  Indeed, Cortex merely asserts, without quotation, that the documents "expressly stated that Cortex had been issued an OVER File patent[.]" *Id.*  Nonetheless, Cortex appends a citation to the only patent issued at the time – the '531 patent.  *Id.*  But Cortex does not allege that it actually identified the '531 patent to Visa in its communications.  *Id.*  While claiming that Cortex informed Visa it had "patent applications that were 'Near Issuance,' referring to the '854 Patent," Cortex never alleges that the application leading to the '854 Patent was actually cited in the communication or that the '854 Patent was otherwise identified.  *Id.*  Moreover, the '854 Patent was verifiably not "near issuance" in April 2016; the application leading to the '854 Patent was only filed on December 29, 2015, the application was not published until after April 2016, and the '854 Patent would not issue for two more years—on April 24, 2018.  FAC Ex. 2.

Again, without any substantiation, Cortex finally alleges that in early 2017, Cortex emailed "substantially the same information" to Visa's Executive Vice President.  FAC ¶ 11.  Cortex does not allege any further contact of any kind between Cortex and Visa (or CyberSource) before the filing of this action.

3

## III.   LEGAL STANDARDS

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To satisfy the plausibility standard, a plaintiff must plead facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, at 678.  Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  A complaint that does not state a plausible claim for relief cannot survive a motion to dismiss. *Id.*  Moreover, it is within the Court's discretion to reject subsequent amendments and dismiss with prejudice when, as here, Plaintiff has failed to cure deficiencies, and any proposed amendment would be futile. *See Ballard v. Devon Energy Prod. Co., L.P.*, 678 F.3d 360, 364 (5th Cir. 2012).

As demonstrated below, Cortex's Amended Complaint continues to fall well short of pleading indirect or pre-suit willful infringement, and these claims should be dismissed with prejudice.

## IV.   ARGUMENT

### A.   Cortex's Claims for Pre-Suit Indirect Infringement of the '854, '859, and '973 Patents Should Be Dismissed Because Cortex Fails to Allege Any Pre-Suit Knowledge of These Patents or Visa's Alleged Infringement[3]

It is black letter patent law that liability for indirect infringement "attaches only if the defendant knew of the patent and that the induced acts constitute patent infringement." *Commil*

---

[3] Cortex's Amended Complaint does not include claims for willful infringement of these three patents.  If Cortex asserts such claims, Visa reserves the right to move to dismiss or otherwise respond to those claims.

4

*USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015).  Thus, at a minimum, to "allege indirect infringement, the plaintiff must plead specific facts sufficient to show that the accused infringer had actual knowledge of the patents-in-suit, or was willfully blind to the existence of the patents-in-suit."  *USC IP P'ship, L.P. v. Facebook, Inc.*, No. 6:20-CV-00555-ADA, 2021 WL 3134260, at \*1, \*3 (W.D. Tex. July 23, 2021) (dismissing pre-suit indirect infringement claims).  However, Cortex fails to allege any pre-suit knowledge of the '854, '859, and '973 Patents at all—or even communications that could have related to these patents.

Cortex's Amended Complaint relies on the same purported communications as its initial complaint, which occurred between Cortex and CyberSource and/or Visa in 2013, 2016, and 2017. FAC ¶¶ 10-11.  Yet, the '854, '859, and '973 Patents were all issued well after these alleged pre-suit communications concluded, the final purported communication being in "early 2017." *Compare* FAC ¶ 11 *with* FAC Exs. 2-4.[4]  Indeed, Cortex does not, and cannot, allege that any of the pre-suit communications cited any of these three patents, and Cortex does not make any other allegations that support any inference that Visa knew of the existence of these patents.  As such, Cortex's allegations as to the '854, '859, and '973 Patents cannot meet the basic threshold that Visa had pre-suit knowledge of the patents.

Cortex may argue that it identified the ***application*** that led to the '854 Patent in pre-suit communications to Visa, but this is not enough to plausibly allege knowledge of the '854 Patent itself.  *Id.* ¶ 11.  "Knowledge of a patent application alone is insufficient to demonstrate knowledge of the later issued patent."  *Maxell Ltd. v. Apple Inc.*, No. 5:19-CV-00036-RWS, 2019 WL 7905455, at \*5 (E.D. Tex. Oct. 23, 2019); *see also Diamond Grading Techs. Inc. v. Am. Gem.*

---

[4] The '854 Patent issued April 24, 2018; the '859 Patent issued August 18, 2020; and the '973 Patent issued May 10, 2022.

