# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

|  |  |
|---|---|
| CORTEX MCP, INC., | |
| Plaintiff, | CIVIL ACTION NO. 6:23-CV-00048-FB |
| v. | |
| VISA, INC. | JURY TRIAL DEMANDED |
| Defendant. | |

## PLAINTIFF CORTEX MCP, INC'S OPPOSITION TO DEFENDANT VISA INC.'S MOTION TO DISMISS PLAINTIFF'S CLAIMS FOR INDIRECT INFRINGEMENT AND PRE-SUIT WILLFUL INFRINGEMENT IN PLAINTIFF'S FIRST AMENDED COMPLAINT

## TABLE OF CONTENTS

Page

I.  INTRODUCTION ..................................................................................................1

II. CORTEX'S ALLEGATIONS ...............................................................................2

    A.  Visa's Pre-Suit Knowledge of the '531 Patent .......................................3

    B.  Visa's Provision of Support, Encouragement, and Instructions on Infringement................................................................................................5

III. LEGAL STANDARD.............................................................................................5

IV. ARGUMENT...........................................................................................................7

    A.  Cortex Does Not Bring Claims for Pre-Suit Indirect Infringement of the '854, '859, or '973 Patents.......................................................................7

    B.  Cortex Adequately Alleges Pre-Suit Willful Infringement of the '531 Patent........................................................................................................8

    C.  Cortex Adequately Alleges Induced Infringement ...............................11

        1.  Cortex Has Alleged Sufficient Facts to Establish Specific Intent ....................................................................................................12

        2.  Visa's Caselaw on Boilerplate Allegations Is Irrelevant to the Specific Facts Alleged in the Complaint ...................................14

        3.  Cortex's Claims of Induced Infringement Track the Infringed Patents.......................................................................................15

        4.  The Allegations Demonstrate that Visa Encourages Third Parties to Infringe the Asserted Patents ....................................16

    D.  Cortex Adequately Alleges Contributory Infringement .......................17

    E.  Any Dismissed Claims Should Be Dismissed Without Prejudice to Renewal After Further Discovery .........................................................18

V.  CONCLUSION.....................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACQIS LLC v. Lenovo Grp. Ltd.*,
    2022 WL 2705269 (W.D. Tex. July 12, 2022) .......................................................................18

*ACQIS LLC v. Wiwynn Corp.*,
    614 F. Supp. 3d 499 (W.D. Tex. 2022)..................................................................................18

*Addiction & Detoxification Inst. L.L.C. v. Carpenter*,
    620 F. App'x 934 (Fed. Cir. 2015) ........................................................................................15

*Affinity Labs of Texas, LLC v. Toyota Motor N. Am., Inc.*,
    2014 WL 2892285 (W.D. Tex. May 12, 2014) ......................................................................15

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
    876 F.3d 1350 (Fed. Cir. 2017)................................................................................................8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................................................6

*Barry v. Medtronic, Inc.*,
    914 F.3d 1310 (Fed. Cir. 2019)..............................................................................................12

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007).................................................................................................................6

*Bench Walk Lighting LLC v. LG Innotek Co.*,
    530 F. Supp. 3d 468 (D. Del. 2021).......................................................................................11

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
    681 F.3d 1323 (Fed. Cir. 2012)........................................................................................ *passim*

*BillJCo, LLC v. Apple Inc.*,
    583 F. Supp. 3d 769 (W.D. Tex. 2022)............................................................................. *passim*

*BlackBerry Ltd. v. Nokia Corp.*,
    2018 WL 1401330 (D. Del. Mar. 20, 2018) ..........................................................................18

*CyWee Grp. Ltd. v. HTC Corp.*,
    312 F. Supp. 3d 974 (W.D. Wash. 2018)...............................................................................15

*Erickson v. Pardus*,
    551 U.S. 89 (2007)...................................................................................................................6

*Fernandez-Montez v. Allied Pilots Assoc.*,
  987 F.2d 278 (5th Cir. 1993) ................................................................6

*Harold H. Huggins Realty, Inc. v. FNC, Inc.*,
  634 F.3d 787 (5th Cir. 2011) ...............................................................6

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
  2019 WL 330515 (D. Del. Jan. 25, 2019) ...........................13, 14, 18

*Iron Oak Technologies v. Dell, Inc.*,
  2018 WL 1631396 (W.D. Tex. Apr. 4, 2018) .....................................19

*Iron Oak Techs., LLC v. Acer Am. Corp.*,
  2017 WL 9477677 (W.D. Tex. Nov. 28, 2017) ..................................15

*Joao Control & Monitoring Sys., LLC v. Protect Am., Inc.*,
  2015 WL 3513151 (W.D. Tex. Mar. 24, 2015) ..................................15

*Lexington Luminance LLC v. Lowes Home Centers LLC*,
  2019 WL 1417440 (E.D. Tex. Mar. 13, 2019) ...................................13

*Lormand v. US Unwired, Inc.*,
  565 F.3d 228 (5th Cir. 2009) ................................................................6

*Memory Integrity LLC v. Intel Corp.*,
  144 F. Supp. 3d 1185 (D. Or. 2015) ...................................................16

*Merck Sharp & Dohme Corp. v. Teva Pharm. USA, Inc.*,
  2015 WL 4036951 (D. Del. July 1, 2015) ..........................................18

*Michigan Motor Techs. LLC v. Volkswagen Aktiengesellschaft*,
  472 F. Supp. 3d 377 (E.D. Mich. 2020) .............................10, 11, 15, 16

*Microsoft Corp. v. DataTern, Inc.*,
  755 F.3d 899 (Fed. Cir. 2014) .............................................12, 13, 14

