IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| CORTEX MCP, INC., | § | |
| | § | |
| PLAINTIFF | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:23-CV-00048-FB |
| | § | |
| VISA INC. | § | |
| | § | |
| DEFENDANT | § | |

**DEFENDANT VISA INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S CLAIMS FOR INDIRECT INFRINGEMENT AND PRE-SUIT WILLFUL INFRINGEMENT IN PLAINTIFF'S FIRST AMENDED COMPLAINT**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................ 1

II. CORTEX DOES NOT PLAUSIBLY ALLEGE PRE-SUIT INDIRECT AND WILLFUL INFRINGEMENT OF THE '531 PATENT ....................................................... 2

III. CORTEX HAS NOT PLAUSIBLY PLED SPECIFIC INTENT TO INDUCE INFRINGEMENT OF THE ASSERTED PATENTS ......................................................... 6

IV. CORTEX HAS NOT PLAUSIBLY PLED CONTRIBUTORY INFRINGEMENT ......... 9

V. CONCLUSION .................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Am. Vehicular Scis. LLC v. Mercedes-Benz U.S. Int'l, Inc.*,
　No. 6:13CV307 MHS-JDL, 2014 WL 10291478 (E.D. Tex. Feb. 7, 2014) ........................ 7

*BillJCo, LLC v. Apple Inc.*,
　583 F. Supp. 3d 769 (W.D. Tex. 2022) ........................................................................ 4, 9

*Collins v. Morgan Stanley Dean Witter*,
　224 F.3d 496 (5th Cir. 2000) ............................................................................................ 10

*Core Optical Techs., LLC v. Nokia Corp.*,
　No. SA CV19-02190 JAK, 2020 WL 6126285 (C.D. Cal. Oct. 8, 2020) ........................ 5

*Evolved Wireless, LLC v. Samsung Elecs. Co., Ltd.*,
　No. 15-545-SLR-SRF, 2016 WL 1019667 (D. Del. Mar. 15, 2016),
　*report and recommendation adopted*, 2016 WL 1381765
　(D. Del. Apr. 6, 2016) ........................................................................................................ 3

*Finjan, Inc. v. Juniper Networks, Inc.*,
　No. C 17-05659 WHA, 2018 WL 905909 (N.D. Cal. Feb. 14, 2018) ............................. 3

*Hypermedia Navigation LLC v. Google LLC*,
　No. 18-CV-06137-HSG, 2019 WL 1455336 (N.D. Cal. Apr. 2, 2019) ........................... 7

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*,
　681 F.3d 1323 (Fed. Cir. 2012) ...................................................................................... 7, 8

*Michigan Motor Techs. LLC v. Volkswagen Aktiengesellschaft*,
　472 F. Supp. 3d 377 (E.D. Mich. 2020) ............................................................................ 2

*Microsoft Corp. v. DataTern, Inc.*,
　755 F.3d 899 (Fed. Cir. 2014) ............................................................................................ 8

*Mobile Equity Corp. v. Walmart Inc.*,
　No. 2:21-cv-00126-JRG-RSP, 2022 WL 4587554 (E.D. Tex. Sept. 8, 2022),
　*report and recommendation adopted,* 2022 WL 4587499 (E.D. Tex. Sept. 27, 2022) ....... 6

*Versata Software, Inc. v. Configit A/S*,
　No. LA CV20-09019 JAK (MRWx), 2021 WL 5536287 (C.D. Cal. Sept. 10, 2021) ........ 7

## RULES

Fed. R. Civ. P. 12(b)(6) ................................................................................................................ 10

I.      **INTRODUCTION**[1]

Cortex's Opposition to Visa's Motion to Dismiss fails to salvage the insufficient allegations in the Amended Complaint. *See* Dkt. 30 ("Opp." or "Opposition"). Cortex continues to rely on unsubstantiated quotations from unattached communications to establish pre-suit knowledge of the '531 Patent. But even crediting Cortex's handpicked citations, the allegations do not establish the requisite notice for pre-suit knowledge. Cortex's Amended Complaint fails to allege that Visa *knew of the '531 Patent*, and certainly does not allege that Visa knew *whether and how VTS purportedly infringes the patent*. The absence of either of these elements is decisive on Cortex's claims of pre-suit indirect and willful infringement of the '531 Patent.

