1  JAMES C. YOON, State Bar No. 177155
   (jyoon@wsgr.com)
2  CATHERINE R. LACEY, State Bar No. 291591
   (clacey@wsgr.com)
3  JAMIE Y. OTTO, State Bar No. 295099
   (jotto@wsgr.com)
4  WILSON SONSINI GOODRICH & ROSATI, P.C.
   650 Page Mill Rd
5  Palo Alto, CA 94304-1050
   Tel:  650-493-9300
6  Fax: 650-565-5100

7  LUCY YEN, State Bar No. 224559
   (lyen@wsgr.com)
8  CASSIE L. BLACK (*pro hac vice* forthcoming)
   (cblack@wsgr.com)
9  WILSON SONSINI GOODRICH & ROSATI, P.C.
   1301 Avenue of the Americas
10 40th Floor
   New York, NY 10019
11 Tel:  212-999-5800
   Fax:  866-974-7329

12

13 *Attorneys for Defendant Visa Inc.*

14

15                **UNITED STATES DISTRICT COURT**

16              **NORTHERN DISTRICT OF CALIFORNIA**

17

18 CORTEX MCP, INC.,                          CASE NO.:  5:23-CV-05720

            Plaintiff,           **REPLY IN SUPPORT OF**
19                               **DEFENDANT VISA INC.'S MOTION**
       v.                        **TO DISMISS UNDER FED. R. CIV. P.**
20                               **12(b)(6) FOR UNPATENTABILITY**
   VISA INC.,                    **UNDER SECTION 101 AND TO**
21                               **DISMISS WILLFUL AND INDIRECT**
            Defendant.           **INFRINGEMENT CLAIMS**
22
                                 **[FILED CONCURRENTLY WITH**
23                               **DECLARATION OF CATHERINE R.**
                                 **LACEY]**
24
                                 Hearing Date:  February 29, 2024
25                               Hearing Time:  9:00 a.m.
                                 Courtroom:  4, 5th Floor
26                               Judge:  Hon. Edward J. Davila

27

28

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................................ 1

II.     CORTEX'S CLAIMS SHOULD BE DISMISSED UNDER SECTION 101 ................... 1

        A.     The Asserted Patents Are Directed to an Abstract Idea .......................................... 1

               1.     The Intrinsic Evidence Shows the Claims Are Unpatentably
                      Abstract ........................................................................................................ 1

               2.     Precedential Authority Has Found Analogous Claims to Be
                      Unpatentably Abstract .................................................................................. 5

        B.     The Asserted Patent Claims Fail *Alice* Step 2 ...................................................... 7

        C.     Dismissal with Prejudice Is Appropriate ............................................................... 9

III.    ALTERNATIVELY, CORTEX'S CLAIMS FOR WILLFUL, INDUCED, AND
        CONTRIBUTORY INFRINGEMENT SHOULD BE DISMISSED .............................. 10

        A.     Pre-Suit Knowledge Should be Required for Willful and Indirect
               Infringement .......................................................................................................... 10

        B.     Cortex Cannot Plead Pre-Suit Knowledge of the '531 Patent or
               Infringement .......................................................................................................... 12

        C.     Cortex Cannot Plead Egregious Misconduct as Required for Willfulness ........... 14

        D.     Cortex Cannot Plead Specific Intent as Required for Inducement ....................... 14

        E.     Cortex Cannot Plead the Absence of Substantial Non-Infringing Uses as
               Required for Contributory Infringement ............................................................... 15

        F.     Dismissal with Prejudice Is Appropriate ............................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adidas Am., Inc. v. Skechers USA, Inc.*,
   No. 16-1400, 2017 WL 2543811 (D. Or. June 12, 2017) ................................... 11

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*,
   838 F.3d 1253 (Fed. Cir. 2016) ..................................................................... 5

*Ancora Techs., Inc. v. HTC Am., Inc.*,
   908 F.3d 1343 (Fed. Cir. 2018), *as amended* (Nov. 21, 2018) .......................... 7

*Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*,
   827 F.3d 1341 (Fed. Cir. 2016) ..................................................................... 9

*Bauer v. Tacey Goss, P.S.*,
   No. 12-876 JSW, 2012 WL 2838834 (N.D. Cal. July 10, 2012) ....................... 14

*CAP Co. v. McAfee, Inc.*,
   No. 14-5068-JD, 2015 WL 3945875 (N.D. Cal. June 26, 2015) ....................... 11

*Cooper Lighting, LLC v. Cordelia Lighting, Inc.*,
   No. 16-2669, 2017 WL 3469535 (N.D. Ga. Apr. 6, 2017), *on
   reconsideration in part*, 2018 WL 11350387 (N.D. Ga. Jan. 25, 2018) .......... 11

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
   879 F.3d 1299 (Fed. Cir. 2018) ..................................................................... 7

*Finjan, Inc. v. Juniper Networks*, *Inc.*,
   WHA, 2018 WL 905909 (N.D. Cal. Feb. 14, 2018) ....................................... 12

*Fortinet Inc. v. FireEye Inc.*,
   No. 13-2496-EJD, 2014 WL 4955087 (N.D. Cal. Sept. 30, 2014) ................... 12

*GoTV Streaming, LLC v. Netflix, Inc.*,
   No. 22-7556, 2023 WL 2627016 (C.D. Cal. Feb. 16, 2023)............................ 11

*I/P Engine, Inc. v. AOL Inc.*,
   576 F. App'x 982 (Fed. Cir. 2014).................................................................. 10

*IBM v. Zillow Grp., Inc.*,
   50 F.4th 1371 (Fed. Cir. 2022) ....................................................................... 1

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*,
   681 F.3d 1323 (Fed. Cir. 2012) ................................................................... 15

*In re InvenSense, Inc. Sec. Litig.*,
   No. 15-84-JD, 2017 WL 11673462 (N.D. Cal. Apr. 12, 2017)........................ 15

