| | |
|---|---|
| 1 | Kalpana Srinivasan (CA SBN: 237460) |
|   | ksrinivasan@susmangodfrey.com |
| 2 | Davida Brook (CA SBN 275370) |
|   | dbrook@susmangodfrey.com |
| 3 | SUSMAN GODFREY L.L.P. |
|   | 1900 Avenue of the Stars, Suite 1400 |
| 4 | Los Angeles, California 90067-6029 |
|   | Telephone: (310) 789-3100 |
| 5 | Facsimile: (310) 789-3150 |
| 6 | Max L. Tribble, Jr. (CA SBN: 326851) |
|   | mtribble @susmangodfrey.com |
| 7 | Bryce Barcelo (*pro hac vice*) |
|   | bbarcelo@susmangodfrey.com |
| 8 | Thomas V. DelRosairo (CA SBN: 236264) |
|   | tdelrosario@susmangodfrey.com |
| 9 | SUSMAN GODFREY L.L.P. |
|   | 1000 Louisiana, Suite 5100 |
| 10 | Houston, Texas 77002-5096 |
|    | Telephone: (713) 651-9366 |
| 11 | Facsimile: (713) 654-6666 |
| 12 | Tyler Finn (*pro hac vice*) |
|    | tfinn@susmangodfrey.com |
| 13 | SUSMAN GODFREY L.L.P. |
|    | One Manhattan West |
| 14 | New York, NY 10001 |
|    | Telephone: (212) 336-8300 |
| 15 | Facsimile: (212) 336-8340 |
| 16 | *Attorneys for Plaintiff Cortex MCP, Inc.* |

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| CORTEX MCP, INC., | Case No. 5:23-CV-05720-EJD |
| Plaintiff, | **OPENING CLAIM CONSTRUCTION BRIEF** |
| vs. | DATE: September 5, 2024 |
| VISA, INC. | TIME: 10:00 a.m. |
|  | DEPT: Courtroom 4 |
| Defendant. | JUDGE: Hon. Edward J. Davila |

## TABLE OF CONTENTS

I. Introduction ................................................................................................................... 1

II. Background of Patents ..................................................................................................... 1

III. Level of Ordinary Skill .................................................................................................... 3

IV. Legal Principles of Claim Construction ........................................................................... 3

V. Disputed Claim Terms ...................................................................................................... 4

    1. "Credential" ............................................................................................................ 4

    2. "Scan" / "Scanned" ................................................................................................. 7

    3. "Qualifications" .................................................................................................... 10

    4. Remaining Terms .................................................................................................. 13

    5. Conclusion ............................................................................................................ 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ACTV, Inc. v. Walt Disney Co.*,
  346 F.3d 1082 (Fed. Cir. 2003) .................................................................................................. 11

*Bancorp Services, L.L.C. v. Hartford Life Ins. Co.*,
  359 F.3d 1367 (Fed. Cir. 2004) .................................................................................................. 10

*Chef Am., Inc. v. Lamb-Weston, Inc.*,
  358 F.3d 1371 (Fed. Cir. 2004) .................................................................................................. 11

*ClearOne, Inc. v. Shure Acquisition Holdings, Inc.*,
  35 F.4th 1345 (Fed. Cir. 2022) ................................................................................................... 13

*Cont'l Circuits LLC v. Intel Corp.*,
  915 F.3d 788 (Fed. Cir. 2019) ...................................................................................................... 5

*Cox Commc'ns, Inc. v. Sprint Commc'n Co. LP*,
  838 F.3d 1224 (Fed. Cir. 2016) .................................................................................................. 10

*CUPP Computing AS v. Trend Micro Inc.*,
  53 F.4th 1376 (Fed. Cir. 2022) ................................................................................................... 10

*Ericsson, Inc. v. D-Link Sys., Inc.*,
  773 F.3d 1201 (Fed. Cir. 2014) .................................................................................................... 4

*Grace Instrument Indus. v. Chandler Instruments Co.*,
  57 F.4th 1001 (Fed. Cir. 2023) ................................................................................................... 11

*Homeland Housewares, LLC v. Whirlpool Corp.*,
  865 F.3d 1372 (Fed. Cir. 2017) .................................................................................................... 3

*Honeywell International Inc. v. Universal Avionics Systems Corp.*,
  488 F.3d 982 (Fed. Cir. 2007) .................................................................................................... 11