*Soc'y*, No. 2:14-cv-1161, 2016 WL 3902482, at \*2-3 (E.D. Tex. Mar. 30, 2016) ("[M]ere notice of the pendency of a patent application is not sufficient to support a finding of willful infringement of the subsequently issued patent: . . . [f]iling an application is no guarantee any patent will issue."); *Nncrystal US Corp. v. Nanosys, Inc.*, No. 19-1307-RGA, 2022 WL 1091283, at \*1 (D. Del. Apr. 12, 2022) (allegations that defendant was aware of "the application that became the [] patent, are not, as a matter of law, sufficient to plausibly allege pre-suit knowledge of the [] patent"); *MasterObjects, Inc. v. Amazon.com, Inc.*, No. C 20-08103 WHA, 2021 WL 4685306, at \*3 (N.D. Cal. Oct. 7, 2021) ("Knowledge of a patent cannot be plausibly alleged when the triggering event occurred prior to the issuance of the patent"); *Vasudevan Software, Inc. v. TIBCO Software Inc.*, No. C 11-06638 RS, 2012 WL 1831543, at \*3 (N.D. Cal. May 18, 2012) ("[M]ere alleged awareness of the [] patent application does not imply the requisite knowledge of the existence of the later-issued patent.").  Any allegations that Cortex informed Visa of the application leading to the '854 Patent, even if true, are insufficient to support any claim for pre-suit indirect infringement of that patent.

Moreover, Cortex's allegations that its pre-suit communications referred to the application for the '854 patent are themselves vague and implausible.  FAC ¶ 11.  Cortex purportedly described an undefined patent application as being "Near Issuance" (*id.*), but the '854 Patent was ***not*** near issuance at the time of that communication; it would only issue more than two years later, and the application was filed only a few months before the alleged communication.  FAC Ex. 2.  These inconsistencies show that Cortex has not plausibly alleged even pre-suit knowledge of the patent ***application***—let alone the patent itself.  *See Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1346 (Fed. Cir. 2021) (A "patentee may subject its claims to early dismissal by pleading facts that are inconsistent with the requirements of its claims.").

As to the '859 or '973 Patents, the Amended Complaint does not contain any allegations relating to communications about these patents (or their applications).  Nor can Visa's knowledge be inferred from any claim that Visa was informed of Cortex's other patent, the '531 Patent, discussed further below.  There is no "rule that notice of one patent in a portfolio or large family constitutes constructive notice of every patent in that portfolio or family."  *BillJCo*, 583 F. Supp. 3d at 776; *see also Affinity Labs of Texas, LLC v. Blackberry Ltd.*, No. W:13-CV-362, 2014 WL 12551207, at *6 (W.D. Tex. Apr. 30, 2014) ("the defendant's awareness of a plaintiff's patent portfolio is not enough to support a willful blindness claim to defeat a motion to dismiss"); *MasterObjects*, 2021 WL 4685306, at *3 ("Allegations of general knowledge of a patent family, or a patent portfolio, are insufficient to allege specific knowledge of a particular patent"); *MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 232 n.6 (D. Del. 2012) ("[A]ctual (not constructive) knowledge of the patent-in-suit is necessary to state a claim for indirect infringement.").  Moreover, even if Plaintiff had adequately alleged knowledge of the '854, '859, and '973 Patents (it has not), Plaintiff certainly has not alleged knowledge of infringement of those patents, as described *infra* § IV.B.2.

Cortex's claims for pre-suit induced and contributory infringement of the '854, '859, and '973 Patents should be dismissed because it has failed to plead Visa had any knowledge of those patents.

### B.   Cortex's Claims for Pre-Suit Willful and Indirect Infringement of the '531 Patent Should be Dismissed Because Cortex Fails to Plausibly Allege Pre-Suit Knowledge of the Patent or Visa's Alleged Infringement

As described *supra* § IV.A, liability for pre-suit indirect infringement attaches only if the defendant knew of the Asserted Patent *and* that its conduct infringed the Asserted Patent.  *BillJCo*, 583 F. Supp. 3d at 777 ("Mere knowledge of the Asserted Patents is not enough"; a defendant must also have knowledge "that it infringed the Asserted Patents" and of the products accused of

infringement).  Similarly, to "state a claim for willful infringement, a plaintiff must allege facts plausibly showing that the accused infringer: (1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent."  *Id.* at 775.  Here, the Amended Complaint does not even plausibly allege that Visa had knowledge of the '531 Patent, and it includes no allegations whatsoever to support a contention that Visa had knowledge of any claimed infringement of the patent.  Accordingly, the claims for pre-suit indirect and willful infringement of the '531 Patent should also be dismissed.