*Mobile Equity Corp. v. Walmart Inc*,
  2022 WL 4587554 (E.D. Tex. Sept. 8, 2022) .....................................10

*Motiva Patents LLC v. Sony Corp.*,
  408 F. Supp. 3d 819 (E.D. Tex. 2019) ...........................................7, 13, 14

*Script Security Solutions L.L.C. v. Amazon.com, Inc.*,
  170 F. Supp. 3d 928 (E.D. Tex. 2016) ...............................................12

*Traxcell Techs., LLC v. Verizon Wireless Pers. Commc'ns, LP*,
  2022 WL 299732 (W.D. Tex. Jan. 31, 2022) .....................................19

*USC IP P'ship, L.P. v. Facebook, Inc.*,
  2021 WL 3134260 (W.D. Tex. July 23, 2021) .......................................................................20

*Vanda Pharm. Inc. v. W.-Ward Pharm. Int'l Ltd.*,
  887 F.3d 1117 (Fed. Cir. 2018)..........................................................................................12

**Statutes**

35 U.S.C. § 271(b) ........................................................................................................................11

## I.   <u>INTRODUCTION</u>

The Court should deny Visa's partial motion to dismiss. The motion incorrectly states the pleading standard for claims of willful and indirect infringement, ignores the facts pled in Cortex's Amended Complaint, and attacks allegations that Cortex never made.

Visa's arguments regarding pre-suit willful infringement rest on the inaccurate premise that Cortex was required to allege that it provided Visa with the number of the accused patent and that it accused Visa of infringement before it filed this lawsuit. Neither Rule 8 nor the relevant caselaw imposes either of these requirements (let alone both) to plead knowledge of infringement. To the contrary, recent cases confirm that the types of information that Cortex provided to two high-ranking Visa executives on two separate occasions in 2016 and 2017—a description of the patented technology, a citation to the patent, a description of the patent's scope, and explanation of how the patented technology relates to an accused product—are more than sufficient at the pleading stage.

As for induced infringement, Visa ignores numerous allegations in the Complaint that particular specifications published by EMVCo—a global technology body founded and owned by Visa that promotes the technology practiced by the Asserted Patents—map directly onto the Visa Token Service (one of the Accused Products) and to specific claims of *each* of the Asserted Patents. These allegations establish that Visa instructs third parties to infringe the patents, satisfying the specific intent required for a claim of induced infringement. Visa also fails to engage with the numerous other specific allegations of how Visa and its affiliates instruct and encourage the implementation of tokenization technologies that necessarily infringe the patents-in-suit.

With respect to contributory infringement, Visa fails to acknowledge the abundant caselaw from this Court and the Federal Circuit holding that a plausible allegation that an accused product has no substantial non-infringing uses satisfies the pleading standard. The law does not require a

patent plaintiff to affirmatively disprove potential non-infringing uses where none plausibly exists. Moreover, the Visa Token Service has no non-infringing use, and Visa does not argue otherwise.

The Court should reject Visa's premature attempt to dismiss well-pled claims before discovery.

## II.     CORTEX'S ALLEGATIONS

Cortex is the owner of all rights, title, and interest in United States Patent Nos. 9,251,531 ("'531 Patent"); 9,954,854 ("'854 Patent"); 10,749,859 ("'859 Patent"); and 11,329,973 ("'973 Patent") (collectively, the "Asserted Patents"). *See* Dkt. 25 ("Complaint" or "Compl.") ¶¶ 2, 14, 35, 58, 78. The Asserted Patents are in the same patent family and share a common parent in the '531 Patent. Shaunt Sarkissian is the sole inventor of the asserted patents and the founder of Cortex. *See id.* ¶ 11, Exs. 1-4.

The OVER File technology disclosed by the Asserted Patents allows consumers to safely store both their credit cards and their personal account identification on their mobile devices in order to conduct transactions from those devices without exposing their sensitive personal information. The technology involves the process of "tokenization"—a method for substituting a customer's personal information with an encrypted electronic representation (an "OVER File" or "token")—that allows users to interact with third parties without revealing such information. The OVER File technology can be used on a consumer's mobile device and does not require merchants to purchase any new hardware, solving various problems that hampered the growth of previous "Wallet Solutions." The teachings embodied in the Asserted Patents are now widespread in mobile-payment systems, including the Visa Token Service. The specifications for such payment tokenization published by EMVCo—the global technology body owned and managed by Visa—chart directly onto the Asserted Patents. *See* Compl. ¶¶ 22, 23 ('531 Patent); *id.* ¶¶ 39,

41, 42, 43, 44, 48 ('854 Patent); *id.* ¶¶ 63, 65, 66, 67 ('859 Patent); *id.* ¶¶ 82, 83, 84, 87, 88 ('973 Patent).

On January 26, 2023, Cortex filed its initial complaint alleging that Visa has infringed and continues to infringe the Asserted Patents by making, using, offering to sell, selling, and/or importing into the United States products that infringe the asserted patents, principally the Visa Token Service. *See, e.g.,* Dkt. 1, ¶ 16. On March 30, 2023, Visa moved to dismiss Cortex's claims for indirect infringement and pre-suit willful infringement. Dkt. 21. Cortex timely filed an amended complaint on April 10, 2023. Dkt. 25. Visa subsequently renewed its partial motion to dismiss. Dkt. 29 ("Motion" or "Mot.").