Cortex's remaining allegations on indirect infringement of the Asserted Patents fare no better. Plaintiff's claims of induced infringement amount to nothing more than allegations that Visa sells its product and produces related marketing materials, which are not enough to plausibly allege specific intent to induce infringement. Similarly, Cortex's Opposition merely parrots back the requirements of contributory infringement without providing the necessary factual support for its allegation that VTS has no substantial non-infringing use(s).

Even after amending its Complaint, Cortex still fails to meet its burden for pleading indirect and pre-suit willful infringement. Further amendment would be futile. Accordingly, the entirety of Plaintiff's indirect infringement claims and Plaintiff's pre-suit willfulness claim should be dismissed with prejudice.

---

[1] All defined terms herein have the same meaning as in Visa's Motion to Dismiss Plaintiff's Claims for Indirect Infringement and Pre-Suit Willful Infringement in Plaintiff's First Amended Complaint. Dkt. 29 ("Motion" or "Mot.").

## II.    CORTEX DOES NOT PLAUSIBLY ALLEGE PRE-SUIT INDIRECT AND WILLFUL INFRINGEMENT OF THE '531 PATENT

Cortex fails to allege that it ever provided adequate notice of the '531 Patent itself, much less the identification of any actual *claim of infringement* by any aspect of VTS. Cortex's Opposition on this point is as devoid of substance as its Amended Complaint. While the Opposition refers to "extensive pre-suit discussions about the '531 Patent and its relation to the Visa Token Service" (Opp. at 3), this mischaracterization is unsupported by Cortex's actual allegations, which fail to include even one express reference to the '531 patent.

Indeed, while the Opposition and Amended Complaint mention certain "discussions" between the parties in the ten years prior to this suit, only two (both emails from Cortex to Visa that Cortex does not allege Visa ever responded to) occurred after the '531 Patent was issued.[2] Moreover, although Cortex has selectively quoted these communications to support its narrative, even Cortex's cherry-picked quotations do not include a single citation to the '531 Patent, nor does any quotation in the Amended Complaint connect VTS to the '531 Patent or Cortex's claimed "OVER File technology". FAC ¶ 11. Cortex's bare assertion that these communications imbued knowledge of the '531 Patent and alleged infringement by VTS—without attaching the communications or including any pertinent quotations—is insufficient to allege pre-suit knowledge. *See Michigan Motor Techs. LLC v. Volkswagen Aktiengesellschaft*, 472 F. Supp. 3d 377, 384 (E.D. Mich. 2020).

Nonetheless, even when accepting Cortex's allegations on their face and viewing the Amended Complaint in the light most favorable to Cortex, Cortex fails to plausibly allege

---

[2] It is telling that Cortex continues to elect not to provide the Court with these purported communications, despite Visa raising their absence in both Visa's initial and renewed motions to dismiss. Mot. at 8.

knowledge sufficient to support claims of pre-suit willful or indirect infringement of the '531 Patent.

***First,*** Cortex confirms in its Opposition that it did not specifically identify the '531 Patent to Visa in any of the parties' pre-suit communications. Opp. at 8. Rather, and as alleged in the FAC, Cortex acknowledges that it merely provided Visa a three-page overview of its technologies and patent portfolio that included, among other things, a description of Cortex's "OVER File technology" and referenced a "patent" and "patent applications" for that technology. FAC ¶ 11; Opp. at 4. Such allegations are insufficient to establish that Visa had requisite knowledge of the '531 Patent (as opposed to any other patent), particularly since the purported communications related to a broader "IP portfolio" and "technologies."[3] *See Evolved Wireless, LLC v. Samsung Elecs. Co., Ltd.*, No. 15-545-SLR-SRF, 2016 WL 1019667, at *4 (D. Del. Mar. 15, 2016), *report and recommendation adopted*, 2016 WL 1381765 (D. Del. Apr. 6, 2016) (notice of patent portfolio insufficient to establish knowledge of particular patents even when all patents in the portfolio were identified by number because the defendant was not placed on specific notice of the patents-in-suit); *Finjan, Inc. v. Juniper Networks, Inc.*, No. C 17-05659 WHA, 2018 WL 905909, at *3 (N.D. Cal. Feb. 14, 2018) (discussion of "[Plaintiff's] patent portfolio hardly translates to specifically alerting [Defendant] to infringement of the patents-in-suit" to establish pre-suit knowledge). The Amended Complaint not only fails to allege that the '531 Patent was specifically identified but also fails to clarify how the "OVER File technology" and corresponding reference to its "patent"