*Intell. Ventures I LLC v. Cap. One Fin. Corp.*,
   850 F.3d 1332 (Fed. Cir. 2017) ..................................................................... 6

*Interval Licensing LLC v. AOL, Inc.*,
    896 F.3d 1335 (Fed. Cir. 2018) ............................................................................................. 8

*IPA Techs., Inc. v. Amazon.com, Inc.*,
    352 F. Supp. 3d 335 (D. Del. 2019) ....................................................................................... 2

*MasterObjects, Inc. v. Amazon.com, Inc.*,
    No. 20-8103 WHA, 2021 WL 4685306 (N.D. Cal. Oct. 7, 2021) ............................. 13, 14

*Mobile Equity Corp. v. Walmart Inc.*,
    No. 21-126, 2022 WL 4587554 (E.D. Tex. Sept. 8, 2022) ......................................... 13, 14

*NetFuel, Inc. v. Cisco Sys. Inc.*,
    No. 18-2352-EJD, 2018 WL 4510737 (N.D. Cal. Sept. 18, 2018) .................................. 11

*Procter & Gamble v. QuantifiCare Inc.*,
    288 F. Supp. 3d 1002 (N.D. Cal. 2017) ............................................................................... 2

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018) ...................................................................................... 1, 10

*Sec. First Innovations, LLC v. Google LLC*,
    No. 23-97, 2023 WL 7726389 (E.D. Va. Nov. 15, 2023) ................................................ 10

*Smart Auth. IP, LLC v. Elec. Arts, Inc.*,
    402 F. Supp. 3d 842 (N.D. Cal. 2019) ................................................................................ 7

*Sonos, Inc. v. Google LLC*,
    591 F. Supp. 3d 638 (N.D. Cal. 2022). .............................................................................. 10

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
    930 F.3d 1295 (Fed. Cir. 2019) ........................................................................................... 9

*Teradyne, Inc. v. Astronics Test Sys., Inc.*,
    No. 20-2713, 2020 WL 8173024 (C.D. Cal. Nov. 6, 2020) ............................................ 11

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017) ........................................................................................... 4

*Universal Secure Registry LLC v. Apple Inc.*,
    10 F.4th 1342 (Fed. Cir. 2021) ........................................................................... 4, 5, 6, 7, 9

*Valjakka v. Netflix Inc.*,
    No. 22-1490-JST, 2022 WL 19975412 (N.D. Cal. Oct. 11, 2022) ................................. 13

*VLSI Tech. LLC v. Intel Corp.*,
    No. 17-5671-BLF, 2023 WL 8654391 (N.D. Cal. Dec. 14, 2023) .................................. 10

*Word to Info, Inc. v. Google, Inc.*,
    140 F.Supp.3d 986 (N.D. Cal. 2015) ................................................................................ 11

*Yu v. Apple Inc.*,
    611 F. Supp. 3d 908 (N.D. Cal. 2020), *aff'd*, 1 F.4th 1040 (Fed. Cir. 2021).................. 10

1

**STATUTES**

2

Section 101 .................................................................................................. 1, 5, 9, 10, 15

3

**RULES**

4

Rule 12 ........................................................................................................................ 3

5

Rule 12(b)(6) ............................................................................................................ 2, 9

6

**MISCELLANEOUS**

7

*CosmoKey Sols,* 15 F.4th 1091, 1098 (Fed. Cir. 2021) ................................................ 9

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.      INTRODUCTION

In its Opposition to Visa's Motion to Dismiss (Dkt. 75; "Opposition" or "Opp."), Cortex accuses Visa of "mischaracterization" of the Asserted Patents, but it is Cortex—not Visa—that repeatedly mischaracterizes the Asserted Patents in an attempt to contort their claims to fit the innovative and successful Visa Token Service ("VTS") and to try to save them from unpatentability under Section 101.  Cortex's assertions are in direct conflict with the intrinsic evidence and fail to plausibly allege the claims are patentable under Section 101.  Cortex's Opposition only confirms that all of Cortex's claims should be dismissed with prejudice.

Cortex's Opposition also confirms that, in the alternative, Cortex's claims for willful, induced, and contributory patent infringement should be dismissed.  Cortex fails for a third time— following its original Complaint (Dkt. 1) and First Amended Complaint (Dkt. 25, "FAC") —to raise sufficient allegations to support these claims.  It is clear that Cortex did not identify any of the Asserted Patents to Visa or notify Visa of its assertions of infringement thereof prior to the filing of this case.  Cortex's indirect and willful infringement claims should be dismissed with prejudice.

## II.      CORTEX'S CLAIMS SHOULD BE DISMISSED UNDER SECTION 101

### A.      The Asserted Patents Are Directed to an Abstract Idea

#### 1.      The Intrinsic Evidence Shows the Claims Are Unpatentably Abstract

Tellingly, the section of Cortex's Opposition arguing the Asserted Patents are not directed to an abstract idea does not contain any citations to or discussion of the actual claim language.  *See* Opp. at 8-13.  Indeed, the section includes only a single, generic cite to ***any*** intrinsic evidence.  *Id.* at 9 (citing Fig. 3 generally).  Thus, Cortex's entire argument misses the mark because "[t]he first stage of the *Alice* inquiry looks at the 'focus' of ***the claims***'" and their "character as a whole," which Cortex fails to address.  *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018). [1]

This inquiry at *Alice* step 1 "often turns on whether the claims focus on specific asserted improvements in computer capabilities or instead on a process or system that qualifies [as] an abstract idea for which computers are invoked merely as a tool."  *IBM v. Zillow Grp., Inc.*, 50 F.4th

---

[1] Emphasis added throughout unless otherwise specified.