*Immunex Corp. v. Sanofi-Aventis U.S. LLC*,
  977 F.3d 1212 (Fed. Cir. 2020) ................................................................................................ 6, 9

*Merck & Co. v. Teva Pharms. USA, Inc.*,
  347 F.3d 1367 (Fed. Cir. 2003) .................................................................................................... 3

*Nautilus Inc. v. Biosig Instruments, Inc.*,
  572 U.S. 898 (2014) ................................................................................................................... 13

*Nevro Corp. v. Bos. Sci. Corp.*,
  955 F.3d 35 (Fed. Cir. 2020) ...................................................................................................... 13

*One-E-Way, Inc. v. International Trade Commission*,
    859 F.3d 1059 (Fed. Cir. 2017) .................................................................................. 10

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) .............................................................................. *passim*

*Primos, Inc. v. Hunter's Specialties, Inc.*,
    451 F.3d 841 (Fed. Cir. 2006) .................................................................................. 10

*Renishaw PLC v. Marposs Societa' per Azioni*,
    158 F.3d 1243, 1248 (Fed. Cir. 1998) ........................................................................ 3

*Retractable Techs., Inc. v. Becton, Dickinson & Co.*,
    653 F.3d 1296 (Fed. Cir. 2011) ............................................................................. 5, 8

*Sisvel Int'l S.A. v. Sierra Wireless, Inc.*,
    81 F.4th 1231 (Fed. Cir. 2023) ....................................................................... 4, 6, 8, 9

*Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*,
    844 F.3d 1370 (Fed. Cir. 2017) ................................................................................ 10

*Thorner v. Sony Computer Ent. Am. LLC*,
    669 F.3d 1362 (Fed. Cir. 2012) ............................................................................. 5, 7

*U.S. Surgical Corp. v. Ethicon, Inc.*,
    103 F.3d 1554 (Fed. Cir. 1997) .................................................................................. 7

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996) .................................................................................... 4

*X One, Inc. v. Uber Techs., Inc.*,
    440 F. Supp. 3d 1019 (N.D. Cal. 2020) ...................................................................... 3

iii
CORTEX'S OPENING CLAIM CONSTRUCTION BRIEF
Case No.: 5:23-cv-05720-EJD

## I. Introduction

There are seven disputed terms before the Court, two of which the parties identified as "most significant" and one of which Defendant Visa, Inc. ("Visa") identified as "significant."

Plaintiff Cortex MCP, Inc. ("Cortex") disputes the need to construe "credential," "scan" or "qualifications." The patentee neither engaged in lexicography nor disavowed the full scope of the claims. Under those circumstances, the Federal Circuit has repeatedly held that the plain and ordinary meaning must control, that is improper to import limitations through a construction, and that extrinsic evidence cannot be used to create an ambiguity or contradict the intrinsic evidence.

Yet Visa asks this Court to artificially narrow the scope of the patents in suit by proposing constructions based on a single embodiment and importing limitation into the claims that are unsupported by the intrinsic evidence. Visa's proposed constructions are at odds with the specification and black letter law on claim construction.

Regarding the term "qualification," Visa's assertion that the term "qualification" is indefinite ignores the relevant test for indefiniteness. Under Supreme Court precedent, the question is whether entire claims, not particular claim terms, fail to inform those skilled in the art about the scope of the invention. Reading the claim as a whole, the scope of the claim—and the term itself—is clear.

Accordingly, Cortex requests that the Court reject Visa's proposed constructions and adopt for each term the plain and ordinary meaning as understood by a person of ordinary skill in the art.

## II. Background of Patents

U.S. Patent 9,251,531 ("'531 Patent"); U.S. Patent 9,954,854 ("'854 Patent"); U.S. Patent 10,749,859 ("'859 Patent"); and U.S. Patent 11,329,973 ("'973 Patent") (collectively, the "Asserted Patents"), each titled "File Format and Platform for Storage and Verification of Credentials," and entitled to a priority date of December 21, 2012, are directed to a "secure system for storing and displaying user credentials." Exhibit 1, '531 Patent, 1:37–39[1]. Cortex asserts claims 1–2, 4–10, 14–15, 17–18, 20–21, 23–25 and 27–28 of the '531 Patent; claims 1–3, 8–10, and 15–17 of the

---

[1] Each of the Asserted Patents share a common specification.