### 1.    Cortex Fails to Plead Pre-Suit Knowledge of the '531 Patent

While Cortex alleges that relevant communications occurred during the term of the '531 Patent,[5] Cortex still does not attach any purported communications to the Amended Complaint. Visa raised Cortex's failure to attach these documents in its initial motion to dismiss (*see* Dkt. 21 at 7), yet Cortex continues to obscure them, selectively quoting from the documents instead of producing them for the Court's benefit or even quoting them plainly.  The Amended Complaint thus remains deficient, as it lacks sufficient factual detail to plausibly allege that the communications put Visa on notice of the '531 Patent.  *See Michigan Motor Techs. LLC v. Volkswagen Aktiengesellschaft*, 472 F. Supp. 3d 377, 384 (E.D. Mich. 2020) (dismissing willful infringement based on communication where plaintiff "did not attach a copy of the referenced letter" and "never specified what the letter stated[]").

Cortex alleges that in "April 2016, representatives from Visa requested from Cortex a

---

[5] Cortex alleges communications also occurred in 2013 (FAC ¶ 10), but this was before issuance of the '531 Patent and therefore cannot support pre-suit knowledge for the reasons discussed in the preceding Section.

summary of potential 'synergies' between the two companies," and in response, Cortex sent documents relating to "Cortex's technologies" and "potential synergies between Cortex and Visa." FAC ¶ 11.  Although the Amended Complaint includes quotes from these documents, Cortex tellingly does not include a single quote referencing the '531 Patent.  Cortex merely asserts that one of the documents "expressly stated that Cortex had been issued an OVER File patent," but Cortex does not provide any quotation of this purported statement.  *Id.*  Cortex then cites the '531 Patent as the "OVER File patent" that was issued at the time, but never alleges that the '531 Patent was cited in the communications.  *Id.*

These allegations do not plausibly allege Visa had knowledge of the '531 Patent at the time.  Plaintiff's crafty pleading never states that Cortex squarely identified the '531 Patent to Visa.  Cortex never alleges, for example, that it provided Visa a copy of the '531 Patent or the patent number, or that it otherwise directed Visa to the '531 Patent specifically.  Even viewing the allegations in the light most favorable to Cortex, the Amended Complaint at most suggests Cortex informed Visa that there may exist **some** patent for "OVER File technology" without putting Visa on notice of any specific patent.  Such conclusory and unclear allegations are insufficient to "state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678; *see also Michigan Motor Techs. LLC*, 472 F. Supp. 3d at 384.

## 2.  Cortex Fails to Plead Pre-Suit Knowledge of *Infringement* of the '531 Patent

In addition to Cortex's failure to allege Visa's pre-suit knowledge of the '531 Patent, a second independent ground for dismissal is that Cortex's allegations offer no support for any conclusion that Visa knew or should have known the accused VTS product infringed the '531 Patent.  Even if Cortex had sufficiently alleged knowledge of the '531 Patent (it has not), "knowledge of the Asserted Patents is not enough" to assert claims of willful and indirect

infringement; the patent owner must also plausibly allege "the accused infringer knew of its infringement." *BillJCo*, 583 F. Supp. 3d at 777.

The Amended Complaint does not allege facts plausibly demonstrating that Visa knew either of any direct infringement, or that it had induced acts constituting infringement.  All alleged pre-suit communications between Visa and Cortex occurred to "discuss a possible business or commercial relationship between Cortex and Visa" and consider "potential 'synergies' between the two companies."  FAC ¶¶ 10-11.  Cortex never alleges that it accused Visa of infringement in pre-suit communications, much less the nature and manner of infringement.  Instead, the focus was on "Cortex's technologies" and how they could apply to "Visa's Digital Enablement Program," a suite of functionalities encompassing all manner of digital processing.  *Id.* ¶ 11.

Alleged statements that Cortex's capabilities could "add significant value, IP, and capacities to the Visa Token Service" and that "Enhanced Tokenization Capabilities" could provide a "[c]ritical supporting IP portfolio" do nothing to change this analysis.  *Id.* The references to IP are vague and could mean multiple things, including non-patent forms of IP (*i.e.*, copyrights, trademarks, trade secrets) or patents covering any number of technologies, products, or product features.  Moreover, these references to "IP" are in the context of the value of Cortex's technology, rather than any alleged infringement by Visa of any issued patent.  *Id.*  Cortex's allegation that the communications mentioned "infringement" by unnamed "Wallet Solution providers" is equally unavailing.  Cortex does not allege what is meant by "Wallet Solution," who the "Wallet Solution providers" were, that Visa offered an infringing "Wallet Solution," or what aspect, if anything, of Visa's alleged "Wallet Solution" was infringing.  *Id.*