### A.   Visa's Pre-Suit Knowledge of the '531 Patent

Though Visa's motion suggests otherwise, Cortex and Visa engaged in extensive pre-suit discussions about the '531 Patent and its relation to the Visa Token Service. As alleged in Cortex's Complaint, Visa first learned of Cortex's OVER File technology no later than seven months after Cortex applied for the '531 Patent. *See* Compl. ¶¶ 1, 10. Specifically, in a July 2013 meeting with Visa-subsidiary CyberSource, Cortex representatives presented the OVER File payment platform and explained the underlying technology that is reflected in the '531 Patent. *Id.* ¶ 10. Notably, the parties were meeting to explore a business relationship that would merge Cortex's OVER File technology with Visa's mobile-commerce business. *Id.* Both parties entered a non-disclosure agreement ahead of that meeting to protect the sensitive information that Cortex shared with Visa's subsidiary. *Id.* Along with the information described above, at this same meeting Cortex informed CyberSource that it had filed a patent application for the technology it was presenting and explained how that technology would be useful for Visa's business. *Id.* On February 2, 2016, the U.S. Patent & Trademark Office granted Cortex the patent application discussed in the July 2013 meeting. *Id.* ¶ 13, Ex. 1.

In April 2016, approximately two months after the issuance of the '531 Patent, Visa requested additional information from Cortex about a potential business relationship. *Id.* ¶ 11. Shaunt Sarkissian, Cortex's Founder and CEO and the inventor of the '531 Patent, communicated directly with Jim McCarthy, Visa's Head of Innovation who was responsible for the introduction of the Visa Token Service. *Id.* Mr. Sarkissian sent Mr. McCarthy two documents that described the OVER File technology: 1) an outline of Cortex's technologies and their potential application to Visa's Digital Enablement Program;[1] and 2) a summary of "potential synergies" between Cortex and Visa, specifically related to the Visa Token Service. *Id.* These documents explained Cortex's OVER File technology, and expressly stated that Cortex had been issued "an OVER File patent." *Id.* Cortex also explained the scope of the OVER File IP as "covering every aspect of provisioning a representative credential, that can be scanned and verified," and alerted Visa that the OVER File IP was subject to "exi[s]ting infringement from most all Wallet Solution providers." *Id.* Both documents described the connection between the OVER File IP and the Visa Token Service. For example, the first document represented that Cortex's "[t]okenization capabilities can add significant value, IP, and capacities to the Visa Token Service," while the second stated that Cortex's technology could provide a "[c]ritical supporting IP portfolio" for the Visa Token Service. *Id.*

In early 2017, Mr. Sarkissian again emailed the same information—describing the OVER File technology and citing the OVER File patent—to Visa Executive Vice President William Sheedy. *Id.*

---

[1] The Visa Digital Enablement Program is a program that "connects financial institutions and technology companies," including through "access to Visa Token Service." https://ma.visamiddleeast.com/en_MA/partner-with-us/payment-technology/visa-token-service.html.

Based upon the foregoing, Cortex alleged, on information and belief, that Visa has known of the '531 Patent and the infringing nature of the Visa Token Service since at least April 2016. *Id*. ¶ 26.

**B.    Visa's Provision of Support, Encouragement, and Instructions on Infringement**

The Complaint also contains specific allegations about the ways in which Visa directs third parties—banks, merchants, retailers, independent developers, and end users—to use the Visa Token Service in an infringing mode. Through EMVCo, Visa publishes a payment tokenization "Specification Framework" and "Guide to Use Cases," each of which provides detailed instructions on how to implement an infringing tokenization service. Compl. ¶¶ 27, 50, 70, 93. The stated purpose of these documents is to "support adoption" of tokenization, *i.e.*, infringing products. *See id.* ¶ 27. Recognizing that implementation of the use guide may infringe the patent rights of third parties, EMVCo begins its instructions with a disclaimer. *Id.* Through CyberSource, Visa offers detailed instructions to developers to implement infringing tokenization services. *Id.* Visa also operates a developer center, which provides software, instructions, and tutorials on how to implement the Visa Token Service. *Id.* These instructions are specifically targeted towards issuer banks, merchants, and independent developers. *Id.* Visa, including through EMVCo and CyberSource, encourages these third parties as well as end users to adopt infringing services by touting the benefits of tokenization. *Id.* These allegations are accompanied by links to, and direct quotes from Visa's and its affiliates' websites and instructional manuals. *Id.*

**III.    LEGAL STANDARD**

When considering a motion to dismiss under Rule 12(b)(6), a court takes as true all well-pleaded factual allegations and construes them in the light most favorable to the plaintiff. *Fernandez-Montez v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). The plaintiff need

only plead facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (cleaned up).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a claim is plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. But "[a]sking for plausible grounds *does not* impose a probability requirement at the pleading stage...." *Twombly*, 550 U.S. at 556 (emphasis added). Nor does the plausibility standard authorize courts "to look behind [a complaint's] allegations and independently assess the likelihood that the plaintiff will be able to prove them at trial." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 803 n.44 (5th Cir. 2011). A plaintiff need not "prove its case at the pleading stage." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012). The Court may not "choose among competing inferences as long as there are sufficient facts alleged to render the non-movant's asserted inferences plausible." *Id.* at 1340; *see also Lormand v. US Unwired, Inc.*, 565 F.3d 228, 267 (5th Cir. 2009) (noting that courts "are not authorized or required to determine whether the plaintiff's plausible inference ... is equally or more plausible than other competing inferences....").

"[P]articularly where the relevant information is beyond the access of the plaintiff, courts should generally permit discovery to proceed unless the complaint recites no more than sheer speculation about the plaintiff's entitlement to relief." *Motiva Patents LLC v. Sony Corp.*, 408 F. Supp. 3d 819, 827 (E.D. Tex. 2019).