---

[3] The Amended Complaint acknowledges that Cortex's communications to Visa did not solely reference the '531 Patent but provided a "three-page overview of Cortex's *technologies*" and referenced an OVER File "patent" and "patent applications." FAC ¶ 11.

3

and "patent applications" could have otherwise been known to Visa.[4]  Accordingly, Cortex's pleadings fail to include the information necessary to plausibly allege that Visa had knowledge of the '531 Patent.

**Second,** Cortex attempts to gloss over the fact that its Amended Complaint does not include a single allegation that Visa knew, or should have known, that it allegedly infringed the '531 Patent.  Pleading knowledge *of infringement* is a *separate and distinct* requirement from whether Visa knew of the *existence* of the '531 Patent.  See *BillJCo, LLC v. Apple Inc.*, 583 F. Supp. 3d 769, 776-777 (W.D. Tex. 2022).  But Cortex does not (and cannot) argue in its Opposition that it accused Visa of infringing the '531 Patent prior to the filing of this litigation.  Rather, the Amended Complaint is abundantly clear that the parties' discussions were to "discuss a possible business or commercial relationship between Cortex and Visa" and consider "potential 'synergies' between the two companies."  See FAC ¶¶ 10-11.  A single statement that purportedly mentioned "infringement" by unnamed "Wallet Solution providers" has no bearing on whether Visa had any knowledge that *it* was accused of infringement, or what aspect of any "Wallet Solution" purportedly offered by Visa might have infringed unspecified Cortex technology.  Such allegations are wholly insufficient to establish knowledge of alleged infringement of any patent, much less the Asserted Patents.  See Mot. at 10-11 & n.6.

Cortex's Opposition tries to salvage its plainly deficient allegations by claiming that Visa should have somehow inferred allegations of infringement based on the context of the parties'

---

[4] It is notable that all of the quotations Cortex includes from the communications regarding the value of the intellectual property refer to "Cortex's IP" generally and do *not* reference either "OVER File" technology (which is by itself vague) or specific patents.  See FAC ¶ 11.

4

business communications.[5]  Cortex's suggestion that the Court should infer not only knowledge of the '531 Patent but also its alleged infringement is both factually and legally unsupported.  Even Cortex concedes that apart from the single mention of infringement by Wallet Solution providers in April 2016—that was not directed at Visa or VTS—Cortex never mentioned infringement to Visa again until filing this suit nearly *seven years later*.  No plausible inference can be made based on Cortex's threadbare allegations.

*Third*, Cortex's Opposition asserts that the caselaw Visa cited is distinguishable because the plaintiffs in those cases "did not allege that they had placed defendants on notice of the connection between the asserted patents and the accused products."  Opp. at 10.  *Neither does Cortex*.  While Cortex's Opposition now self-servingly claims that "Cortex informed Visa that its OVER File IP related directly to the Visa Token Service," this is not actually alleged.[6]  *Compare* Opp. at 8 *with* FAC ¶ 11.  Even assuming that "Over File" could be sufficiently linked to an Asserted Patent, there is no linkage between "Over File" and VTS alleged in the communications; the only references to VTS are in the context of "IP" and an "IP portfolio" generally, which is left undefined in the Amended Complaint.  FAC ¶ 11.

---

[5] Cortex's suggestion that Visa should have inferred an allegation of infringement from two outreaches about a potential business relationship in a year – neither of which included any accusation of infringement – is unfounded and would unreasonably expand the knowledge doctrine.  Opp. at 9; *see Core Optical Techs., LLC v. Nokia Corp.*, No. SA CV19-02190 JAK (RAOx), 2020 WL 6126285, at *7 (C.D. Cal. Oct. 8, 2020) (finding communication from Plaintiff that "does not state a specific charge of infringement, does not identify any accused product or technology, and largely invites a licensing discussion" insufficient to establish pre-suit knowledge).  Under such an interpretation, every technology business in America would likely be subject to baseless inferences of knowledge of infringement from every patent holder who ever tried to contact them.