1371, 1377 (Fed. Cir. 2022). In its Motion (Dkt. 65; "Motion" or "Mot."), Visa walked through a representative claim from each of the Asserted Patents to show how these claims merely invoke generically-described computer components to implement the longstanding human activity of issuing and checking credentials. *See* Mot. at 9-11; Mot. at 2-3 (summarizing the Asserted Patents).[2] For example, taking the '531 Patent claim 1 and stripping it of the conventional computing steps (storing in memory, receiving, generating, transmitting, and verifying a file) and Cortex's meaningless coined terms ("officially verifiable electronic representation"), leaves nothing but the basic conventional human activity of, *e.g.*, storing a record that a driver is licensed at the DMV (the "storing . . ." step), producing and sending a license card to a driver at their request (the "receiving, from an OVER file storage client device. . . generating . . . transmitting . . ." steps), and comparing information from the card to the DMV's licensure records at a third-party's request (the "receiving, from an OVER file third-party client verifying device . . . verifying . . . transmitting . . ." steps). The other claims merely describe the process from a different perspective (client vs. server) or add other, conventional steps consistent with the abstract idea of issuing and checking credentials, such as using admittedly conventional NFC scanning ('859 Patent claim 1), using two credentials on two devices ('854 Patent claim 15), and having the OVER Engine double-check the credentials with the issuing agency during verification ('973 Patent claim 1). *See* Mot. at 10-11.

In its Opposition, Cortex repeatedly makes one argument across both steps of the *Alice* inquiry: it argues the claimed "OVER File" is "a *secondary representative* credential" that enables a process "without transmitting *any* sensitive personal information" and without storing such information "on the user's device." Opp. at 9-10 (emphasis in original). This argument, however, is directly contradicted by the Asserted Patents' shared specification, and thus it "need not be credited as true under the Rule 12(b)(6) analysis." *IPA Techs., Inc. v. Amazon.com, Inc.*, 352 F. Supp. 3d 335, 343 (D. Del. 2019); *see also Procter & Gamble v. QuantifiCare Inc.*, 288 F. Supp. 3d

---

[2] Cortex does not meaningfully challenge that these claims are representative. While it refers to some dependent claims in the background section of its Opposition (*see id.* at 4-5), its arguments treat the claims as a whole to the extent it addresses the claims at all.

1002, 1030 (N.D. Cal. 2017) (dismissing where plaintiff's submission "is contradicted by the specification's statement"). Here, for example, the provisional application discloses that the "OVER file compris[es] credential information including a credential number, a credential photo, or ***any other credential information***." Dkt. 65-3 ¶ 12. There is no plausible allegation the claimed methods or systems are directed to avoiding the transmission or storage of sensitive information because an OVER File can expressly contain any credential information, including sensitive information.

More specifically, Cortex mistakenly argues the "OVER File replaces the sensitive data (*i.e.*, a credit card ***drivers' license number*** . . .) with a unique secondary credential that contains no such sensitive data." Opp. at 1. The specification expressly discloses, however, the OVER File transmitted to and stored on the user's device may contain the driver's license number and other data from the license: "[A] portion of the ***stored*** OVER File may be displayed on the user device," and, if the user "select[s] a driver's license as the displayed OVER File credential" such display of the stored OVER File may include "the user's name as it appears on the user's driver license," "the user's home address and birth date," "a ***driver's license identification number***," and "***an image of a physical credential*** which forms the basis of the OVER File credential such as [the] driver's license." '531 Patent at 12:32-13:6. It also explains the OVER File "contain[s] the entered credential information," including "the ***legal name***, ***address***, and ***birth date*** of the person associated with the ***driver's license identification number***" and a license image. *Id.* at 6:47-56, claim 14.

Cortex's contentions that the claims are directed to a specialized "new data structure" relating to "storing and transmitting sensitive" information (Opp. at 10) that obviates the need for a user to "stor[e] her credential on her phone" (Opp. at 11) are simply not plausible because they are directly contradicted by the intrinsic evidence. The disclosure makes clear that the OVER File is simply an electronic file that contains information related to the credential—potentially including "sensitive information" and an image of the credential—and therefore, Cortex's contention that its Asserted Patents are directed to a "new data structure" is immaterial under Rule 12. Carrying written information copied from a credential or a photocopy of a driver's license, for example, and using the copy for verification purposes is longstanding human activity; claiming such information is

stored in a computer file on the user's device is not an improvement to computer functionality.[3]

Moreover, Cortex fails to describe what specific solution its Asserted Patents are purportedly directed to for replacing sensitive credentials with a non-sensitive credential. The mere idea of replacing identification with non-sensitive information is itself an abstract idea. *See, e.g.*, *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1348 (Fed. Cir. 2021) ("USR") (claims relating to a "user present[ing a] one-time code to the merchant" in lieu of identification that is transmitted to a "universal secure registry" for verification were unpatentable). The Asserted Patents are not directed to a specific improvement in computing even under Cortex's implausible allegations.

Cortex also argues the asserted claims are directed to a "novel technique" because the claimed credential "has been *verified* by the agency that issued the initial credential." Opp. at 9 (emphasis in original). This is not a specific improvement in computer functionality, either. The representative claims simply recite the result of this second level of verification, *i.e.*, that the credential "has been verified by an issuing agency to be an official representation of the credential, based on the information associated with the credential of the user." *See, e.g.*, '531 Patent claim 1. The claims are not directed to any specific solution for verifying the credential; they just require that it is. This is merely results-based claiming that does "not sufficiently describe how to achieve these results in a non-abstract way." *See Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017). The example of verifying with an issuing agency provided by the shared patent disclosure is general and low-tech. *See*, *e.g.*, '531 Patent at 5:60-6:11 (disclosing the issuing agency verifies the user according to "business rules," the user visits, *e.g.*, the state DMV office in person, and the DMV office gives the user a scannable code, *e.g.* a conventional QR code).