'854 Patent; claims 1–2, 4–5, 9–10, 12–13, and 18–21 of the '859 Patent; and claims 1–2, 4, 8–9, 11, and 16–17 of the '973 Patent (collectively, the "Asserted Claims").

The Asserted Patents describe "an Officially Verifiable Electronic Representation (OVER) File" that "provides a secure file format and platform for the storage and verification of key user or consumer credentials." '531 Patent at 3:50–53. Figure 1 presents an overview diagram that shows an OVER File storage client 4 that stores OVER Files that are representative of user credentials for third-party verification of the credentials. *Id*. at 3:57–63. The OVER File third party client 6 is executed by a third party device "to verify the existence and validity of OVER File credentials presented by a user." *Id*. at 4:7–9. The third party "scan[s] or otherwise interact[s]" with OVER File credentials, then contacts a remote server, "such as the OVER File generation and verification engine 8" to verify the user credential. *Id*. at 4:11–15.

A user would use the OVER File generation and authorization engine to generate OVER File credentials that can then be stored in an OVER File storage client. *Id*. at 4:25–29. Further details about how the generation of an OVER File credential is presented with respect to FIG. 2.

Another use case is the verification process, presented with respect to FIG. 3. A user presents the credentials stored in the OVER File storage client to a third-party. *Id*. at 7:31–50. The third-party then initiates a verification program to verify the credentials from the user's device. *Id*. at 7:51–59.

In an exemplary use case, a user presents identification to a third-party for age verification wherein an OVER file contains the stored credential. *Id*. at 12:3–6. The third-party verifies an information code generated by the OVER File storage client which is then displayed or transmitted via networked or radio transmission, such as Near Field Communication (NFC) or Bluetooth. *Id*. at 12:7–13.

An exemplary way for a user to select a credential to be verified is shown in FIGs. 5 and 6. FIG. 5 shows various categories of credentials to be verified, including insurance/auto, access, coupons, loyalty, transportation, and miscellaneous. *Id*. at 10:21–26.

After selecting a category of credential to be verified, the available credentials is displayed, as illustrated in FIG. 6. *Id*. at 10:47–50.

### III. Level of Ordinary Skill

A person of ordinary skill in the art at the time of the invention would have the equivalent of a Bachelor of Science degree in computer science, computer engineering, or a related field and approximately two years of experience working in electronic payment systems, network authentication systems, or related areas. More working experience could offset less formal university training, and vice versa.

### IV. Legal Principles of Claim Construction

As this Court has explained, "[G]enerally, the words of a claim should be given their 'ordinary and customary meaning,' which is 'the meaning that the term[s] would have to a person of ordinary skill in the art in question at the time of the invention.'" *X One, Inc. v. Uber Techs., Inc.*, 440 F. Supp. 3d 1019, 1029 (N.D. Cal. 2020) (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005)).

When claim construction is required, it "begins and ends in all cases with the actual words of the claim." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998). Courts look to "the context in which a term is used in the asserted claim," as well as "[o]ther claims of the patent in question." Phillips, 415 F.3d at 1314. In addition, "claims must be construed so as to be consistent with the specification, of which they are a part." *Merck & Co. v. Teva Pharms. USA, Inc.*, 347 F.3d 1367, 1371 (Fed. Cir. 2003). "In some cases, the ordinary meaning of claim language may be readily apparent and claim construction will involve little more than the application of the widely accepted meaning of commonly understood words." *Homeland Housewares, LLC v. Whirlpool Corp.*, 865 F.3d 1372, 1375 (Fed. Cir. 2017) (citing *Philips*, 415 F.3d at 1314).

The patent prosecution history may also shed light on the meaning of terms. However, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Phillips*, 415 F.3d at 1317.

Courts may also rely on extrinsic evidence such as "expert and inventor testimony, dictionaries, and learned treatises," but such evidence is "less significant than the intrinsic record."

1  *See id*. A "court should discount any expert testimony that is clearly at odds with the claim
2  construction mandated by the claims themselves, the written description, and the prosecution
3  history….". *See id*. at 1318. "Indeed, where the patent documents are unambiguous, expert
4  testimony regarding the meaning of a claim is entitled to no weight." *Vitronics Corp. v.*
5  *Conceptronic, Inc.*, 90 F.3d 1576, 1584 (Fed. Cir. 1996).