Such vague and conclusory allegations of "notice" are routinely found insufficient to demonstrate knowledge of infringement, particularly when plaintiffs elect not to provide the

underlying communication.  For example, in *BillJCo*, a court in this District dismissed pre-suit willful and indirect infringement claims where the patentee relied on vague and incomplete allegations of correspondence to support knowledge of infringement but did not attach the correspondence to the complaint.  583 F. Supp. 3d at 777 (noting that the Court was "not privy to the June 2019 letter or its contents—and it [was] unclear why.").  Although the complaint alleged that the patentee notified the defendant "of at least some of the Asserted Patents," the court noted, "Mere knowledge of the Asserted Patents is not enough."  *Id.*  The *BillJCo* court found that the "Complaint does not allege that [plaintiff's] June 2019 Letter notified [defendant] that it infringed the Asserted Patents or identified [defendant] products accused of infringement[.]" *Id.*  As a result, plaintiff had not "sufficiently pleaded pre-suit willful infringement" or induced or contributory infringement.  *Id.*; *see also Bench Walk Lighting LLC v. LG Innotek Co.*, 530 F. Supp. 3d 468, 492 (D. Del. 2021) (finding purported notice letter insufficient to establish knowledge when, among other things, it "does not appear to reference most of the Accused [] Products," and it "includes no attempt to describe *how* it is that [the accused product] is said to be infringing the patents that are specifically referenced therein.").[6]

---

[6] *See also Fluidigm Corp. v. IONpath, Inc.*, No. C 19-05639 WHA, 2020 WL 408988, at *5 (N.D. Cal. Jan. 24, 2020) ("Patent owners did allegedly notify defendant of the '104 patent.  But, notably, the complaint never alleges that the letter accused defendant of infringement, much less detailed *how* defendants allegedly infringed"); *Dynamic Data Techs. v. Google LLC*, No. 19-1529-CFC, 2020 WL 1285852, at *2 (D. Del. Mar. 18, 2020), *report and recommendation adopted sub nom. Dynamic Data Techs., LLC v. Google LLC*, No. CV 19-1529-CFC, 2020 WL 3103786 (D. Del. June 11, 2020) (finding no pre-suit knowledge of infringement when the letter identifying the patents "did not allege that Google infringed any of the patents-in-suit, let alone explain why it is that the accused Google products at issue, … infringed those particular patents"); *LaserDynamics USA, LLC v. Cinram Grp. Inc.*, No. 15 Civ. 1629 (RWS), 2015 WL 6657258, at *6 (S.D.N.Y. Oct. 30, 2015) (dismissing induced infringement claim because notice letter, while identifying the asserted patents, did not make any specific infringement charge or provide the bases for any infringement claims and was thus insufficient to allege knowledge of "a plausibly high risk of infringement"); *Polaris PowerLED Techs., LLC v. Vizio, Inc.*, No. SACV 18-1571 JVS (DFMx),

Cortex's Amended Complaint is devoid of allegations that its pre-suit communications alleged, much less adequately explained, that the accused product in this case infringed any specific Cortex intellectual property, let alone any of the Asserted Patents.  All of Cortex's claims for pre-suit indirect or willful infringement should be dismissed.[7]

### C.    Cortex's Post-Suit Indirect Infringement Claims Should Be Dismissed

In addition to the reasons discussed above for dismissal of pre-suit indirect infringement, Cortex fails to plead facts plausibly supporting a conclusion that Visa had the required "specific intent" to support induced infringement or that the accused product lacks any substantial non-infringing use to support contributory infringement.   Thus, Cortex's indirect infringement allegations cannot stand, whether pre- or post-suit.

#### 1.    Cortex Fails to Plead Specific Intent to Cause Induced Infringement

"To properly state a claim for induced infringement, a complaint must plead facts that plausibly show that the defendant has specific intent to cause another party's direct infringement and knew that the other party's acts constituted infringement."  *Joao Control & Monitoring Sys., LLC v. Protect Am., Inc.*, No. 1-14-CV-134-LY, 2015 WL 3513151, at *5 (W.D. Tex. Mar. 24, 2015).  "[S]imply recit[ing] the legal conclusion that Defendants acted with specific intent[]" fails to plead "facts that would allow a court to reasonably infer that Defendants had the specific intent

---

2019 WL 3220016, at *3 (C.D. Cal. May 7, 2019) (no pre-suit knowledge of infringement even where plaintiff notified defendant that it may be infringing the patents because plaintiff's letter "did not accuse [defendant] of infringement," and it "provide[d] scarce information about the specific acts of infringement alleged … without any guidance as to how certain [defendant] products were infringing or what features were at issue.").