IV.     **ARGUMENT**

Visa's motion ignores the specific facts alleged by Cortex while addressing "allegations" that Cortex never made. First, the Court should disregard Visa's arguments about dismissal of any claims for pre-suit indirect infringement of the '854, '859, or '973 Patents because those claims are not even in the Complaint. Second, Cortex sufficiently pled willful infringement of the '531 Patent with the allegations that Cortex explained that patent and its connection to the Visa Token Service to two separate Visa executives on two separate occasions. Third, the numerous examples of how Visa and its affiliates teach third parties how to implement the Visa Token Service in a manner that inherently infringes the Asserted Patents adequately pleads induced infringement. Finally, the Complaint adequately pleads contributory infringement because it plausibly alleges that the Visa Token Service cannot be implemented without infringing the Asserted Patents.

A.      **Cortex Does Not Bring Claims for Pre-Suit Indirect Infringement of the '854, '859, or '973 Patents**

Visa begins its motion with three pages of argument about claims that Cortex does not bring, asserting that Cortex failed to adequately plead pre-suit indirect infringement of the '854, '859, and '973 Patents because it did not allege that Visa had pre-suit knowledge of these patents or their infringement of the patents. Mot at 4-7. Yet Cortex has never made these claims. Nor has it ever alleged that Visa had pre-suit knowledge of those three patents. The Amended Complaint makes clear that Cortex's claims for indirect infringement begin post-suit, on January 27, 2023, when Cortex served the Initial Complaint in this Action. *See* Compl. ¶¶ 49-50, 69-70, 92-93. In fact, Cortex amended these paragraphs in response to Visa's initial motion to dismiss to clarify that point. Because that section of Visa's motion is irrelevant, Cortex does not address the arguments or caselaw cited therein.

7

**B.      Cortex Adequately Alleges Pre-Suit Willful Infringement of the '531 Patent**

"To state a claim for willful infringement, a plaintiff must allege facts plausibly showing that the accused infringer: '(1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent.'" *BillJCo, LLC v. Apple Inc.*, 583 F. Supp. 3d 769, 777 (W.D. Tex. 2022) (quoting *Parity Networks, LLC v. Cisco Sys., Inc.*, 2019 WL 3940952 at *3 (W.D. Tex. 2019)). "[S]ubjective willfulness" can be shown by "proof that the defendant acted despite a risk of infringement that was 'either known or so obvious that it should have been known to the accused infringer.'" *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1371 (Fed. Cir. 2017) (quoting *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 105 (2016)).

Cortex's allegations of pre-suit willful infringement of the '531 patent meet this standard. Cortex explained the '531 Patent to two different Visa executives on two separate occasions—in April 2016 and early 2017. In both instances, Cortex provided Visa with a detailed description of its OVER File technology and alerted Visa that Cortex had been issued a patent for that same technology. Compl. ¶ 11. The documents clarified that Cortex's patent encompassed the entirety of the tokenization process described. *See id.* (describing Cortex's IP as "covering every aspect of provisioning a representative credential, that can be scanned and verified"). Even prior to these explanations, Visa had been aware of the OVER File technology and the pendency of a patent covering that technology since at least 2013, when Cortex representatives met with counterparts from Visa's subsidiary to discuss a potential business relationship. *Id.* ¶ 10.

There can be no doubt that these communications alerted Visa of the potential that its token service infringed the patent discussed. Cortex informed Visa that its OVER File IP related directly to the Visa Token Service. *Id.* ¶ 11. Cortex also expressly alerted Visa that its OVER File patent

was being infringed by "most all" providers of wallet solutions on the market.[2] *Id.* And the express purpose of those communications was to explore a potential commercial relationship between Cortex and Visa based on Cortex's "[c]ritical supporting IP portfolio." *Id.* Cortex then reiterated each of these representations to another high-ranking Visa executive in 2017. *Id.* Moreover, the connection between the OVER File patent and the Visa Token Service was apparent from the context of the 2016 conversations: the Visa executive involved was the person responsible for the Visa Token Service product. *Id.* The substance of these disclosures, which were made to two different Visa executives on two occasions within a year, make it reasonable to infer that Visa knew, or at the very least should have known, that the Visa Token Service was infringing Cortex's '531 Patent.

Visa argues that these representations were insufficient to place Visa on notice of infringement because Cortex did not identify "the title, patent number or claim language of any of the Asserted Patents," Mot. at 3, provide Visa with a copy "of the '531 patent," *id.* at 9, or "accuse[] Visa of infringement," *id.* at 10. Yet Visa does not offer any caselaw supporting its proposition that the absence of patent numbers, claim language, or accusations of infringement is fatal to a claim of pre-suit willful infringement. That is because the law imposes no such requirement.

To the contrary, this precise argument was recently rejected in *Mobile Equity Corp. v. Walmart Inc*, 2022 WL 4587554 (E.D. Tex. Sept. 8, 2022), *report and recommendation adopted*,

---

[2] Visa argues that "Wallet Solution" is an obscure or undefined concept. Mot. at 10. In fact, it is a commonly understood term in the payments world that Visa itself uses. Visa's website page about digital wallets includes a section called "Build Your Own Wallet Solution" which notes that the relevant issuer "needs to be a participant in the Visa Token System." https://partner.visa.com/site/explore/digital-wallets.html. Moreover, the Complaint alleges that Cortex's OVER File technology is a "mobile-wallet solution" and explains how Cortex's tokenization technology fits into the existing world of wallet solutions. Compl. ¶¶ 8-9.