[6] Even in its Opposition, Cortex does not claim that it informed Visa how its Visa Token Service supposedly infringed the claims of any specific patent.  *Id.* at 9.

*Fourth*, the only authority cited by Plaintiff in support of its position is inapposite. Plaintiff cites a single adopted report and recommendation to argue that knowledge is sufficiently pled even if a defendant was not notified of the specific patent or accused of infringement of the patent. *See* Opp. at 9-10 (citing *Mobile Equity Corp. v. Walmart Inc.*, No. 2:21-cv-00126-JRG-RSP, 2022 WL 4587554 (E.D. Tex. Sept. 8, 2022), *report and recommendation adopted,* 2022 WL 4587499 (E.D. Tex. Sept. 27, 2022)). There was no such general finding made, and such a finding would be a substantial departure from all other authority in this District and others that have considered this issue. *See* Mot. at 10-11 & n.6. Moreover, *Mobile Equity* is distinguishable because, unlike here, where Plaintiff has not attached its alleged communications to the First Amended Complaint for the Court's review, the court in *Mobile Equity* was able to review the communications supporting the allegations of knowledge. In so doing, the court noted that the communications included particular details supporting knowledge of infringement—like identification of patent prosecution counsel and a clear connection between the identified intellectual property and the accused product. 2022 WL 4587554, at *3. Cortex has repeatedly failed to provide either the underlying documents or any similar details here.

Because Cortex's allegations do not plausibly allege Visa had knowledge of the '531 Patent or purported infringement of that patent, the Court should dismiss Cortex's pre-suit claims of willful and indirect infringement of the '531 Patent with prejudice.

### III. CORTEX HAS NOT PLAUSIBLY PLED SPECIFIC INTENT TO INDUCE INFRINGEMENT OF THE ASSERTED PATENTS

Cortex fails to adequately plead "specific intent" by Visa to cause infringement by others. Cortex's citations to documents from Visa's website, developer site, and marketing materials do not establish intent to induce infringement. *First*, Cortex has not sufficiently alleged that Visa had knowledge of the Asserted Patents or their purported infringement prior to the filing of the initial

6

complaint—which cited all of the materials Cortex relies on in its Opposition to establish intent. *See* Dkt. 1 ¶¶ 27, 50, 70, 93. Cortex does not explain how materials made *before* Visa had knowledge of the Asserted Patents or any purported infringement could serve as the bases for a claim that Visa intentionally induced others to infringe through those very materials. *See Versata Software, Inc. v. Configit A/S*, No. LA CV20-09019 JAK (MRWx), 2021 WL 5536287, at *14 (C.D. Cal. Sept. 10, 2021) ("Because the indirect infringement claims do not sufficiently allege post-knowledge inducement, they do not plausibly state a claim for relief."). *Second*, Cortex's citations to these materials are superficial and provide no details identifying how Visa allegedly encourages others to infringe such that the Court could even infer intent. Mot. at 12-17. Cortex provides no description of *any infringing use* Visa is teaching customers, only that Visa has customers and generally advertises and instructs on how to use its various product offerings. *See* FAC ¶¶ 27, 50, 70, 93. This is not sufficient to plausibly infer intent to instruct or encourage any specific infringing use. *See e.g.*, *Am. Vehicular Scis. LLC v. Mercedes-Benz U.S. Int'l, Inc.*, No. 6:13CV307 MHS-JDL, 2014 WL 10291478, at *4 (E.D. Tex. Feb. 7, 2014) (dismissing induced infringement claim where plaintiff did not allege that defendants' "detailed explanations, instructions, and information [concerning the alleged products] directed customers to act in an infringing manner"); *Hypermedia Navigation LLC v. Google LLC*, No. 18-CV-06137-HSG, 2019 WL 1455336, at *3 (N.D. Cal. Apr. 2, 2019) (dismissing indirect infringement claims because "[i]n no way does the complaint detail *how* an end user would infringe [Plaintiff's] patents by following instructions in the links provided in the complaint.") (emphasis in original); *see also* Mot. at 12-17.