Similarly, Cortex argues the credential is "*tied* to a specific user device" (Opp. at 9; emphasis

_____

[3] Cortex makes the strange allegation in its Opposition that Visa applying for a patent relating to tokens after an alleged communication with Cortex somehow confirms Cortex's Asserted Patents are patentable. Opp. at 9. First, Cortex's patents do not relate to tokens. *See* Mot. at 9. Second, Visa applied for patents relating to using tokens in connection with transactions long before any alleged contact with Cortex. *See, e.g.*, Ex. 3.

in original), but again, the claim limitations Cortex appears to be referring to are simply results that the claims do not sufficiently describe how to achieve.  *See* '531 Patent claim 2 (reciting "a second official representation of the credential that is invalid for use in the first OVER file storage client device for authenticating the user"); '854 Patent claims 1, 8, 15 (same); '859 Patent claims 10, 19, 20 (same); '937 Patent claims 2, 9, 17 (same).  They state, without more, that the representation of the credential "is invalid" in other devices; they are not limited or directed to any particular technique for achieving that result.  Moreover, the Federal Circuit has found claims that require a specific device for authentication of credentials unpatentable under Section 101, as discussed *infra*.

### 2.   Precedential Authority Has Found Analogous Claims to Be Unpatentably Abstract

In assessing whether claims are unpatentable under Section 101, the Federal Circuit directs parties to consider prior opinions as "substantial guidance in determining whether claims are unpatentable under the 'abstract idea' rubric."  *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1258 (Fed. Cir. 2016).  Here, Visa has identified several analogous cases holding similar claims were unpatentable under Section 101.  Mot. at 11-12.  For example, in *USR*, the Federal Circuit affirmed each of the four asserted patents were directed to patent-ineligible subject matter. 10 F.4th at 1358.  Some of the patents were directed to "facilitat[ing] purchasing goods or services without revealing personal financial information to a merchant."  *Id.* at 1348.  One of these related to the user's electronic ID device generating a code that was transmitted to the so-called universal secure registry for verification.  *Id.*  Another related to the "combined use of a user device (*e.g.*, cell phone), a point-of-sale (POS) device, and a universal secure registry to facilitate financial transactions" including "the user device communicating with a secure database in the secure registry, which stores account information, such as credit card and debit card account information, for multiple accounts," and thus "allows users to employ a single user device or cell phone to conduct financial transactions at a POS device using a plurality of different credit or debit accounts." *Id.* at 1351. This latter patent included authenticating based on the user's specific device.  *See id.* ("authenticate the user based on . . . 'something that the user has' (*e.g.*, cell phone serial number)").

Similar to the *USR* system, Cortex's alleged OVER File engine stores credential information

and receives requests to verify users based on a scan of their device, where the scan can provide a simple code. *See, e.g.*, '531 Patent at 14:4-6 ("A third-party may use a third-party device 806 comprising the OVER File third party client 6 to scan the displayed information code 806."). While the OVER File engine also generates and transmits "OVER Files" to the user device, as discussed in the preceding section, there is no plausible allegation that these "OVER Files" are required to do more than store information copied from the credential in a conventional manner. *See also Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 850 F.3d 1332, 1339, 1342 (Fed. Cir. 2017) (using coined terms like "'management record types' ('MRTs') and 'primary record types' ('PRTs')" did not make claims patentable where intrinsic evidence showed they were no more than simple data structures). Cortex's Asserted Patents are directed to unpatentable subject matter like those at issue in *USR*.

Cortex's attempts to distinguish *USR* are not credible. Cortex first repeats its argument that the claims are directed to a novel "representative credential." Opp. at 13. Again, as discussed above, this allegation is implausible. Further, what is actually transmitted for verification to the OVER Engine in the claimed system is a simple code, such as from a conventional bar code scan or NFC communication by the third-party device, as in the first patent at issue in *USR*. *See, e.g.*, '531 Patent claim 1 (reciting "verifying that the scan associated with the OVER file corresponds with the information associated with the credential of the user"); *id.* at 5:7-15 (such scans include simple numeric codes); *id.* at 12:10-15 (NFC merely transmits "information code"). Cortex provides no explanation for its argument that because the Asserted Patents' credentials are "less transient" than those in *USR*, the Asserted Patents are less abstract. Opp. at 13. Cortex also argues its invention "obviates the needs for the merchant to communicate with the credit card company at all, or for any credit card information to be communicated at the point-of-sale." Opp. at 13. This argument ignores that the asserted claims do not describe a specific technique for verifying with the "issuing agency;" they are not directed to a specific technique for obviating communication with the issuer. Cortex also tries to distinguish, arguing it requires "only a single ping from a user device to the OVER Engine" (*id.*), but this is directly contradicted by the claims; the OVER Engine is a middle-man that received pings (or "request") from both the user and the third-party device. *See, e.g.*, '531 Patent Claim 1 (reciting "receiving, from an OVER file storage client device **of the user**, an OVER file

generation request" and "receiving, from an OVER file *third-party* client verifying device, a verifying request"); *Smart Auth. IP, LLC v. Elec. Arts, Inc.*, 402 F. Supp. 3d 842, 851 (N.D. Cal. 2019) (finding "the use of a third party intermediary to confirm the identity of a participant to a transaction" was an abstract idea). None of Cortex's arguments meaningfully distinguish *USR*.

Cortex's attempt to distinguish the other analogous cases cited by Visa also fails for the reasons discussed above. *See* Opp. at 12-13. Cortex simply reiterates its implausible argument that the Asserted Patent claims are directed to a "new data structure" that does not "stor[e] or transmit[] sensitive information, and its argument that the OVER file is verifiable without having to contact the issuing agency." *Id*. These arguments are unavailing for the reasons discussed above.