**V.     Disputed Claim Terms**

**1.     "Credential"**

| Cortex's Construction | Visa's Construction |
|---|---|
| No construction necessary. | "credential" means "form of evidence or documentation that attests to an individual's identity or certifications, such as a driver's license or professional license" |

The term "credential" does not require any construction by the Court, because the term has a plain and ordinary meaning.

"Generally, claim terms should be given their ordinary and customary meaning to a person having ordinary skill in the art at the time of the effective date of the patent application." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1217 (Fed. Cir. 2014). The caveat being that "[a] claim term's plain and ordinary meaning will not apply '1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Sisvel Int'l S.A. v. Sierra Wireless, Inc.*, 81 F.4th 1231, 1236 (Fed. Cir. 2023). Since the patentee neither created its own definition of "credential" that deviates from the plain and ordinary meaning nor disavowed the full scope of the term "credential," no construction is necessary and Visa's proposed construction must be rejected.

Visa attempts to improperly limit the scope of the claim by asking this Court to adopt a narrowed definition of "credential," limiting the term to just credentials for "identity or certifications." But Visa has a high hurdle to prove the patentee redefined the term "credential" or disavowed the full scope of "credential."

To act as its own lexicographer, a patentee must do more than "simply disclose a single embodiment or use a word in the same manner in all embodiments, **the patentee must clearly**

1  **express an intent to redefine the term."** *Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (internal marks omitted) (emphasis added). "[T]he standard for disavowal of claim scope is similarly exacting" and "[i]t is likewise not enough that the only embodiments, or all of the embodiments, contain a particular limitation." *Id.* at 1366; *see also Cont'l Circuits LLC v. Intel Corp.*, 915 F.3d 788, 797 (Fed. Cir. 2019) ("[P]hrases such as 'one technique,' 'can be carried out,' and 'a way' indicate that using Probelec XB 7081 is only one method for making the invention and does not automatically lead to finding a clear disavowal of claim scope."). Instead, "to disavow claim scope, the specification must contain expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope."). *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1306 (Fed. Cir. 2011) (internal marks omitted). The specification and prosecution history lack any such "expressions of manifest exclusion" for a disavowal of claim scope. Nor do they contain anything resembling a clear expression of "an intent to redefine the term" "credential." In fact, the specification shows the opposite.

The specification makes clear that "credential" is used in its broadest sense. First, the specification includes many types of exemplar credentials. *See, e.g.*, Fig. 5 ("Insurance/Auto," "Access," "Coupons," "Loyalty," "Transportation," and "Primary ID"); *see also, e.g.*, '854 at 11:5-8 ("a registration card, inspection documents, or an automobile club member card."); *see also, e.g.*, '854 at 4:9-14 ("The OVER File credentials may also comprise privately issued credentials, such as, for example, employee identification cards, merchant loyalty cards, access cards, insurance credentials, transportation credentials, **or any other credential** that may be electronically verified by an issuing agency.") (emphasis added); '854 at 11:3-4 ("auto insurance credentials, home insurance credentials, or medical insurance credentials.") Second, the specification never uses language to limit the type of credential at issue. *See, e.g., id.* at 4:9-10 ("credentials **may also comprise**") (emphasis added); *id.* at 4:5-6 ("credentials **may comprise**") (emphasis added); *id.* at 10:66-67 ("**For example**, credential category screen illustrates **one embodiment** of an insurance and automobile credential category") (emphasis added); 11:3-4 ("**For example,** the OVER File credentials 516a-516h **may comprise** auto insurance credentials, home insurance credentials, or medical insurance credentials.") (emphasis added). Visa's proposed construction fails because Visa

1  cannot demonstrate a clear disavowal of claim scope.

2  Indeed, the Federal Circuit has repeatedly warned against construction that limit a term to just an embodiment in the specification. *Sisvel*, 81 F.4th at 1236 ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments.").

6  Not only is Visa unable to show the patentee disavowed all credentials beyond "identity or certifications," but Visa's proposed construction actually *conflicts* with the embodiments identified *in the specification* that are neither identity nor certification credentials. The Federal Circuit has recognized that "there is a strong presumption against a claim construction that excludes a disclosed embodiment." *Immunex Corp. v. Sanofi-Aventis U.S. LLC*, 977 F.3d 1212, 1220 (Fed. Cir. 2020) (internal marks omitted). Visa's proposed construction limiting credentials to "identity or certifications" would exclude "Coupons," "Loyalty," "Transportation," "Access," Fig. 5, "merchant loyalty cards, access cards, insurance credentials, transportation credentials, '854 at 4:9-14, "auto insurance credentials, home insurance credentials, [and] medical insurance credentials," '854 at 11:3-4.