[7] As described *supra*, in the event the Court finds pre-suit knowledge of the '854, '859, or '973 Patents has been sufficiently pled, the claims for indirect infringement of these Patents should nonetheless be dismissed for the additional reasons stated in this Section; knowledge of infringement has not been sufficiently pleaded.

to induce infringement." *Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App'x 934, 938 (Fed. Cir. 2015).

While Cortex attempts to dress its Amended Complaint with more detail than the bare-bones links cited in the initial complaint, Cortex's superficial descriptions fail to add any substance to Cortex's allegations.  Cortex continues to allege inducement based on general references to Visa and CyberSource's advertisements, product descriptions, operating manuals, and instructional documents without reciting any specific facts that can plausibly show the required specific intent to cause infringement.  *See* FAC ¶¶ 27, 50, 70, 93.  Cortex's new descriptions of these cited sources amount to nothing more than general overviews of the purpose of the sources and a few high-level quotes on the business of tokenization and its potential uses, not information about the underlying technology, and certainly not any reference to the patent claims Plaintiff asserts are infringed or its alleged "OVER File Technology."  *Id.*

Indeed, the totality of Cortex's allegations regarding Visa and CyberSource's websites and advertisements is that they:

> "provide[] 'application program interfaces' (i.e., software) and offer[] tutorials and webinars on how to implement Visa's technological solutions, including the Visa Token Service";

> "provide[] instructions to 'Issuer Banks,' 'Merchants,' and 'Independent Developers' on how to implement Visa Token Service, and suppl[y] application program interfaces that aid in tokenization processes[]";

> "advertise[] that [Visa's] "'tokenization technologies can empower banks, merchants and the wider payments ecosystem to boost authorization, drive innovation and create new digital commerce experiences for everyone'";

> "advertise[] to retailers 'a suite of fast, comprehensive solutions' to 'accelerate your business's adoption of emerging network tokenization technologies[]'";

13

"tout[] the security and economic benefits of tokenization and offer[] 'modular solutions' to businesses around the globe[]"; and

"provide detailed instructions to purchasers of CyberSource's 'Token Management Service' software on how to implement a tokenization service." *Id.*

These allegations do not suggest that Visa specifically intended to cause a third party to *infringe* the Asserted Patents; rather, they merely suggest that Visa intended to *market and sell* its services in the ordinary course, completely divorced from any intent to induce any infringement of undefined technology purportedly disclosed in the patents. *See Affinity Labs of Texas, LLC v. Toyota Motor N. Am. Inc.*, No. W:13-CV-365, 2014 WL 2892285, at *7 (W.D. Tex. May 12, 2014) ("Plaintiff[']s generalized allegations that Toyota induced others to infringe the Asserted Patents through its marketing and sales tactics are likewise insufficient.").

Indeed, Cortex's allegations are entirely disconnected from the Asserted Patents. "Where defendants have not touted the benefits of the accused products in ways that track the asserted patents, courts generally do not infer specific intent." *Memory Integrity, LLC v. Intel Corp.*, 144 F. Supp. 3d 1185, 1195 (D. Or. 2015); *see also CyWee Grp. Ltd. v. HTC Corp.*, 312 F. Supp. 3d 974, 980 (W.D. Wash. 2018) (finding insufficient assertions that defendants "create and disseminate product manuals, instructions, and marketing materials" when the complaint "offers no specific details about those promotional and instructional materials" to show that defendants intended to induce infringement "rather than simply describ[e] how the [accused products] work"); *Iron Oak Techs., LLC v. Acer Am. Corp.*, No. 6:17-CV-00143-RP-JCM, 2017 WL 9477677, at *5 (W.D. Tex. Nov. 28, 2017) (recommending dismissal of claims of induced infringement where "[t]he claims are more akin to 'naked assertions devoid of further factual enhancement' because Iron Oak does not explain in its Complaint how the Warranty contains specific facts regarding Acer's intent to induce infringement."). Because Cortex's citations are merely to "ordinary acts

14

incident to product distribution, such as offering customers technical support or product updates," they cannot establish the requisite intent to infringe. *Memory Integrity*, 144 F. Supp. 3d at 1195; *see also Michigan Motor Techs. LLC*, 472 F. Supp. 3d at 385-86.