2022 WL 4587499 (E.D. Tex. Sept. 27, 2022). The *Mobile Equity* court rejected the argument that a presentation given by the patentee to defendant Walmart "neither included a copy of the Asserted Patents or identifying patent numbers, offered a license, or accused Walmart of infringement." *Id.* at *2. Instead, the court concluded that the "presentation [that] described the technology of the Asserted Patent" and "disclosed the technology's status as patented in the United States" at a time when Walmart was "actively rolling out and deploying the accused service" was sufficient *at the summary judgment stage* "to establish a genuine dispute of material fact regarding Walmart's actual knowledge of or willful blindness to infringement of the [Asserted] Patent." *Id.* at *3. As here, those discussions took place in the context of a potential business relationship. *See id.* at *2. Cortex's allegations of each of the above facts are sufficient to withstand the lower plausibility standard applicable to this motion.

Visa's caselaw is distinguishable because in Visa's cases plaintiffs did not allege that they had placed defendants on notice of the connection between the asserted patents and the accused products. In *Michigan Motor Techs. LLC v. Volkswagen Aktiengesellschaft*, 472 F. Supp. 3d 377 (E.D. Mich. 2020), plaintiff "wrote only one sentence in support of willfulness: 'Defendants were made aware of the patents-in-suit at least as early as March 4, 2015, when [they were] provided notice of the patents via letter.'" *Id.* at 384. Unlike the allegations here, plaintiffs "never specified what the letter stated, did not mention who sent the letter, and did not mention to whom the letter actually was sent." *Id.* Similarly, the alleged notice letter in *Bench Walk Lighting LLC v. LG Innotek Co.*, 530 F. Supp. 3d 468, 492 (D. Del. 2021) failed to reference not only the accused products but two of the patents that plaintiffs alleged were being willfully infringed. As to *BillJCo,* 583 F. Supp. 3d 769, the court found the allegation that "BillJCo sent Apple a letter on June 5, 2019 regarding the Patents-in-Suit" sufficient to establish defendant's knowledge of the patents,

but insufficient to establish knowledge of infringement because "BillJCo reveals almost nothing about the nature and contents of the June 2019 Letter." *Id.* at 777. The court did not, as Visa argues, impose any requirement that the plaintiff attach any relevant communications to the complaint. *See* Mot. at 8. A plaintiff need only plead sufficient facts to plausibly allege that the defendant knew, or should have known, that the conduct amounted to infringement. *BillJCo,* 583 F. Supp. 3d at 777. Cortex's allegations meet that standard because they identify by name the two Visa executives to whom Cortex disclosed information and in what context, and provide sufficient factual detail about the contents of information that was disclosed. This information included a description of the patented technology, a citation to the patent, a connection between the patent and the accused products, and a definitive statement that Cortex's IP was being infringed by most all providers of such products on the market. *See* Compl. ¶ 11.

### C.   Cortex Adequately Alleges Induced Infringement

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). "To state a claim for induced infringement, a complaint must plead facts plausibly showing that the accused infringer specifically intended that another party infringe and knew that the other party's acts constituted infringement." *BillJCo*, 583 F. Supp. 3d at 779. "Circumstantial evidence can support a finding of specific intent to induce infringement." *Vanda Pharm. Inc. v. W.-Ward Pharm. Int'l Ltd.*, 887 F.3d 1117, 1129 (Fed. Cir. 2018). The intent necessary for a claim of "inducement can be found where there is evidence of active steps taken to encourage direct infringement." *Barry v. Medtronic, Inc.*, 914 F.3d 1310, 1334 (Fed. Cir. 2019) (cleaned up). An allegation that a party, upon having knowledge of the patent and the alleged infringing acts, provided instructions on how to use a product in an infringing manner is sufficient to show a specific intent to induce infringement. *See Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 905 (Fed. Cir. 2014).

Visa's assertion that the induced infringement claim should be dismissed for failure to plead specific intent to cause infringement overlooks the above caselaw, as well as the Complaint's specific factual allegations. *See* Mot. at 12-17.

### 1.   Cortex Has Alleged Sufficient Facts to Establish Specific Intent

First, as discussed above, Cortex's allegations, and the inferences reasonably drawn therefrom, adequately plead that Visa knew of the '531 Patent and knew or should have known that the Visa Token Service infringed that patent before service of Cortex's complaint. Moreover, even if Cortex's allegations of pre-suit knowledge of that patent were insufficient (which they are not), Visa's complaint still alleges a viable claim for post-complaint indirect infringement for all of the Asserted Patents because Cortex's complaint put Visa on notice of the patents and their infringement. *See e.g.*, *Script Security Solutions L.L.C. v. Amazon.com, Inc.*, 170 F. Supp. 3d 928, 937 (E.D. Tex. 2016) ("[A] complaint provides sufficient notice of the existence of the patent-in-suit to support a claim of indirect infringement as to conduct following the filing of the initial complaint in the case.").

Second, regarding intent, there is a "low bar required at the pleading stage." *Lexington Luminance LLC v. Lowes Home Centers LLC*, 2019 WL 1417440, at *2 (E.D. Tex. Mar. 13, 2019). Intent can be sufficiently pled by allegations that an accused product infringes a patent, that the accused infringer is aware of the patent, and that the accused infringer instructs and encourages its customers to use that product. *See Bill of Lading*, 681 F.3d at 1341-45 (Fed. Cir. 2012) (holding that plaintiff sufficiently pled the "intent" element of induced infringement claim with allegations that defendants, with knowledge of the patents, encouraged and instructed third parties to use patented invention); *Microsoft Corp.*, 755 F.3d at 905 ("Providing instructions to use a product in an infringing manner is evidence of the required mental state for inducing infringement."). Specific intent is also satisfied by allegations that the defendant "provides software development kits that

12

instruct and encourage the use of the infringing products, instructional support on its website, information and technical support on third-party platforms, and video instruction…." *IOENGINE, LLC v. PayPal Holdings, Inc.*, 2019 WL 330515, at *5 (D. Del. Jan. 25, 2019).