       The Federal Circuit cases cited by Cortex are distinguishable, and in fact, support a finding that the Amended Complaint is insufficiently pled. In *In re Bill of Lading*, while noting the

congruence between the patented technology and specific instructions to customers, the Federal Circuit found that the plaintiffs did not need to allege that the defendants' customers were instructed to perform "*all* of the steps of the patented method" or "mimic the precise language used in a claim." *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1341, 1343 (Fed. Cir. 2012) (emphasis added). But here, Cortex does not reference *any* instructions from Visa materials to support specific intent to induce or encourage an alleged infringing method of any Asserted Patent. *See id*. at *1342-44 (finding allegations that identified specific instructions to customers that overlapped with patented methods sufficiently pled). Similarly, in *Microsoft Corp. v. DataTern, Inc.*, the Federal Circuit relied on "claim charts" with specific claim elements and references to "user guides and documentation for each claim element" as potential evidence of inducement. 755 F.3d 899, 905 (Fed. Cir. 2014). In contrast, Cortex suggests that identification of hundreds of pages of product instructions alone, with no tie to either the language or the technology of the claims, is sufficient to plausibly allege intent.

Having failed to assert any specific allegations supporting intent to induce, Cortex attempts to conflate its direct and induced infringement claims, but these are not the same. *Compare* Opp. at 16 (citing FAC ¶¶ 22-23, 39, 41-44, 48, 63, 65-67, 82-84, 87-88 (direct infringement allegations)) *with* FAC ¶¶ 27, 50, 70, 93 (induced infringement allegations). While Cortex's Amended Complaint may identify third-party EMVCo specifications that it alleges VTS implements in an infringing manner, that is not the same as identifying where in *Visa's* website, developer site, or marketing materials Visa induces *others* to engage in an allegedly infringing use of VTS.[7]

---

[7] The Court should disregard Cortex's attempt to hold Visa responsible for a user guide issued by a global specifications body. While Visa is a member of EMVCo, there are numerous other

The entirety of Cortex's claims for induced infringement should be dismissed with prejudice given Plaintiff's continued failure to plausibly allege any specific intent by Visa to induce infringement.

## IV.   CORTEX HAS NOT PLAUSIBLY PLED CONTRIBUTORY INFRINGEMENT

Cortex acknowledges that, to state a claim for contributory infringement, a patentee "must 'plead *facts* that allow an inference that the components sold or offered for sale have no substantial non-infringing uses.'" *BillJCo*, 583 F. Supp. 3d at 775 (emphasis added) (quoting *Artrip v. Ball Corp.*, 735 F. App'x 708, 713 (Fed. Cir. 2018)); *see* Opp. at 17.  But Cortex points to no such *facts* alleged in its FAC—only legal conclusions that are factually implausible on their face. Additionally, Cortex's Amended Complaint does, in fact, "make clear on [its] face that [defendant's] products *do* have substantial non-infringing uses." Opp. at 18.

As an initial matter, Cortex points to its allegations of direct infringement, but an underlying act of direct infringement is a separate element of a contributory infringement claim from the component having no substantial non-infringing uses.  *See BillJCo*, 583 F. Supp. 3d at 774-75.  Next, Cortex states it "has further alleged that the infringing aspects of the Visa Token Service have no meaningful use other than in payment tokenization, and therefore no meaningful non-infringing use" citing four paragraphs from the FAC that assert little more than this.  Opp. at 18 (citing FAC ¶¶ 31, 54, 74, 97).  First, Cortex does not even purport to explain, in the FAC or its Opposition, how any of the Asserted Patents' claims would be infringed by every use of the complex systems of "payment tokenization"—let alone back up this assertion with facts.

---

significant stakeholders, and EMVCo processes *do not* instruct on use of VTS.  Accordingly, these specifications are not relevant to whether Visa is inducing customers to use VTS in an allegedly infringing manner.