In contrast, the cases Cortex contends are analogous are in fact inapposite. *See* Opp. at 10. In *Ancora Techs., Inc. v. HTC Am., Inc.*, the claims were directed to specific technological solution to a problem, reciting, for example, "using an agent to set up a verification structure in the erasable, non-volatile memory of the BIOS" where the "unique characteristics" of the BIOS "were not previously used in the way now claimed, and the result is a beneficial reduction of the risk of hacking." 908 F.3d 1343, 1346, 1349 (Fed. Cir. 2018), *as amended* (Nov. 21, 2018). The OVER Engine of the Asserted Patents, by contrast, does not rely on any specific or unique hardware or software to provide their purported benefits. *See, e.g.*, '531 Patent at 5:42-44 (The "OVER File generation and verification engine 8 may be executed by *any* suitable system"); *id.* at 5:57-59 ("[A]ny suitable architecture and/or datastore may be employed by the OVER File generation and verification engine."); *id.* at 19:4-20:67. It is a generic computer component, like the universal secure registry of *USR*, not an improvement in computer technology. Similarly, the claims at issue in *Finjan, Inc. v. Blue Coat Sys., Inc.* did not involve authenticating or verifying a user or their credential and further "employ[ed] a new kind of file." 879 F.3d 1299, 1305 (Fed. Cir. 2018). As discussed above, Cortex's contention that its Asserted Claims "detail a novel structure" is at odds with the intrinsic evidence, implausible, and should be disregarded.

## B.    The Asserted Patent Claims Fail *Alice* Step 2

Despite Cortex's protests, Visa has more than shown Cortex's patents do not supply an inventive concept at *Alice* Step 2. First, Cortex cannot escape its own allegations in this case. Cortex

alleged it claimed to Visa—and repeats the claim in this case—that its Asserted Patents "cover[] *every aspect* of provisioning a representative credential, that can be scanned and verified."  FAC ¶ 11.  Cortex itself has alleged the Asserted Patents preempt the basic idea and are not limited to a specific inventive concept.[4]  Cortex now asserts it only meant its patents cover each component of *a* system and "only that particular system detailed over numerous specific limitations," which is implausible in light of Cortex's other allegations.  *See* Opp. at 16.  Cortex argues in its Opposition that the document that included this sweeping statement regarding the scope of its claimed invention put Visa on notice of infringement.  *See, e.g.*, *id.* at 6.  Cortex highlights in the FAC that:

> In that document, Cortex described its OVER File IP as "*significant*," "*covering every aspect* of provisioning a representative credential, that can be scanned and verified," and "as an effective leverage tool for Visa *across the board*." Cortex specifically noted that its OVER File IP was subject to "exi[s]ting infringement from *most all Wallet Solution providers*."

FAC ¶ 11.  Cortex's alleged statement that virtually any digital wallet system, regardless of the specific implementation, would infringe the Asserted Patents demonstrates that the claims, under its own allegations, are not directed to a specific inventive concept.

Visa also explained at length in its Motion how the Asserted Patents shared specification itself shows any additional elements of the claims are well-understood, routine, and conventional.  *See, e.g.*, Mot. at 2-5; 13-14.  Cortex's only argument in response is that the claims "disclose an inventive concept by the ordered combination of the limitations," but Cortex does not explain how the ordered combination is any different from routine solutions for issuing and checking credentials.

Instead, Cortex rehashes its incorrect argument that the claims "teach storing the sensitive personal information of a user credential on a remote database, rather than on a user's mobile phone" and "teach the generation of a secondary representative credential . . . without the sensitive personal information intact," which as explained above is contradicted by the intrinsic evidence.  Opp. at 14;'531 Patent at 12:32-13:6.  Cortex also repeats its arguments about tying the OVER File credential to a specific device and not having to communicate with the issuing agency (Opp. at 15),

---

[4] This also indicates the claims are directed to an abstract idea.  *See Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1342 (Fed. Cir. 2018) (acknowledging overlap in steps 1 and 2).

but, again, similar claims relating to using a specific phone to access a universal database of credentials were found not to have inventive concept and unpatentable in *USR*. *See* 10 F.4th at 1351. This feature does not render the claims patentable. Cortex also argues for the first time that the Asserted Patents involve "disabling all device functions (such as screenshots) while the credential is displayed on a user's screen," citing only the specification. Opp. at 15. This feature, however, does not appear anywhere in the claims. This argument does not support that the ***claimed*** invention supplies an inventive concept and is irrelevant to the patentability of the asserted claims.

Finally, the cases cited by Cortex to argue its claims disclose an inventive concept by the ordered combination of limitations are no help to its case. In *CosmoKey Sols.*, the district court believed the steps were routine or conventional because it misread a portion of the specification at issue as "allegedly admitting that these steps were routine or conventional." 15 F.4th 1091, 1098 (Fed. Cir. 2021). Here, there is no mistaking the extensive statements in the shared specification of the Asserted Patents that the claimed elements are conventional. Cortex also argues *SRI Int'l, Inc. v. Cisco Sys., Inc.* dealt with "materially indistinguishable language" to the claim language at issue here (Opp. at 16), but that is not so. 930 F.3d 1295, 1301 (Fed. Cir. 2019). The claims at issue in *SRI* disclosed specific categories of network data to be analyzed, for example. *Id.* Whereas here, the claims are devoid of any specific solution for implementing the abstract idea. Similarly, the claims at issue in *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC* involved "the installation of a filtering tool at a specific location, remote from the end-users, with customizable filtering features specific to each end user"—not simply having generic client devices communicate with a generic datastore of credentials to authenticate a user. 827 F.3d 1341, 1350 (Fed. Cir. 2016)

## C.    Dismissal with Prejudice Is Appropriate

Cortex's argument section labeled "disputed factual issues preclude judgment on the pleadings" includes only case law and no particular facts or circumstances of this case. Opp. at 17. In other words, if Cortex's arguments in this section were correct, courts could never grant a motion to dismiss under Section 101. But the Federal Circuit has held Section 101 patentability "may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under

the substantive standards of law." *SAP Am.*, 898 F.3d at 1166; *see also I/P Engine, Inc. v. AOL Inc.*, 576 F. App'x 982, 996 (Fed. Cir. 2014).  Cortex has not identified any claim construction or factual issues that need to be resolved *in this case* to determine the eligibility of the Asserted Patents.  Moreover, Cortex's cursory request for leave to amend (Opp. at 17) should also be denied because the plain language of the claims and intrinsic evidence show Cortex cannot overcome unpatentability under Section 101, and the new allegations raised in Cortex's Opposition that Cortex might add in an amended complaint do nothing to change this analysis for the reasons discussed *supra*.  *See Yu v. Apple Inc.*, 611 F. Supp. 3d 908, 917 (N.D. Cal. 2020), *aff'd*, 1 F.4th 1040 (Fed. Cir. 2021).  Thus, Cortex's claims should be dismissed with prejudice.