16  Visa's proposed construction is also non-sensical when read in the context of the claim language. For example, Claim 1 of the '854 refers to "the original credential of the user for proving the user's identity or qualifications." The "identity or qualifications" language already defines the scope of the type of credential at issue. Plugging "form of evidence or documentation that attests to an individual's identity or certifications, such as a driver's license or professional license" into the claim language results in: "the original [*form of evidence or documentation that attests to an individual's identity or certifications, such as a driver's license or professional license*] of the user for proving the user's identity or qualifications." Visa's proposed construction would render the claim's "identity or qualifications" scope language superfluous because the term credential would already define the scope of the credential type. Moreover, it makes no sense for the construction of a term to limit its scope *more* than the claim language that is intended to limit scope. But that's what Visa proposes by construing "credential" to be limited to "identity or certifications" when the claim language that follows only limits the relevant credentials to "identity or qualifications." A

1   qualification can be based on a certification, but is not limited to certifications. Therefore, the
2   proposed construction is at-odds with the claim language itself.
3       Visa's proposed construction is against the express definition of "credential" and obfuscates
4   the otherwise plain and ordinary meaning of the term. Adopting it would only serve to frustrate the
5   purpose of claim construction. *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed.
6   Cir. 1997) ("Claim construction is a matter of resolution of disputed meanings and technical scope,
7   to clarify and when necessary to explain what the patentee covered by the claims, for use in the
8   determination of infringement. It is not an obligatory exercise in redundancy."). No such
9   construction is necessary or warranted.

### 2. "Scan" / "Scanned"

| Cortex's Construction | Visa's Construction |
|---|---|
| No construction necessary.[2] | "credential" means "form of evidence or documentation that attests to an individual's identity or certifications, such as a driver's license or professional license" |

The term "scan" does not require any construction by the Court, because the term has a plain and ordinary meaning. Yet Visa seeks an improper construction that would fundamentally alter the claims by inserting additional limitations based on a single type of scanning: optical scanning.

This Court should apply the plain and ordinary meaning of "scan." Nowhere in the specification or the claims does the patentee express any intent to redefine the term "scan" to mean anything other than what it usually means. *Thorner*, 669 F.3d at 1365 (holding a patentee must do more than "simply disclose a single embodiment or use a word in the same manner in all embodiments, **the patentee must clearly express an intent to redefine the term.**") (internal

---

[2] Following the submission of the Joint Claim Construction Statement, it became clear that Cortex's proposed construction of "scan" was the plain and ordinary meaning of the term. Therefore, it was unnecessary for Cortex to offer a proposed construction because the patent's use of the term did not deviate from the ordinary meaning understood by a person of ordinary skill in the art.

marks omitted) (emphasis added). Nor has the patentee in any way disavowed the full scope of the term "scan*." Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1306 (Fed. Cir. 2011) ("[T]o disavow claim scope, the specification must contain expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope."). Since the patentee neither redefined "scan" nor disavowed the scope of a claim, the plain and ordinary meaning of the term must apply. *Cf. Sisvel Int'l S.A. v. Sierra Wireless, Inc.*, 81 F.4th 1231, 1236 (Fed. Cir. 2023) ("A claim term's plain and ordinary meaning will not apply '1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution."). In turn, Visa's construction must be rejected.

The extrinsic evidence is consistent with the plain and ordinary meaning of the term "scan." For example, Apple provides developers with "Apple Developer Documentation" for Near-Field Communication (NFC) functionality associated with the Apple AirTag. Exh. 1. In the documentation, Apple repeatedly uses the term "scan" to describe NFC functionality—a non-optical form of "scanning": "iOS apps running on supported devices can use NFC scanning to read data from electronic tags attached to real-world objects. For example, a person can scan a toy to connect it with a video game, a shopper can scan an in-store sign to access coupons, or a retail employee can scan products to track inventory." In fact, Apple *instructs* developers to affirmatively use the term "scan" so that software users do not attempt to "make contact with physical objects." Exh. 1 at 2 ("To scan a tag, an iOS device must simply be within close proximity of the tag. It doesn't need to actually touch the tag. Use terms like *scan* and *hold near* instead of *tap* and *touch* when asking people to scan objects.") (emphasis in original). Similarly, Google and Android also use the term "scan" to cover non-optical scanning, such as NFC functionality. Exh. 2 ("Your device can scan various kinds of NFC tags to receive additional information, such as a web address."); Exh. 3 ("When your users click the NFC button they will be prompted to scan a tag."); *Id*. ("You can write URLs to NFC tags. When those tags are later scanned with an Android device, Android will try to open the URL with an app that can handle it…").