Even if Cortex had cited sufficient detail demonstrating that Visa's instructions describe an infringing mode (it has not), to find inducement based on "advertising an infringing use or instructing how to engage in an infringing use[,] . . . such instructions need to evidence 'intent to *encourage' [a specific infringing use]*. The question is not just whether instructions 'describe[e] the infringing mode,' but whether the 'instructions teach an infringing use of the device *such that* we are willing to infer from those instructions an affirmative intent to infringe the patent[.]" *Takeda Pharms. U.S.A., Inc. v. West-Ward Pharm. Corp.*, 785 F.3d 625, 630-31 (Fed. Cir. 2015) (original emphasis). "Merely 'describe[ing]' an infringing mode is not the same as 'recommend[ing],' 'encourag[ing],' or 'promot[ing]' an infringing use[.]" *Id.* at 631. The Amended Complaint does nothing more than cite to materials on Visa's website and does not describe how the content of the alleged "product descriptions, operating manuals, and other instructions" affirmatively recommend, encourage, or promote any specific infringing use of the Asserted Patents. FAC ¶¶ 27, 50, 70, 93. Those types of allegations are deficient and are the very type of general boilerplate statements courts have found insufficient to plead the specific intent required for inducing infringement.

Having failed to allege any facts sufficient to demonstrate inducement in Visa's own product materials, Cortex cites a total red herring – the EMVCo specifications and use guide – and misrepresents language from those materials. Specifically, Cortex purports to quote from the EMVCo use guide that "implementation of this document may violate, infringe, or otherwise exercise the patent … or other intellectual property rights of third parties[,]" (ellipsis in original),

but conveniently leaves out the first half of the sentence, which actually reads: "**EMVCo undertakes no responsibility to determine whether any** implementation of this document may violate, infringe, or otherwise exercise the patent, copyright, trademark, trade secret, know-how, or other intellectual property rights of third parties…" *Compare* FAC ¶¶ 27, 50, 70, 93 *with* MTD Ex. 1 p. i / xii.[8]  Plaintiff's material omission was designed to suggest potential infringement where none has ever been communicated, alleged, or established by Cortex in its communications with Visa or otherwise.

Moreover, irrespective of Cortex's mischaracterization, the EMVCo materials have no bearing on Visa's specific intent for multiple reasons.  *First*, Cortex does not even allege that implementation of the EMVCo specifications infringes the Asserted Patents, nor does it chart or demonstrate any other connection between the EMVCo specifications or use guide and the Asserted Patents.  While highlighting the volume, scope, and breadth of the EMVCo specifications totaling 106 pages, and the companion guide spanning 187 pages (*see* FAC ¶¶ 27, 50, 70, 93), Cortex fails to tie any specific portion of these voluminous materials to any specific claim of any of the Asserted Patents.  *Second*, while Cortex alleges that VTS implements certain tokenization processes published by EMVCo (*see* FAC ¶ 16), Cortex does not specify which EMVCo processes VTS implements, and which of those processes, if any, purportedly infringe the Asserted Patents. *See* FAC ¶¶ 27, 50, 70, 93 (acknowledging that EMVCo "provides guidance on ***various ways*** in which payment tokens can be used") (emphasis added).  *Third*, as Cortex acknowledges in the

---

[8] "MTD Ex." refers to Exhibit 1 to the Declaration of Lucy Yen, filed as Exhibit A in support of this motion.   The Court may consider documents attached to a motion to dismiss without converting to a motion for summary judgment as long as those documents "are referred to in the plaintiff's complaint and are central to [its] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) ("In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated.").

Amended Complaint, Visa is one of multiple members of EMVCo. Cortex does not, and cannot, allege that EMVCo specifications are established by Visa alone, that Visa and EMVCo are one in the same, or that any tokenization language in EMVCo documents reveals *Visa's* specific intent about all aspects of its unique tokenization services.

Regardless, even if the Court considers EMVCo documents relevant, vague allegations related to unspecified portions of the EMVCo materials fail to establish specific intent to induce any of the Asserted Patents for the same reasons described *supra* in this Section. Cortex has utterly failed to connect any language in the EMVCo materials with the Asserted Patents in a manner sufficient to demonstrate intent to encourage infringement. The Court should disregard Cortex's last-ditch effort to salvage its inducement claims with irrelevant and misleading citations to the EMVCo materials.

Accordingly, Cortex's induced infringement claims must be dismissed in their entirety because Cortex fails to identify any (1) known infringement or (2) actions that demonstrate specific intent to induce infringement.