In *Motiva Patents*, the court considered the adequacy of plaintiff's induced infringement claim premised upon allegations that the defendant provided "instruction manuals" for using the accused products in an infringing manner, "directions" to customers and end-users for using the accused products in an infringing manner, and "advertisements and promotional materials" for infringing uses of the accused products. 408 F. Supp. 3d at 830. The court rejected defendant's argument that the plaintiff was required to identify specific excerpts from instruction manuals, specific instructions to customers, and specific content of advertisements. *Id.* at 832. Finding that "[t]here is no requirement for [a patentee] to prove its case at the pleading stage," the court denied defendant's motion to dismiss because it was sufficient for plaintiff to identify "classes of information relevant to induced infringement." *Id.* (internal quotation marks omitted).

Cortex has pled sufficient facts to establish Visa's specific intent to induce infringement. As a preliminary matter, Cortex's complaint details how use of the Visa Token Service directly infringes each of the Asserted Patents. Compl. ¶¶ 18-25 ('531 Patent), ¶¶ 39-48 ('854 Patent), ¶¶ 62-68 ('859 Patent), ¶¶ 82-91. Visa does not challenge the adequacy of those allegations, which make clear that any use of the Visa Token Service infringes the Asserted Patents. This is not a case in which the Accused Products can be used in a non-infringing manner. Cortex alleges three different ways in which Visa instructs banks, merchants, and developers on how to use this infringing service—through the Visa developer center, through the EMVCo technical specifications, and through CyberSource's token management service. *Id*. ¶¶ 27, 50, 70, 93. EMVCo evidently recognizes that implementation of its instructions may infringe the patent rights

of third parties, as it appended a disclaimer of liability to its tokenization use guide. *See id.* ¶ 27. Cortex further alleges that Visa provides software development guides, tutorials, and webinars that teach those same third parties how to implement the Visa Token Service. The Complaint also contains allegations that Visa encourages the implementation of the Visa Token Service, by advertising the many benefits of its tokenization products. These allegations are sufficient to state a claim for indirect infringement. *See, e.g.*, *Bill of Lading*, 681 F.3d at 1341-45; *Microsoft Corp.*, 755 F.3d at 905; *IOENGINE, LLC*, 2019 WL 330515, at *5; *Motiva Patents*, 408 F. Supp. 3d at 830-833.

### 2.   Visa's Caselaw on Boilerplate Allegations Is Irrelevant to the Specific Facts Alleged in the Complaint

Visa cites a litany of inapposite cases, *see* Mot. 12-15, but the "generalized allegations" found insufficient in those allegations are nothing like the specific facts alleged in Cortex's Complaint:

- In *Affinity Labs of Texas, LLC v. Toyota Motor N. Am., Inc.*, 2014 WL 2892285 (W.D. Tex. May 12, 2014), the complaint "not[ed] only that 'on information and belief, Toyota has actively induced and is actively inducing others, such as Toyota's customers, to directly infringe the'" asserted patents. *Id.* at *4.

- In *Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App'x 934 (Fed. Cir. 2015), the complaint "contain[ed] no allegations regarding intent or any specific acts caused by Defendants" to support its indirect infringement claims. *Id.* at 938.

- In *Joao Control & Monitoring Sys., LLC v. Protect Am., Inc.*, 2015 WL 3513151, at *5 (W.D. Tex. Mar. 24, 2015), the Second Amended Complaint contained only conclusory allegations that the defendant infringed "one or more" of 901 total claims across six patents-in-suit. *Id.* at *1. Unlike Cortex's specific citation to instructional manuals and software developer guides, Joao alleged no specific examples or facts, pleading only that "[d]espite knowledge of the [] Patent as early as the date of service of the Original Complaint in this action, February 20, 2014, Defendant, upon information and belief, continues to encourage, instruct, enable, and otherwise cause its customers to use its systems and methods, in a manner which infringes the '076 Patent." No. 1:14-cv-134, Dkt. 63 (filed Jan. 28, 2015), at ¶ 15.

- In *CyWee Grp. Ltd. v. HTC Corp.*, 312 F. Supp. 3d 974, 980 (W.D. Wash. 2018) the complaint asserted that Defendant "continued to create and disseminate product manuals, instructions, and marketing materials" but offered "no specific details about those

promotional and instructional materials." Here, Cortex provides links to and quotes from numerous such examples.

- In *Iron Oak Techs., LLC v. Acer Am. Corp.,* 2017 WL 9477677 (W.D. Tex. Nov. 28, 2017) the complaint alleged only that "Defendants sell its accused products to customers in the United States with the expectation and intent that such customers will use and/or resell the accused products thereby directly infringing the [Asserted Patents]. As such, Defendants have induced infringement ...." *Id.* at *4. The two attachments that plaintiff cited in its motion to dismiss as establishing specific intent did not provide sufficient factual content to infer that Defendants instructed third parties how to use the accused products in an infringing mode. *Id.* at *5.