Second, such an assertion is clearly implausible from the FAC itself because the claims have a variety of limitations (and are not even directed to "payment tokenization"). For example, all of the claims of the '854 Patent require a "first . . . device of the user" and a "second . . . device of the user," but the very materials cited in the FAC show VTS can be used with a *single* user device. *See* Reply Ex. 2.[8] Although required by all of the claims of the '531, '859, and '973 Patents, the materials show VTS can in fact be used without a "scan" or near field communication (NFC). *Id.* Any allegation that VTS, with its many different functionalities and capabilities as demonstrated by the very materials cited and referenced in the Amended Complaint (*id.*), does not have substantial non-infringing uses is not plausible and does not satisfy Rule 12(b)(6).

## V. CONCLUSION

For the reasons stated in Visa's Motion and herein, Cortex's claims of indirect infringement of the '531 Patent (Count 1 ¶¶ 27-31), '854 Patent (Count 2 ¶¶ 50-54), '859 Patent (Count 3 ¶¶ 70-74), and '973 Patent (Count 4 ¶¶ 93-97) should be dismissed with prejudice,[9] as should Cortex's claim of pre-suit willful infringement of the '531 Patent (FAC ¶¶ 99-102).

---

[8] "Reply Ex." refers to an Exhibit to the Declaration of Lucy Yen submitted as Exhibit A to this Reply brief. The Court may consider documents attached to a motion to dismiss as long as those documents "are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) ("In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated.").

[9] In its Opposition, Cortex clarified that it is not alleging pre-suit indirect infringement of the '854, '859, and '973 Patents. In the event the Court does not entirely dismiss claims alleging indirect infringement of these patents, given the open-ended reference in the Amended Complaint that Cortex asserts indirect infringement of these patents from *at least* the filing of this litigation (*see* FAC ¶¶ 49-50, 52, 69-70, 72, 92-93, 95), Visa respectfully requests the Court formally dismiss any claims of pre-suit indirect infringement of the '854, '859, and '973 Patents with prejudice since Cortex concedes it has no basis to assert them.

Date: May 15, 2023						Respectfully submitted,

								By: /s/ *Leslie Sara Hyman*

Leslie Sara Hyman
Texas State Bar No. 00798274
lhyman@pulmanlaw.com
**PULMAN, CAPPUCCIO & PULLEN, LLP**
2161 N.W. Military Highway, Suite 400301
San Antonio, Texas 78213
(210) 222-9494 (telephone)
(210) 892-1610 (facsimile)

James C. Yoon
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, CA 94304
(650) 493-9300 (telephone)
(650) 565-5100 (facsimile)
jyoon@wsgr.com

Lucy Yen (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
1301 Avenue of the Americas, 40th Fl.
New York, NY 10019
(212) 999-5800 (telephone)
(866) 974-7329 (facsimile)
lyen@wsgr.com

Catherine Lacey (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105
(415) 947-2000 (telephone)
clacey@wsgr.com

**ATTORNEYS FOR DEFENDANT VISA, INC.**

11

## CERTIFICATE OF SERVICE

I certify that on May 15, 2023, the foregoing Defendant Visa, Inc.'s Reply in Support of its Motion to Dismiss Plaintiff's Claims for Indirect Infringement and Pre-Suit Willful Infringement in Plaintiff's First Amended Complaint was filed electronically using the Court's CM/ECF system, which will send notification of such filing to the following:

Max L. Tribble, Jr.
mtribble@susmangodfrey.com
Bryce T. Barcelo
bbarcelo@susmangodfrey.com
Susman Godfrey L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096

Kalpana Srinivasan
ksrinivasan@susmangodfrey.com
Davida Brook
dbrook@susmangodfrey.com Susman Godfrey L.L.P.
1900 Avenue of the Stars, 14th Floor
Los Angeles, California 90067-6029

Tyler Finn
tfinn@susmangodfrey.com
Susman Godfrey L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019

Mark D. Siegmund
mark@swclaw.com
Melissa S. Ruiz
melissa@swclaw.com
Steckler Wayne Cherry & Love, PLLC
8416 Old McGregor Road
Waco, Texas 76712

Ricardo G. Cedillo
rcedillo@lawdcm.com
Joseph Korbel
jkorbel@lawdcm.com
Davis Cedillo & Mendoza Inc.
755 E. Mulberry Avenue, Suite 250
San Antonio, Texas 78212

*/s/ Leslie Sara Hyman*
Leslie Sara Hyman