## III.   ALTERNATIVELY, CORTEX'S CLAIMS FOR WILLFUL, INDUCED, AND CONTRIBUTORY INFRINGEMENT SHOULD BE DISMISSED

### A.   Pre-Suit Knowledge Should be Required for Willful and Indirect Infringement

Cortex should not be permitted to pursue claims for willful or indirect infringement when Visa is not plausibly alleged to have had pre-suit knowledge of any of the Asserted Patents. Cortex does not dispute that if it has failed to plausibly allege pre-suit knowledge, its claims for *pre-suit* willful and indirect infringement should be dismissed.  *See* Opp. at 17-18.  Important public policy considerations weigh in favor of holding a patentee cannot rely on the complaint for knowledge for *post-suit* conduct either.  *See* Mot. at 7-8.  As a court in this District stated:

> [A]n important practical aspect of our patent system is encouraging the practice of pre-suit notice through a cease-and-desist letter that calls out the patent claims, the accused product, and the way it infringes the claims. . . to give the alleged infringer a meaningful opportunity to cease infringement or to get a license, all before any lawsuit commences. . . [A]llowing the complaint to serve as notice would circumvent the worthwhile practice to send a cease-and-desist letter before suit.

*Sonos, Inc. v. Google LLC*, 591 F. Supp. 3d 638, 643, 646 (N.D. Cal. 2022.  Furthermore, as another court in this District has noted, "because a complaint and infringement contentions are a necessary part of patent litigation, a finding that they alone satisfy post-suit notice would invite claims of willful infringement and indirect infringement into literally every patent suit."  *VLSI Tech. LLC v. Intel Corp.*, No. 17-5671-BLF, 2023 WL 8654391, at *31 (N.D. Cal. Dec. 14, 2023).

Courts in other Districts have agreed.  *See Sec. First Innovations, LLC v. Google LLC*, No. 23-97, 2023 WL 7726389, at *9 (E.D. Va. Nov. 15, 2023) (holding "service of a complaint does

not provide notice adequate to support a claim of willful infringement"); *GoTV Streaming, LLC v. Netflix, Inc.*, No. 22-7556, 2023 WL 2627016, at *3 (C.D. Cal. Feb. 16, 2023) ("[A]mbushing defendants with willful infringement claims instead of typical cease-and-desist letters would effectively deny defendants the opportunity to meaningfully evaluate and potentially cease the allegedly infringing conduct"); *Adidas Am., Inc. v. Skechers USA, Inc.*, No. 16-1400, 2017 WL 2543811, at *4 (D. Or. June 12, 2017) (no willful infringement where "the defendant does not learn of the patent's existence until the plaintiff files a complaint for infringement"); *Cooper Lighting, LLC v. Cordelia Lighting, Inc.*, No. 16-2669, 2017 WL 3469535, at *3 (N.D. Ga. Apr. 6, 2017), *on reconsideration in part*, 2018 WL 11350387 (N.D. Ga. Jan. 25, 2018) (similar).

Cortex cites several cases to argue there is a "robust consensus" that the complaint provides sufficient notice for post-suit claims, but there do not appear to be enough cases cited to show that a "majority" of courts across the 15 Districts in the Ninth Circuit hold this view, as Cortex contends. *See* Opp. at 17-18 (citing six cases). Moreover, several indicate the complaint ***cannot*** serve as notice for willful infringement. *See CAP Co. v. McAfee, Inc.*, No. 14-5068-JD, 2015 WL 3945875, at *2 (N.D. Cal. June 26, 2015) (dismissing willful infringement for failing to "allege that defendants had any pre-suit knowledge of the patents"); *Teradyne, Inc. v. Astronics Test Sys., Inc.*, No. 20-2713, 2020 WL 8173024, at *5 (C.D. Cal. Nov. 6, 2020) (dismissing where plaintiff "has not shown that [defendant] had pre-suit knowledge of infringement"). At best, Cortex's purported consensus shows its willful infringement claims should be dismissed.

Cortex also claims this Court has held the complaint serves as sufficient notice, but Cortex has overstated the cited case to say the least. Opp. at 18. In *NetFuel, Inc. v. Cisco Sys. Inc.*, this Court stated (shortly after the portion quoted by Cortex) that a "patentee, however, must have a good faith basis for alleging willful infringement ***at the time when the complaint is filed***." No. 18-2352-EJD, 2018 WL 4510737, at *3 (N.D. Cal. Sept. 18, 2018). The Court therefore held: "The absence of any allegation of pre-filing knowledge of the patents is ***fatal*** to [plaintiff's] willful infringement claims." *Id.* (quoting *Word to Info, Inc. v. Google, Inc.*, 140 F.Supp.3d 986, 990 (N.D. Cal. 2015)). As to indirect infringement, the *NetFuel* defendant had only moved for pre-suit dismissal. *See NetFuel*, 2018 WL 4510737, at *1. In another case, as Visa noted, this

1   Court dismissed claims for indirect infringement where the plaintiff failed to plausibly plead pre-

2   suit knowledge—a case Cortex ignores in its Opposition.  *See* Mot. at 8; *Fortinet Inc. v. FireEye*

3   *Inc.*, No. 13-2496-EJD, 2014 WL 4955087, at *5 (N.D. Cal. Sept. 30, 2014).