Similarly, general purpose dictionaries also make clear that "scan" is not understood as being limited to light-based optical scanning. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed.

Cir. 2005) "[T]he ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words. In such circumstances, general purpose dictionaries may be helpful."). Merriam-Webster Dictionary defines scanning as including "to examine systematically (as by passing a beam of radiation over or through) in order to obtain data especially for display or storage," and provides radio waves as an example: "radar *scans* the horizon."[3] Nothing about the definition limits the term "scan" to light-based optical scanning. Similarly, the IEEE's "Authoritative Dictionary of IEEE Standards Terms" defines "scan" in the data acquisition context as "The process by which a data acquisition system interrogates remote stations or points of data." Again Visa's "light-sensitive" optical limitation is nowhere to be found.

Visa will likely argue that the specification's discussion of QR code and barcode scanning supports its proposed construction. Visa is correct that the specification mentions those forms of scanning as potential embodiments. But it is wholly improper for Visa to limit the scope of the invention to just the disclosed embodiments. *Sisvel Int'l S.A. v. Sierra Wireless, Inc.*, 81 F.4th 1231, 1236 (Fed. Cir. 2023) ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments.").

Visa's "scan" construction also excludes embodiments expressly noted in the specification. For example, the specification states, "In some embodiments, information for generating an OVER File credential may be automatically added to the OVER File storage client … The information code may be represented data sent by a radio transmission or by an electronic transmission broadcast over a network." '531 Patent at 5:7-15. Visa's construction would remove radio and electronic transmissions from the scope of the claims despite the specification expressly identifying embodiments using radio and electronic transmissions to automatically add OVER File credentials to the storage client. Given the "strong presumption against a claim construction that excludes a disclosed embodiment," Visa's construction should be rejected. *Immunex Corp.*, 977 F.3d at 1220

---

[3] https://www.merriam-webster.com/dictionary/scanning

1  (internal marks omitted); *see also CUPP Computing AS v. Trend Micro Inc.*, 53 F.4th 1376, 1381
2  (Fed. Cir. 2022) ("a claim interpretation that excludes a preferred embodiment from the scope of
3  the claim is rarely, if ever, correct.").

### 3. "Qualifications"

| Cortex's Construction | Visa's Construction |
|---|---|
| No construction necessary. | Indefinite |

Visa erroneously contends that the term "qualifications" is indefinite, a position that "must be proven by clear and convincing evidence." *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017). Visa cannot remotely meet this high standard because the term itself is readily understood by a person of ordinary skill in the art. The meaning of the claim is further reinforced when read against the backdrop of the specification. Far from indefinite, the term "qualifications" has a plain and ordinary meaning that requires no construction.

"[T]he dispositive question in an indefiniteness inquiry is whether the 'claims,' not particular claim terms, 'read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention.'" *Cox Commc'ns, Inc. v. Sprint Commc'n Co. LP*, 838 F.3d 1224, 1231 (Fed. Cir. 2016) (quoting *Nautilus Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014)). Thus, the correct inquiry is not whether "qualifications" on its own is indefinite, but whether "user's identity or qualifications" is indefinite.

Visa will likely argue that the absence of the word "qualifications" from the specification renders the word indefinite. But this argument has been rejected by the Federal Circuit many times, as there is no requirement for claim language to appear in the specification. *One-E-Way, Inc. v. International Trade Commission*, 859 F.3d 1059, 1062, 1064 (Fed. Cir. 2017) (reversing the ITC's determination of indefiniteness despite the fact that the challenged claim term was "not defined in the Asserted Patents" and was not found in the specification); *Primos, Inc. v. Hunter's Specialties, Inc.*, 451 F.3d 841, 848 (Fed. Cir. 2006) (noting that, "although the word 'engaging' is not expressly mentioned in the specification, figures 1 and 3 aid our understanding of that term."); *Bancorp Services, L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1373 (Fed. Cir. 2004) ("Hartford . . .

point[s] out that the term surrender value protected investment credits' is not defined, or even used, anywhere in the specification . . . . The failure to define the term is, of course, not fatal, for if the meaning of the term is fairly inferable from the patent, an express definition is not necessary . . . .") (emphasis added).