### 2.     Cortex's Generic Allegations of Contributory Infringement Are Deficient

To state a claim for contributory infringement, a complaint must plead "that the accused infringer's component is not suitable for a substantial non-infringing use[.]" *BillJCo*, 583 F. Supp. 3d at 781. Claims of contributory infringement must be "more than boilerplate recitations of the elements of . . . contributory infringement." *Blackberry Ltd. v. Nokia Corp.*, No. 17-cv-155-RGA, 2018 WL 1401330, at *4 (D. Del. Mar. 20, 2018) (dismissing contributory infringement claims). A plaintiff must provide factual allegations that the accused product or component "has no substantial noninfringing uses." *Toyota*, 2014 WL 2892285, at *8 (quoting *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010)). A "conclusory allegation" that "components provided

by" the accused infringer "are not staple articles of commerce suitable for substantial non-[in]fringing use" is "no more than a 'threadbare recital' of one of the elements." *Iron Oak Techs., LLC v. Dell, Inc.*, No. 1:17-CV-999-RP, 2018 WL 1631396, at *2 (W.D. Tex. Apr. 4, 2018) (quoting *Iqbal*, 556 U.S. at 678) (dismissing contributory infringement claims). To adequately plead contributory infringement, it is insufficient for Plaintiff to assert "nothing more than 'if you use this device to perform the patented method, the device will infringe and has no noninfringing uses.'" *In re Bill of Lading Transmission and Processing Sys. Patent Litig.*, 681 F.3d 1323, 1338 (Fed. Cir. 2012) (affirming dismissal of contributory infringement claims).

Yet, that is precisely what Plaintiff did in its initial complaint and continues to do in the Amended Complaint. The entirety of Plaintiff's contributory infringement claims amount to nothing more than a threadbare recital of elements:

> Visa has indirectly infringed and continues to indirectly infringe the ['531, '854, '859, '973] Patent in violation of 35 U.S.C. § 271(c) by selling or offering to sell in the United States, or importing into the United States, the [] Accused Products with knowledge that they are especially designed or adapted to operate in a manner that infringes that patent and despite the fact that the infringing technology or aspects of the products are not a staple article of commerce suitable for substantial non-infringing use…The infringing aspects of the [ ] Accused Products can be used only in a manner that infringes the ['531, '854, '859, '973] Patent and thus have no substantial non-infringing uses. The infringing aspects of those instrumentalities have no meaningful use other than in payment tokenization, let alone any meaningful non-infringing use.[9]

FAC ¶¶ 29, 31, 52, 54, 72, 74, 95, 97.

---

[9] In amending its complaint, Plaintiff's sole revision to the contributory infringement claims was to add that the "infringing aspects of those instrumentalities have no meaningful use other than in payment tokenization, let alone any meaningful non-infringing use." FAC ¶¶ 31, 54, 74, 97. But this does no more than reiterate Plaintiff's prior boilerplate allegations while identifying that the Visa Token Service is a payment tokenization service. Plaintiff has done nothing to explain why VTS or any allegedly infringing component of VTS has no substantial non-infringing use with respect to the Asserted Patents covering Plaintiff's alleged "OVER File Technology."

18

This assertion simply states the legal standard for contributory infringement and clearly fails *Iqbal*'s factual pleading standard.  It resembles the hypothetical contributory infringement claim expressly rejected in *In re Bill of Lading*.  *Compare id*. ¶ 31 (Visa's products "can be used only in a manner that infringes the [] Patent and thus have no substantial non-infringing uses.") *with In re Bill of Lading*., 681 F.3d at 1338 ("if you use this device to perform the patented method, the device will infringe and has no noninfringing uses.").  Such "boilerplate" contributory infringement claims must be dismissed.  *See, e.g.*, *Blackberry*, 2018 WL 1401330, at *4; *Traxcell Techs., LLC v. Verizon Wireless Pers. Commc'ns, LP*, No. 6:20-CV-01175-ADA, 2022 WL 299732, at *4-5 (W.D. Tex. Jan. 31, 2022).

## V.   CORTEX'S   INDIRECT   INFRINGEMENT   AND   PRE-SUIT   WILLFUL INFRINGMENT CLAIMS SHOULD BE DISMISSED WITH PREJUDICE

Plaintiff's claims of indirect infringement and pre-suit willful infringement should be dismissed with prejudice.  Cortex had an opportunity to amend its complaint to plausibly allege these claims and address deficiencies identified by Visa in the initial motion to dismiss, but Cortex has failed to do so because it cannot do so.  The facts, as alleged by Cortex, simply do not support Plaintiff's claims, and no amount of artful pleading can change that.  Any further amendment would be futile.  *See Ballard*, 678 F.3d at 364; *Stephens v. John Bean Techs. Corp.*, No. 6:18-CV-00133-ADA, 2018 WL 7288584, at *1 (W.D. Tex. Dec. 12, 2018) ("An amendment is futile if the amended complaint would fail to survive a motion to dismiss pursuant to Rule 12.").