- In *Michigan Motor Techs. LLC v. Volkswagen Aktiengesellschaft*, 472 F. Supp. 3d 377 (E.D. Mich. 2020), the complaint included only conclusory allegations about defendants' "distributing the Accused Instrumentalities and providing materials and/or services related to the Accused Instrumentalities" with no more detail. *Id.* at 385. It also suffered from a "lack of pleaded facts"—even circumstantial—"that might show specific intent," asserting only that "defendants induced others to infringe MMT's patents 'with specific intent' to do so, 'or with willful blindness to the resulting infringement.'" *Id.* at 386. Once again, Cortex's detailed allegations are nothing like the threadbare recitations in *Michigan Motor*.

### 3.    Cortex's Claims of Induced Infringement Track the Infringed Patents

Cortex's allegations of induced infringement are entirely connected to the claims of the Asserted Patents, despite Visa's arguments to the contrary. *See* Mot. at 14. Visa cites *Memory Integrity LLC v. Intel Corp.*, 144 F. Supp. 3d 1185, 1195 (D. Or. 2015), for the proposition that, "[w]here defendants have not touted the benefits of the accused products in ways that track the asserted patents, courts generally do not infer specific intent." Mot at 14. But the Federal Circuit has rejected such a strict requirement for indirect infringement. *See Bill of Lading*, 681 F.3d at 1341-42 (rejecting defendant's argument that plaintiff had "not provided statements from [defendant] which specifically instruct [defendant's] customers to perform all of the steps of the patented method," because "[defendant] is essentially arguing that, at the pleading stage, [plaintiff] must allege facts that prove all aspects of its claims, or at the very least make those claims probable. But that is not what is required."). "[T]here is no requirement that the facts alleged mimic the precise language used in a claim; what is necessary is that facts, when considered in their entirety

15

and in context, lead to the common-sense conclusion that a patented method is being practiced." *Id.* at 1343.

The facts alleged by Cortex mandate such a conclusion. Take the example of EMVCo. Visa claims that that Cortex does not allege any "connection between the EMVCo specifications or user guide and the Asserted Patents." Mot at 16. Not so. In fact, Cortex specifically alleges that multiple EMVCo specifications—each of which is contained in a user guide intended to encourage third-party implementation of tokenization—track multiple claims in *each* of the Asserted Patents. *See* Compl. ¶¶ 22, 23 ('531 patent); *id.* ¶¶ 39, 41, 42, 43, 44, 48 ('854 patent); *id.* ¶¶ 63, 65, 66, 67 ('859 patent); *id.* ¶¶ 82, 83, 84, 87, 88 ('973 patent). Each of the aforementioned allegations cites to either the EMVCo Specification Technical Framework or Guide to Use Cases. And each alleges that Visa Token Service implements the specifications published by EMVCo in infringement of the relevant patent. In other words, Cortex's complaint ***does*** "specify which EMVCo processes VTS implements, and which of those process, if any, purportedly infringe the Asserted Patents," Mot. at 16.

Visa fares no better in attempting to sever its connection with EMVCo. Mot. at 16-17. Cortex has alleged sufficient facts to draw the reasonable inference that Visa acts through EMVCo. In addition to the specific allegations described above, Cortex alleges that the Visa Token Service implements the tokenization process published by EMVCo and that Visa follows EMVCO's published specifications for tokenization. Compl. ¶ 16. Cortex has further alleged that Visa founded, manages, and has an ownership stake in EMVCo. *Id.* ¶ 16.

### 4.    The Allegations Demonstrate that Visa Encourages Third Parties to Infringe the Asserted Patents

Lastly, Visa argues that Cortex's citation to mere instructions does not adequately plead the encouragement required by indirect infringement. Mot at 15 (citing *Takeda Pharms. U.S.A.,*

*Inc. v. W.-Ward Pharm. Corp.*, 785 F.3d 625 (Fed. Cir. 2015). *Takeda Pharmaceuticals* stated that inducement is found where instruction manuals indicate the product should be used in an infringing manner. *Id.* at 631. Here, Cortex has alleged that the Visa Token Service has no substantial non-infringing use. Unlike the "off-label" infringing use of drugs at issue in *Takeda Pharmaceuticals*, use of the Visa Token Service inherently infringes the Asserted Patents. Moreover, Cortex has alleged that Visa encourages software developers to implement its tokenization programs and provides webinars to aid in implementation. As in *BillJCo*, the cited Visa documentation "outright encourage[s] developers to develop infringing software." 583 F. Supp. 3d at 781; *see also IOENGINE*, 2019 WL 330515, at *5 (finding specific intent satisfied where the plaintiff alleged that the defendant "provides software development kits that instruct and encourage the use of the infringing products, instructional support on its website, information and technical support on third-party platforms, and video instruction…").

### D.     Cortex Adequately Alleges Contributory Infringement

To state a claim for contributory infringement, "a plaintiff must plausibly allege that the accused infringer knew of the asserted patents ... and must plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses." *BillJCo*, 583 F. Supp. 3d at 775 (cleaned up). "The Federal Circuit has ruled that affirmatively pleading the absence of substantial non-infringing uses renders the claim plausible if the pleadings do not undermine that allegation." *Merck Sharp & Dohme Corp. v. Teva Pharm. USA, Inc.*, 2015 WL 4036951 at *7 (D. Del. July 1, 2015) (citing *Bill of Lading*, 681 F.3d at 1339); *accord ACQIS LLC v. Wiwynn Corp.*, 614 F. Supp. 3d 499, 508 (W.D. Tex. 2022); *ACQIS LLC v. Lenovo Grp. Ltd.*, 2022 WL 2705269, at *8 (W.D. Tex. July 12, 2022).