4       This Court should continue to hold that the complaint cannot serve as the basis for

5   knowledge for post-suit willful and indirect infringement claims and dismiss Cortex's claims

6   because it has not pled pre-suit knowledge of any of the Asserted Patents or infringement thereof.

7       **B.       Cortex Cannot Plead Pre-Suit Knowledge of the '531 Patent or Infringement**

8       It is clear from Cortex's FAC and Opposition that Cortex never accused Visa of

9   infringement until the filing of this action or specifically identified any of the Asserted Patents to

10  Visa.  Cortex acknowledges its only pre-suit communications with Visa were for the express

11  purpose to "explore a commercial relationship . . . with Visa"—not to accuse Visa of

12  infringement.  Opp. at 19.  And Cortex does not dispute that it never identified the '531 Patent—or

13  any of the Asserted Patents—specifically to Visa or provided any contentions as to how Visa or

14  VTS allegedly infringes the '531 Patent.  *See id.*. at 18-19.  Nor does Cortex identify any other

15  allegations relating to how Visa would have become aware of the '531 Patent or its alleged

16  infringement thereof.  *See id.*  Allegedly emailing materials twice to Visa executives that referred

17  to "*an* OVER File patent," that alleged "exi[s]ting infringement from *most* all Wallet Solution

18  providers," and that separately discussed VTS, is insufficient to meet the pleading standard no

19  matter how much Cortex attempts to dress up these allegations.  *See* FAC. ¶ 11.

20      Mere allegations that the patentee and defendant had pre-suit communications about

21  infringement of an unidentified patent have been found insufficient.  *See* Mot. at 16.   For

22  example, in *Finjan, Inc. v. Juniper Networks*, *Inc.*, the parties allegedly met "on multiple

23  occasions 'to discuss specifically how [defendant's] products related to [patentee's] patents."  No.

24  17-5659 WHA, 2018 WL 905909, at *3 (N.D. Cal. Feb. 14, 2018).  This was insufficient:

25  "generally discussing purported infringement of Finjan's *patent portfolio* hardly translates to

26  specifically alerting Juniper to infringement of the *patents-in-suit*."  *Id.*  (emphasis in original).

27  Similarly, Cortex has only alleged it informed Visa of *a* patent—not the '531 Patent (or any of the

28  Asserted Patents, as the others had not even issued yet).  Cortex cannot plead pre-suit knowledge.

Moreover, courts in this District have consistently held that communications that inform the accused infringer of the patent "without accusing [them] of infringement" are insufficient. *See MasterObjects, Inc. v. Amazon.com, Inc.*, No. 20-8103 WHA, 2021 WL 4685306, at *4 (N.D. Cal. Oct. 7, 2021) (collecting cases); *see also Valjakka v. Netflix Inc.*, No. 22-1490-JST, 2022 WL 19975412, at *2 (N.D. Cal. Oct. 11, 2022) (letter identifying patent as relevant to "leading content delivery network" for licensing held insufficient). Cortex argues the Court should infer Visa must have been aware of "the connection between the OVER File patent and" VTS because one of the recipients was "responsible for VTS," but while this "*may* be consistent with" pre-suit knowledge, "mere consistency is insufficient to state a claim." *MasterObjects*, 2021 WL 4585306, at *5 (emphasis in original). *MasterObjects* is an instructive case Visa cited in its Motion but Cortex ignores in its Opposition. Mot. at 16. The court rejected the patentee's argument that it had sufficiently alleged knowledge based on allegations that the defendant's chief IP counsel had direct knowledge of prosecution activity citing the asserted patent and repeated arguments to the USPTO that the accused products were patentable over patentee's patents. *MasterObjects*, 2021 WL 4585306, at *6. Even allegations that the principal engineer for the defendant's accused products was also a named inventor of defendant's patents that cited to plaintiff's related patents were insufficient. *Id.* at *5-6. The Court held "[e]ven considering all of [plaintiff's] miscellany of allegations of [defendant's] familiarity with the [asserted] patent together, the []complaint fails to allege [defendant] had pre-suit knowledge of infringement of the [asserted] patent. This order will not manufacture a signal from the noise." *Id.* This Court should not manufacture a signal from Cortex's noise, either. Cortex's allegations that a recipient was allegedly familiar with VTS and was informed Cortex had some related patent falls short of pleading the required knowledge.

Cortex cites a single, non-controlling, out-of-circuit case to argue similar allegations of pre-suit knowledge have been found sufficient, but that case is not analogous. *See* Opp. at 19 (citing *Mobile Equity Corp. v. Walmart Inc.*, No. 21-126, 2022 WL 4587554, at *2 (E.D. Tex. Sept. 8, 2022)). In that case, the communications from defendant specifically listed the prosecution counsel of the asserted patent, and defendant replied to plaintiff's communications. *Id.* at *2-3. Patentee also allegedly had three phone conversations with defendant's "engineers

1  regarding [plaintiff's] patented mobile e-payment technology," and the defendant failed to "offer

2  any case law" showing a failure to identify the patent or accuse defendant of infringement was

3  "fatal" to pre-suit knowledge. *Id.* at *2. By contrast, Visa has offered such case law, and Cortex's

4  alleged emails to Visa are not alleged to have (1) identified prosecution counsel, (2) received any

5  response from Visa, or (3) involved any live discussions or engineers. *Mobile Equity Corp.* is no

6  help to Cortex, and its willful and indirect infringement claims should be dismissed.