Similarly, there is no requirement that the specification expressly define a claim term. *Grace Instrument Indus. v. Chandler Instruments Co.*, 57 F.4th 1001, 1010 (Fed. Cir. 2023) ("Further, to the extent Chandler would require an explicit definition of the term 'enlarged chamber,' that is incorrect."). The relevant inquiry is not whether "qualifications" appears in the specification, but rather whether a POSITA *must have* an express explanation of what the word means in order to understand the claim with reasonable certainty. Here there is no such need because, "user's identity or qualifications" is readily understood by a POSITA.

"The user's identity or qualifications" is a straightforward phrase that any POSITA would know how to define, even without reference to the specification. "The claims themselves provide substantial guidance as to the meaning of particular claim terms." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005); *see also ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003) ("[T]he context of the surrounding words of the claim also must be considered in determining the ordinary and customary meaning of those terms"). In the claims, the phrase is included to modify the scope of a "credential": "the original credential of the user for proving the user's identity or qualifications." In other words, the claim language covers credentials that are used to (1) prove a user's identity or (2) prove a user's qualifications. In that context, a POSITA— even a lay person—would understand "qualifications" to refer to a user's attributes such as their privileges or attained skills, as opposed to their identity. As the Federal Circuit "has acknowledged: 'In some cases, the ordinary meaning of claim language … involves little more than the application of the widely accepted meaning of commonly understood words.'" *Honeywell International Inc. v. Universal Avionics Systems Corp.*, 488 F.3d 982, 992 (Fed. Cir. 2007) (citing *Philips*, 415 F.3d at 1314); *see also Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1373 (Fed. Cir. 2004) ("These are ordinary, simple English words whose meaning is clear and unquestionable. There is no indication that their use in this particular conjunction changes their meaning. They mean exactly

1  what they say."). The plain and ordinary meaning of "the user's identity or qualifications" should
2  control.

3  The specification further reinforces what any POSITA would already know. Consistent with
4  the "credential of a user for proving the user's identity or qualification" claim language, the
5  specification provides the following examples of officially verifiable electronic representation file
6  credentials:

> for example, a government issued identification such as a driver's license, non-driver's identification card, or professional license. The OVER File credentials may also comprise privately issued credentials, such as, for example, employee identification cards, merchant loyalty cards, access cards, insurance credentials, transportation credentials, or any other credential that may be electronically verified by an issuing agency.

11  '531 Patent at 3:66-4:6.

12  The specification provides examples of both identity and qualification credentials. For the
13  former, the specification references credentials such as a driver's license or an identification card.
14  But the specification also identifies numerous forms of credentials that are not meant to verify
15  someone's identity, such as access cards (reflecting the privilege to access certain information or a
16  physical space), insurance credentials (reflecting the entitlement or qualification for certain
17  coverage) and transportation credentials (reflecting the privilege to utilize a form of transportation).
18  Each of those examples reflect a user's qualifications. By reading the specification's examples of
19  types of credentials, a POSITA would readily understand the plain and ordinary meaning of the
20  phrase "the user's identity or qualifications."

21  Visa will likely point to extrinsic dictionary definitions to attempt to manufacture
22  uncertainty where none exists. Visa included the following definitions in the joint claim
23  construction statement: "a level of skill or ability that you have to achieve to be allowed to do
24  something," VISA_00035730–732; "a condition that must be met in order to exercise certain
25  rights," VISA_00035718–725; "a condition or standard that must be complied with (as for the
26  attainment of a privilege)," VISA_00035009–013. Visa's definitions are very similar to one
27  another, reinforcing the propriety of applying the plain and ordinary meaning. To the extent Visa's
28  definition differ at all from one another, the Federal Circuit has confirmed many times that for