Giving Cortex every benefit of the doubt, it is clear that any communications between Cortex and Visa occurred only in 2013, 2016, and 2017 – before three of the four Asserted Patents were issued.  *See supra* IV.A.  It is equally apparent that those communications did not expressly cite the '531 Patent (the only patent issued at the time), and they certainly did not accuse Visa of infringement or provide any information sufficient for Visa to have knowledge that any of its

products infringed, or the nature of such infringement. *See supra* IV.B. Cortex cannot plead pre-suit knowledge where no such knowledge existed.

Similarly, Cortex has had unfettered access to Visa's marketing, developer, instructional, and operations materials since the initial complaint, which cited these materials. *See* Dkt. 1. Yet the FAC still does not identify any language from any Visa documentation or otherwise to connect Visa's conduct with the Asserted Patents or explain why VTS has no substantial non-infringing uses, as required to establish indirect infringement. *See supra* IV.C. Cortex also fails to establish any knowledge or intent to induce infringement through its haphazard discussion of the EMVCo specifications. In such circumstances, dismissal with prejudice is the proper result.

## VI.    CONCLUSION

For the foregoing reasons, Cortex's claims of indirect infringement of the '531 Patent (Count 1 ¶¶ 27-31), '854 Patent (Count 2 ¶¶ 50-54), '859 Patent (Count 3 ¶¶ 70-74), and '973 Patent (Count 4 ¶¶ 93-97) should be dismissed with prejudice, as should Cortex's claim of pre-suit willful infringement of the '531 Patent (FAC ¶¶ 99-102).

Date: April 24, 2023                              Respectfully submitted,

By: /s/ *Leslie Sara Hyman*

Leslie Sara Hyman
Texas State Bar No. 00798274
lhyman@pulmanlaw.com
**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 N.W. Military Highway, Suite
400301 San Antonio, Texas 78213
(210) 222-9494 (telephone)
(210) 892-1610 (facsimile)

20

James C. Yoon
WILSON SONSINI GOODRICH &
ROSATI
650 Page Mill Road
Palo Alto, CA  94304
(650) 493-9300 (telephone)
(650) 565-5100 (facsimile)
jyoon@wsgr.com

Lucy Yen (*pro hac vice*)
WILSON SONSINI GOODRICH &
ROSATI
1301 Avenue of the Americas, 40th Fl.
New York, NY  10019
(212) 999-5800 (telephone)
(866) 974-7329 (facsimile)
lyen@wsgr.com

Catherine Lacey (*pro hac vice*)
WILSON SONSINI GOODRICH &
ROSATI
One Market Plaza, Spear Tower, Suite
3300
San Francisco, CA  94105
(415) 947-2000 (telephone)
clacey@wsgr.com

**ATTORNEYS FOR DEFENDANT VISA, INC.**

### CERTIFICATE OF SERVICE

I certify that on April 24, 2023, the foregoing Defendant Visa Inc.'s Motion to Dismiss Plaintiff's Claims for Indirect Infringement and Pre-Suit Willful Infringement in Plaintiff's First Amended Complaint was filed electronically using the Court's CM/ECF system, which will send notification of such filing to the following:

Max L. Tribble, Jr.
mtribble@susmangodfrey.com
Bryce T. Barcelo
bbarcelo@susmangodfrey.com
Susman Godfrey L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096

Tyler Finn
tfinn@susmangodfrey.com
Susman Godfrey L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019

Kalpana Srinivasan
ksrinivasan@susmangodfrey.com
Davida Brook
dbrook@susmangodfrey.com Susman
Godfrey L.L.P.
1900 Avenue of the Stars, 14th Floor
Los Angeles, California 90067-6029

Mark D. Siegmund
mark@swclaw.com
Melissa S. Ruiz
melissa@swclaw.com
Steckler Wayne Cherry & Love, PLLC
8416 Old McGregor Road
Waco, Texas 76712

Ricardo G. Cedillo
rcedillo@lawdcm.com
Joseph Korbel
jkorbel@lawdcm.com
Davis Cedillo & Mendoza Inc.
755 E. Mulberry Avenue, Suite 250
San Antonio, Texas 78212

*/s/ Leslie Sara Hyman___*
Leslie Sara Hyman

22