These cases demonstrate the soundness of Cortex's allegations of contributory infringement and contradict any argument that they should be dismissed as boilerplate recitation

of the claim's elements. *See* Mot. 17-19. Unlike the allegations in *Bill of Lading,* Cortex's complaint does not "make clear on [its] face that [defendant's] products *do* have substantial non-infringing uses," 681 F.3d at 1339 (emphasis in original).[3] To the contrary, Cortex has alleged that the processes implemented by the Visa Token Service chart directly on the claims in the Asserted Patents. Compl. ¶¶ 18-25 ('531 Patent), ¶¶ 39-48 ('854 Patent), ¶¶ 62-68 ('859 Patent), ¶¶ 82-91. Cortex has further alleged that the infringing aspects of the Visa Token Service have no meaningful use other than in payment tokenization, and therefore no meaningful non-infringing use. *Id.* ¶¶ 31, 54, 74, 97; *cf. Traxcell Techs., LLC v. Verizon Wireless Pers. Commc'ns, LP*, 2022 WL 299732, at *5 (W.D. Tex. Jan. 31, 2022) (dismissing claims of contributory infringement because complaint failed to even *allege* that the accused products have no substantial non infringing uses). In sum, the Visa Token Service "can perform the infringing method and *only* the infringing method." *Bill of Lading*, 681 F.3d at 1338. Visa has identified no potential non-infringing use of the Visa Token Service. Those allegations are thus sufficient to plead a claim for contributory infringement, and are distinguishable from those in *Iron Oak Technologies v. Dell, Inc.*, 2018 WL 1631396 (W.D. Tex. Apr. 4, 2018), where plaintiff failed to identify the infringing components of Dell computers, let alone explain why such components have no non-infringing use. *Id.* at *2.

### E.     Any Dismissed Claims Should Be Dismissed Without Prejudice to Renewal After Further Discovery

As described above, the Complaint contains sufficient facts to plausibly allege pre-suit willful infringement of the '531 Patent and indirect infringement of all the Asserted Patents. Should the Court nonetheless grant Visa's partial motion to dismiss these claims, Cortex

---

[3] Visa's reliance on *BlackBerry Ltd. v. Nokia Corp.*, 2018 WL 1401330 (D. Del. Mar. 20, 2018) is misplaced. In *BlackBerry,* the court dismissed the plaintiff's claims for contributory infringement because plaintiff attempted to charge various foreign Nokia entities with contributory infringement based on the parent-subsidiary relationship with Nokia's U.S. entity without providing any factual basis to infer that the foreign entities knew of the actions of their U.S. subsidiary.

respectfully requests that it do so without prejudice and permit Cortex to amend its Complaint after the start of fact discovery, as is common practice in this Court for claims of this nature. *See, e.g., Traxcell Techs.,* 2022 WL 299732, at *5 (dismissing Plaintiff's willfulness claims without prejudice to post-discovery amendment "given the difficulty in alleging these specific details without the benefit of fact discovery"); *BillJCo,* 583 F. Supp. 3d at 782 (permitting plaintiff "to amend its Complaint after the start of fact discovery … to re-plead contributory infringement and pre-suit indirect and willful infringement claims, if able"); *USC IP P'ship, L.P. v. Facebook, Inc.*, 2021 WL 3134260, at *3 (W.D. Tex. July 23, 2021) (same).

## V.   **CONCLUSION**

For the foregoing reasons, Defendant Visa's motion to dismiss Cortex's claims for indirect infringement and pre-suit willful infringement should be denied.


Dated: May 8, 2023                          Respectfully submitted,


                                            By: */s/ Max L. Tribble, Jr.*
                                                Max L. Tribble, Jr.
                                                Bar No. 20213950
                                                Bryce T. Barcelo
                                                Bar No. 24092081
                                                SUSMAN GODFREY L.L.P.
                                                1000 Louisiana Street, Suite 5100
                                                Houston, Texas 77002-5096
                                                Telephone: (713) 651-9366
                                                Fax: (713) 654-6666
                                                mtribble@susmangodfrey.com
                                                bbarcelo@susmangodfrey.com

                                                Kalpana Srinivasan
                                                Bar No. 237460
                                                Davida Brook (admitted *pro hac vice*)
                                                Bar No. 275370
                                                SUSMAN GODFREY L.L.P.
                                                1900 Avenue of the Stars, 14th Floor

Los Angeles, California 90067-6029
Telephone: (310) 789-3100
Fax: (310) 789-3150
ksrinivasan@susmangodfrey.com
dbrook@susmangodfrey.com

Tyler Finn (admitted *pro hac vice*)
Bar No. 5772215
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019
Telephone: (212) 336-8330
Fax: (212) 336-8340
tfinn@susmangodfrey.com

Mark D. Siegmund
Bar No. 24117055
CHERRY JOHNSON SIEGMUND JAMES
400 Austin Avenue, Suite 903
Waco, Texas 76701
Telephone: (254) 732-2242
msiegmund@cjsjlaw.com

Ricardo G. Cedillo
Bar No. 04043600
Joseph Korbel
Bar No. 24127174
DAVIS CEDILLO & MENDOZA INC.
755 E. Mulberry Avenue, Suite 250
San Antonio, Texas 78212
Telephone: (210) 822-6666
Fax: (210) 660-3795
rcedillo@lawdcm.com
jkorbel@lawdcm.com

**COUNSEL FOR PLAINTIFF CORTEX MCP, INC.**

## **CERTIFICATE OF SERVICE**

A true and correct copy of the foregoing instrument was served or delivered electronically via U.S. District Court [LIVE] – Document Filing System, to all counsel of record, on this the 8th day of May 2023.

*/s/ Tyler Finn*
TYLER FINN