7        **C.**      **Cortex Cannot Plead Egregious Misconduct as Required for Willfulness**

8        Cortex's willful infringement claims fail for the independent reason that Cortex cannot

9  plead egregious misconduct, as required for willful infringement and as Visa pointed out in its

10  Motion. *See* Mot. at 18-19. Cortex fails to address this argument at all. *See* Opp. at 18-20.

11        **D.**      **Cortex Cannot Plead Specific Intent as Required for Inducement**

12        Cortex argues, essentially, that it has sufficiently pled specific intent as required for

13  inducement because "***any use*** of the Visa Token Service infringes the Asserted Patents," *i.e.* VTS

14  "has no substantial non-infringing use," and therefore Cortex's general allegations regarding

15  materials and instructions provided by Visa (or EMVCo) for VTS are sufficient. *See* Opp. at 21-

16  24. First, this is not what Cortex alleged in the FAC, as Visa has pointed out. Mot. at 23. Instead,

17  Cortex pled only the "***infringing aspects*** of the [] Accused Products can be used only in a manner

18  that infringes . . . and thus have no substantial non-infringing uses." FAC ¶¶ 31, 54, 74, 97.

19        Moreover, the FAC itself contradicts the assertion that any use of VTS infringes the

20  Asserted Patents. For example, Cortex acknowledges VTS "enables digital payment services ***[1]***

21  ***in-store, [2] online, and [3] in-app***" but only alleges infringement when VTS is used for "***in-store***

22  payment." FAC ¶¶ 23, 66; *see also id.* ¶¶ 43, 86 (The "merchant POS terminal ***must have*** the

23  ability to scan . . . such as through NFC [] or a card reader."). The Court should not accept new

24  allegations raised in Opposition that contradict the FAC. *See Bauer v. Tacey Goss, P.S.*, No. 12-

25  876 JSW, 2012 WL 2838834, at *3 (N.D. Cal. July 10, 2012). Cortex's infringement allegations

26  rely on the ***in-store*** point-of-sale device to meet elements required by every claim, such as a

27  "third-party client verifying device," a "scan associated with [an] OVER File," or a "Near Field

28  Communication (NFC)." None of these can plausibly be alleged when, for example, a user makes

on **online** payment after accessing a website on their device—an admitted use of VTS in the FAC.

Cortex's invocation of EMVCo is also unavailing.  The EMVCo specification cited by Cortex similarly includes, for example, extensive disclosures of an "Online Wallet" that does not involve scanning and for at least that reason cannot plausibly be accused of infringement.  *See, e.g.*, Dkt. 29-1 at 44-59.  In addition, Cortex provides no authority for its contention that it "has alleged specific facts to draw the reasonable inference that Visa acts through EMVCo."  Opp. at 23.  For example, the FAC cites to documentation showing EMVCo is "collectively owned by American Express, Discover, JCB, Mastercard, UnionPay and Visa."  *See* FAC fn.6; Ex. 4.  Cortex makes no specific allegations to support its contention that EMVCo is "managed by Visa" other than its ownership interest, which is clearly shared by several other major companies.  FAC ¶ 16.  Cortex has not plausibly alleged EMVCo's publications can be imputed to Visa.

### E.   Cortex Cannot Plead the Absence of Substantial Non-Infringing Uses as Required for Contributory Infringement

Contrary to Cortex's contention in its Opposition, the FAC does, in fact, "actually make clear on [its] face that [VTS] ha[s] substantial non-infringing uses," as discussed in the preceding section.  *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012); Opp. at 25.  The FAC's attempt to limit the "substantial non-infringing uses" analysis to only the allegedly "infringing aspects" of VTS is precisely what was prohibited by the Federal Circuit in *In re Bill of Lading*.  *See* Mot. at 22-23 (citing 681 F.3d at 1338).

### F.   Dismissal with Prejudice Is Appropriate

Cortex does not request leave to amend with respect to its willful and indirect infringement claims.  *Cf.* Opp. at 17 (requesting leave as to Section 101).  Cortex already attempted to amend once to overcome the deficient allegations in support of these claims.  *See, e.g.*, Dkt. 26.  And nothing in Cortex's Opposition suggests it can further amend to adequately make these claims.  "Because it is clear [Cortex] has made its best case and that best case is still wanting, the Court" should dismiss these claims with prejudice rather than grant leave to amend *sua sponte*.  *In re InvenSense, Inc. Sec. Litig.*, No. 15-84-JD, 2017 WL 11673462, at *3 (N.D. Cal. Apr. 12, 2017).

1    Dated: January 30, 2024

2                                                      By: */s/ James C. Yoon*

3                                                          James C. Yoon, State Bar No. 177155
                                                          (jyoon@wsgr.com)
4                                                          Catherine R. Lacey, State Bar No. 291591
                                                          (clacey@wsgr.com)
5                                                          Jamie Y. Otto, State Bar No. 295099
                                                          (jotto@wsgr.com)
6                                                          WILSON SONSINI GOODRICH & ROSATI,
                                                          P.C.
7                                                          650 Page Mill Rd
                                                          Palo Alto, CA 94304-1050
8                                                          Tel:  650-493-9300
                                                          Fax: 650-565-5100
9
                                                          Lucy Yen, State Bar No. 224559
10                                                         (lyen@wsgr.com)
                                                          Cassie Black (*pro hac vice* forthcoming)
11                                                         (cblack@wsgr.com)
                                                          WILSON SONSINI GOODRICH & ROSATI,
12                                                         P.C.
                                                          1301 Avenue of the Americas
13                                                         40th Floor
                                                          New York, NY 10019
14                                                         Tel:  212-999-5800
                                                          Fax:  866-974-7329
15
                                                          *Attorneys for Defendant Visa Inc.*
16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing documents were served on all counsel of record via CM/ECF electronic mail on January 30, 2024.

Dated: January 30, 2024

By: /s/ *James C. Yoon*
James C. Yoon, State Bar No. 177155
jyoon@wsgr.com
WILSON SONSINI GOODRICH & ROSATI