indefiniteness, the "test is not merely whether a claim is susceptible to differing interpretations. Such a test would render nearly every claim term indefinite so long as a party could manufacture a plausible construction. In fact, the Supreme Court declined to adopt such a rule in *Nautilus*." *Nevro Corp. v. Bos. Sci. Corp.*, 955 F.3d 35, 41 (Fed. Cir. 2020) (citing *Nautilus*, 572 U.S. at 909); *see also ClearOne, Inc. v. Shure Acquisition Holdings, Inc.*, 35 F.4th 1345, 1351 (Fed. Cir. 2022) ("ClearOne's arguments for indefiniteness merely identify different ways one could interpret self-similar. Just because a term is susceptible to more than one meaning does not render it indefinite."); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1321–22 (Fed. Cir. 2005) ("Dictionaries, by their nature, provide an expansive array of definitions. General dictionaries, in particular, strive to collect all uses of particular words, from the common to the obscure."). Visa's dictionary definitions are not a proper basis to conclude "the user's identity or qualifications" is indefinite.

Ultimately, Visa cannot show the claim as whole is indefinite by clear and convincing evidence. To the contrary, a POSITA would readily understand the plain and ordinary meaning of the phrase "the user's identity or qualifications" to juxtapose credentials that identify who the user is and credentials based on the privileges or attributes of the user. Because the plain and ordinary meaning controls, no construction is necessary.

### 4. Remaining Terms

This Court's Standing Order for Patent Cases states the following with regard to claim construction briefing:

> As an initial matter, the Court will construe only those terms designated by the parties as "most significant" pursuant to Patent L.R. 4-3(c). The claim construction briefs shall address each of those terms **and only those terms**.

Standing Order for Patent Cases at IV(A) (emphasis added).

Accordingly, this claim construction brief addresses only the "terms designated by the parties as 'most significant' pursuant to Patent L.R. 4-3(c)." The remaining disputed terms are presented here for the convenience of the Court.

| Term | Cortex's Construction | Visa's Construction |
|---|---|---|
| "a virtual representation **that has been verified by an issuing agency** to be an official representation [of] the credential"<br><br>('531 Patent claims 1, 15, 21)<br><br>('859 Patent claims 1, 9, 18, 20)<br><br>('973 Patent claims 1, 8, 16)<br><br>"a second virtual representation of the [an/the] original credential **that has been verified by an issuing agency** to be a first official representation of the original credential"<br><br>('854 Patent claims 1, 8, 15)<br><br>"a second virtual representation of the [original] credential **that has been verified by an issuing agency** to be a second official representation of the [original] credential"<br><br>('854 Patent claims 1, 8, 15)<br><br>('859 Patent claims 2, 10, 19, 21)<br><br>('973 Patent claims 2, 9, 17) | No construction necessary | "a [first/second] virtual representation of the [original] credential, *where the virtual representation has been verified by [an/the] issuing agency* to be [an/a] [first/second] official representation of the [original] credential." |
| "wherein the first OVER file is itself a first new credential of the user" /<br><br>"wherein the second OVER file is itself a second new credential over the first OVER file and the original credential" /<br><br>"wherein the first OVER file is itself a first credential of the user" | No construction necessary | Indefinite |

| | | |
|---|---|---|
| ('854 Patent all asserted claims) | | |
| ('854 Patent claims 1, 8) | | |
| ('854 Patent claims 1, 8, 15) | | |
| ('854 Patent claim 16) | | |
| "the OVER file" ('854 Patent claim 16) | No construction necessary | Indefinite |
| "the stored credential" ('531 Patent claim 14) | No construction necessary | Indefinite |

### 5. Conclusion

The Court should adopt Cortex's proposed constructions of the disputed terms.

Dated: June 21, 2024  SUSMAN GODFREY L.L.P.

By: */s/ Kalpana Srinivasan*
Kalpana Srinivasan (CA SBN: 237460)
ksrinivasan@susmangodfrey.com
Davida Brook (CA SBN 275370)
dbrook@susmangodfrey.com
Susman Godfrey L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

Max L. Tribble, Jr. (CA SBN: 326851)
mtribble @susmangodfrey.com
Bryce Barcelo (*pro hac vice*)
bbarcelo@susmangodfrey.com
Thomas V. DelRosairo (CA SBN: 236264)
tdelrosario@susmangodfrey.com
Susman Godfrey L.L.P.
1000 Louisiana, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

Tyler Finn (*pro hac vice*)
tfinn@susmangodfrey.com
Susman Godfrey L.L.P.
One Manhattan West
New York, NY 10001
Telephone: (212) 336-8300
Facsimile: (212) 336-8340

*Attorneys for Plaintiff Cortex MCP, Inc*