Kalpana Srinivasan (CA SBN: 237460)
ksrinivasan@susmangodfrey.com
Davida Brook (CA SBN 275370)
dbrook@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

Max L. Tribble, Jr. (CA SBN: 326851)
mtribble@susmangodfrey.com
Rocco Magni (*pro hac vice*)
rmagni@susmangodfrey.com
Thomas V. DelRosario (CA SBN: 236264)
tdelrosario@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 651-9366
Facsimile: (713) 654-6666

Tyler Finn (*pro hac vice*)
tfinn@susmangodfrey.com
SUSMAN GODFREY L.L.P.
One Manhattan West
New York, New York 10001
Telephone: (212) 336-8300
Facsimile: (212) 336-8340

*Attorneys for Plaintiff Cortex MCP, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| CORTEX MCP, INC., <br><br> Plaintiff, <br><br> vs. <br><br> VISA INC., <br> Defendant. | Case No. 5:23-cv-05720-EJD <br><br> **PLAINTIFF CORTEX MCP, INC.'S CLAIM CONSTRUCTION REPLY BRIEF** <br><br> DATE: September 5, 2024 <br> TIME: 10:00 a.m. <br> PLACE: Courtroom 4 <br> Before: Hon. Edward J. Davila |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 2

   I.   "Credential".......................................................................................................... 2

   II.   "Qualifications"................................................................................................... 5

   III.  "Scan/Scanned".................................................................................................. 7

   IV.  "A Virtual Representation of the Credential That Has Been Verified by an Issuing Agency to Be an Official Representation of the Credential" ........................................................ 10

CONCLUSION ................................................................................................................ 11

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Barbaro Techs., LLC v. Niantic, Inc.*,
  2020 WL 6749367 (N.D. Cal. Feb. 12, 2020) ........................................................................... 5

5

*Budde v. Harley-Davidson, Inc.*,
  250 F.3d 1369 (Fed. Cir. 2001) ................................................................................................. 8

6

*Cox Commc'ns, Inc. v. Sprint Commc'n Co. LP*,
  838 F.3d 1224 (Fed. Cir. 2016) ................................................................................................. 5

7

8

*Goldenberg v. Cytogen, Inc.*,
  373 F.3d 1158 (Fed. Cir. 2004) ................................................................................................. 9

9

*Immunex Corp. v. Sanofi-Aventis U.S. LLC*,
  977 F.3d 1212 (Fed. Cir. 2020) ............................................................................................. 3, 8

10

11

*Interval Licensing LLC v. AOL, Inc.*,
  766 F.3d 1364 (Fed. Cir. 2014) ................................................................................................. 6

12

*IQASR LLC v. Wendt Corp.*,
  825 F. App'x 900 (Fed. Cir. 2020) ............................................................................................ 9

13

14

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ................................................................................................. 8

15

*PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC*,
  815 F.3d 747 (Fed. Cir. 2016) ................................................................................................. 10

16

17

*Sisvel Int'l S.A. v. Sierra Wireless, Inc.*,
  81 F.4th 1231 (Fed. Cir. 2023) ......................................................................................... 1, 2, 7

18

*Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*,
  844 F.3d 1370 (Fed. Cir. 2017) ................................................................................................. 5

19

20

*Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*,
  655 F.3d 1364 (Fed. Cir. 2011) ............................................................................................. 5, 6

21

*U.S. Surgical Corp. v. Ethicon, Inc.*,
  103 F.3d 1554 (Fed. Cir. 1997) ............................................................................................... 11

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Visa proposes constructions where none are needed, as a means to narrow the claims of the Asserted Patents and avoid infringement. But the terms in question are common words—"credential," "qualifications," and "scan"—that the jury can understand without need for instruction from the Court. The intrinsic evidence demonstrates that the patentee neither attempted to redefine these words nor disavowed their full scope. Cortex's opening brief made this clear. Visa offers no response to this argument or to the caselaw that supports it. Because ordinary meaning controls, no construction is necessary.

Visa's constructions run counter to plain meaning of these terms. They are also inconsistent with positions that Visa has taken in IPR proceedings, in which broader constructions benefit Visa's invalidity arguments. Visa's redefinition of "credential" is exemplary of its outcome-oriented approach to construction. Visa distorts the meaning of the word so that it does not encompass credit cards or other payment systems. That construction contradicts the dictionary definition of "credential" and the specification, which in its *first sentence* discusses the "wide-spread demand for monetary payments by digital transactions," and the fact that "currently payment systems are highly fragmented and insecure." '531 Patent at 1:24-27. Visa's indefiniteness argument is similarly flawed, inserting ambiguity into "qualifications" where none exists. The Asserted Patents employ this common word consistent with its ordinary usage: "a credential of the user for proving the user's identity or qualifications." *Id.* at 21:18-19. Visa provides no response to Supreme Court precedent that indefiniteness applies to claims rather than claim terms.

Lastly, Visa's proposal for the Court to construe "scan" ignores black-letter patent law that a claim term's ordinary meaning applies other than in two limited exceptions: 1) if the patentee sets out his own definition or 2) if the patentee "disavows the full scope of a claim term either in the specification or during prosecution." *Sisvel Int'l S.A. v. Sierra Wireless, Inc.*, 81 F.4th 1231, 1236 (Fed. Cir. 2023). Neither exception applies here because there is no evidence that the patentee intended to redefine or narrow "scan" from its ordinary usage, and Visa does not claim otherwise.

The Court should reject Visa's invented constructions and construe all terms according to their plain and ordinary meaning.

1

1

**ARGUMENT**

2

**I.     "Credential"**

3        Visa's construction of "credential" must be rejected because it depends on the insertion of

4  the modifier "certifications," a term that is found nowhere in the claim language, the specification,

5  or the prosecution history. The concept of certification is also incompatible with the exemplar

6  credentials disclosed in the specification and serves no purpose other than to exclude payment

7  credentials like Visa credit cards. Accepting it would require the Court to ignore the modifier that

8  *is actually* in the claim language: "qualifications." Visa's distortion of "credential" deserves no

9  credence.

10       The primary reason to reject Visa's construction is that it cannot be reconciled with the

11 specification, which makes clear that the patented technology is geared towards mobile payments.

12 The first sentence states "[t]he rapid growth and evolution of traditional and electronic commerce

13 markets has resulted in a wide-spread demand for **monetary payments** by digital transactions." '531

14 Patent at 1:23-25 (emphasis added). The second sentence continues, "currently **payment systems**

15 are highly fragmented and insecure, which creates a threat of data compromise and theft during the

16 transfer and use of electronic commerce data." *Id.* at 1:28-30 (emphasis added). This introduction

17 leaves no doubt that the OVER File invention encompasses credentials used in payment

18 transactions. Nothing in the specification or claim language suggests otherwise. Indeed, the

19 specification goes on to clarify that the OVER File network can "carry digital data streams

20 representing various types of information, such as the selection of goods to be purchased, the

21 information for payment of the purchase, or the address for delivery of the goods." *Id.* at 16:45-50.

22 These references would make no sense if, as Visa proposes, "credential" were read to specifically

23 exclude payment platforms.

24       The specification's omission of credit cards from its list of exemplar credentials lends no

25 support to Visa's construction. *See Sisvel*, 81 F.4th at 1236 (cautioning against confining claims to

26 specifically disclosed embodiments). Visa cites no case in which a Court has relied on the omission

27 of a particular embodiment as proof that the patentee intended to exclude that particular

28 embodiment. *Atlas IP, LLC v. Medtronic, Inc.*, 809 F.3d 599, 605 (Fed. Cir. 2015) does not suggest

1    otherwise. In *Atlas IP,* the Court upheld the district court's constructions of "establishing" and
2    "transmitting" because they were consistent with the terms' ordinary definition "that most naturally
3    fit[]" the context of the claim language. *Id.* Here, the intrinsic evidence likewise makes clear that
4    the patentee intended to use "credential" in a broad sense consistent with its ordinary meaning—
5    encompassing any type of document that validates the user's identity or qualifications. The claim
6    language says exactly that. *See* '531 Patent at 21:18-20 ("a credential of a user for proving the
7    user's identity or qualifications"). The examples in the specification demonstrate this breadth:
8    spanning from traditional forms of identification (a driver's license) to "merchant loyalty cards,"
9    "transportation credentials, ***or any other credential that may be electronically verified by an***
10   ***issuing agency***." *Id.* at 3:67-4:6 (emphasis added). This bolded language refutes any imposed
11   limitation on the term credential.

12          Visa's proposed limitation of "certifications" conflicts with the above-cited examples, as its
13   responsive brief makes clear. Resp. at 13. For example, Visa fails to explain how a merchant loyalty
14   card—which is plainly not a credential for proving a user's identity—would be used to prove a
15   user's "certifications." But merchant loyalty cards are commonly (if not exclusively) used for
16   payments, the very embodiment that Visa insists must be excluded. "'[T]here is a strong
17   presumption against a claim construction that excludes a disclosed embodiment.'" *Immunex Corp.*
18   *v. Sanofi-Aventis U.S. LLC*, 977 F.3d 1212, 1220 (Fed. Cir. 2020) (quoting *Nobel Biocare Servs.*
19   *AG v. Instradent USA, Inc*., 903 F.3d 1365, 1381 (Fed. Cir. 2018)).

20          Visa cannot overcome that presumption by citing to the prosecution history. It is true that
21   the patentee added the modifier "for proving the user's identity or qualifications" to "credential"
22   during patent prosecution. The patentee did so to clarify the distinction between a credential like a
23   driver's license or credit card and the "electronic document" in Kang prior art which was akin to a
24   "secure PDF." Dkt. 104-10 at 10-11. As Cortex represented to the examiner, the Kang prior art
25   discusses "obtaining an electronic document and using authentication methods to make sure that
26   the user has authorization to obtain said document, but the electronic document itself is not a
27   credential of a user for proving the user's identity or qualifications." *Id.* at 10. Cortex agrees that
28   *those* amendments are "required elements for the purpose of claim construction." Resp. at 12 (*citing*

*Littelfuse, Inc. v. Mersen USA EP Corp.*, 29 F.4th 1376, 1379-81 (Fed. Cir. 2022)).   But those amendments have nothing to do with "certifications," a term that was never discussed in prosecution. And the amendments are reflected in the existing claim language, making it unnecessary (and redundant) to further construe the term credential. *See* Opening Br. at 6.

This is doubly true because credential is a commonly understood word, both in and outside of the payments world. Although no extrinsic evidence is required to understand credential, Merriam Webster defines "credential" as "something that gives a title to ***credit*** or confidence," or "testimonials or certified documents showing that a person is entitled to ***credit*** or has a right to exercise official power."[1] Visa itself uses the term "stored credential" to describe "information (including, but not limited to, an account number or payment token) that is stored by a merchant or its agent, PF, or SDWO to process future purchases for a cardholder,"[2] contradicting its argument that credit cards cannot prove the "user's… qualification to make a purchase." Resp. at 17.

The 2012 Cortex marketing deck cited by Visa only *confirms* that the OVER File platform encompasses payment credentials. Dkt. 103-3. That deck, which is an introduction to the OVER File technology, begins by noting that Cortex founder Shaunt Sarkissian is a "payment industry veteran" and that the management team has over "35 Years of combined Mobile Commerce and Payment Platform experience." *Id.* at -011. The OVER File technology is then presented in the context of the "Mobile Commerce/Wallet marketplace," citing PayPal, Google, and Visa among the major players. *Id.* at -012. When the deck discusses "secure storage of credentials, with third party verification," i.e., the OVER File, it notes that it is "usable in multiple scenarios – NFC, Bar Code, ect. [sic]." *Id.* at -014. The wallet platform has two main components, an RCD payment platform, a separate method of payment involving an alpha numeric structure, and the OVER File. *Id.* at -014-15. The OVER File is described as a "[s]ecure proprietary file format and platform for the storage and verification of key user/consumer credentials," that is "Part of Cortex Client Side Wallet Application." *Id.* at -020. The deck concludes by disclosing Cortex's execution strategy as

---

[1] https://www.merriam-webster.com/dictionary/credential#dictionary-entry-2.

[2] https://usa.visa.com/dam/VCOM/global/support-legal/documents/stored-credential-transaction-framework-vbs-10-may-17.pdf.

licensing the platform to major players in the marketplace, including Visa. *Id.* at -023. It lends no support to Visa's construction.

Lastly, Visa's IPR petitions demonstrate that the Asserted Patents encompass payment credentials. The '531 Petition cites as alleged proof of invalidity prior art that is specific to the payment space. Consistent with that approach, Visa treats "credential" as equivalent to a payment card throughout the petition. *See* Ex. 1, '531 Petition at 19 ("*information associated with a credential* (e.g., information about the user's credit cards."); *id.* at 6 ("In tokenization, a digital 'token' is used as a substitute for a credential such as a credit card." The petition's description of the ''531 patent also recognizes a user will present an OVER File to a "merchant," a term that applies to the payment context. *See id.* at 3 ("The user presents the OVER file to a third party (e.g., a merchant) as though it were a credential, and, based on a scan associated with the OVER file, the third party sends a message to the OVER file engine seeking verification of the OVER file.").

## II.     "Qualifications"

Visa fails to sustain its burden of proving by "clear and convincing evidence" that the use of "qualifications" renders any of the Asserted Claims indefinite. *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017). The key inquiry is whether the "claims"—not particular claim terms—"inform those skilled in the art about the scope of the invention with reasonable certainty." *Id; accord Cox Commc'ns, Inc. v. Sprint Commc'n Co. LP*, 838 F.3d 1224, 1231 (Fed. Cir. 2016); *Barbaro Techs., LLC v. Niantic, Inc.*, 2020 WL 6749367, at *2 (N.D. Cal. Feb. 12, 2020), *aff'd*, 852 F. App'x 544 (Fed. Cir. 2021) ("The dispositive question in an indefiniteness inquiry is whether the claims, not particular claim terms fail the *Nautilus* test." (cleaned up)). Only claims that are "not amenable to construction" or "insolubly ambiguous" are indefinite. *Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 655 F.3d 1364, 1373 (Fed. Cir. 2011). Although Visa appears to recognize these principles, it focuses its arguments exclusively on the term "qualifications" rather than the claims as a whole. The assertion of indefiniteness should be rejected for that reason alone.

Visa's argument also fails on the merits because the claim language makes the scope of the invention clear. Claim 1 of the '531 Patent discloses the storage of "information associated with a credential of a user for proving the user's identity or qualifications." '531 Patent at 21:15-19. The

patent thus makes clear that a credential may prove one of two attributes of a user: her identity or her qualifications. The specification provides several examples of credentials that establish a user's qualifications (rather than her identity): "merchant loyalty cards, access cards, insurance credentials, [and] transportation credentials." *Id.* at 4:4-6. As disclosed in Cortex's opening brief, these types of credentials speak to "a user's attributes such as their privileges or attained skills, as opposed to their identity." Opening Br. at 11. Insurance credentials, for example, attest that the cardholder is entitled to (or qualified for) reimbursement for medical care. An access card demonstrates the entitlement to access a particular location. Even Visa's examples of "transportation credentials," namely transit passes and train tickets, are consistent with this definition because they show that the user has attained the privilege to travel (by virtue of having purchased a ticket). Resp. at 19. None of these examples, however, accord with Visa's proposed construction of credential and its reliance on the term "certifications."

Qualifications is also a single (and commonly understood) word that enjoys an agreed-upon dictionary definition,[3] unlike the terms deemed to be indefinite in Visa's cases. *See Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1373 (Fed. Cir. 2014) (describing "unobtrusive manner" as a "facially subjective claim term"); *Star Sci., Inc*, 655 F.3d at 1380 (finding that term "controlled environment" is "not insolubly ambiguous and is not indefinite"). Because the objective boundaries of the term qualification are inherent in its plain meaning, there is no need for extrinsic evidence to construe it.

Visa's citation to prosecution history does not change that fact. In the cited amendment, the patentee did not rely on the term "qualifications" (or the term "credentials") to distinguish the OVER File from the prior art disclosed by Ohara. The patentee instead noted that Ohara does not discuss any "virtual representation of the credential that has been verified by an issuing agency to be an official representation of the credential." Dkt. 104-19 at 16-17. Unlike the Asserted Patents, Ohara disclosed an invention for authenticating users to gain permission to generate an electronic

---

[3] Merriam Webster, for example, defines the term "qualification" as "a condition or standard that must be complied with (as for the attainment of a privilege)." *See* https://www.merriam-webster.com/dictionary/qualification.

6

document, without reference to any "credential," let alone a "visual representation of the credential." *Id.* The amendment has nothing to do with "qualifications."

Lastly, Visa's position on "qualifications" is once again inconsistent with its position in IPR proceedings. Visa's petition for review of the '973 Patent, for example, expressly argues that "qualifications" encompass credit-card eligibility: "Oborne teaches that a user 'desir[ing] to utilize a card' may use 'tokens in lieu of payment information,' using the token to prove identity to a merchant as a stand-in for credit card or account information (thus, *for proving the user's identity or qualifications*)." Ex. 2, '973 Petition at 18.

## III.    "Scan/Scanned"

Visa provides no explanation why the Court should depart from the commonly understood meaning of "scan." Instead, Visa proposes a construction that commits the same error identified in *Sisvel*: relying on a specific embodiment disclosed in the specification to limit the meaning of a claim term. In *Sisvel,* the Federal Circuit rejected the Patent Trial and Appeal Board's reliance on a specific embodiment of the invention to narrowly construe "connection rejection message," which it characterized as "broad" claim language. 81 F.4th at 1236. The Court held instead that a person of ordinary skill in the art would not impute the limitation offered by the defendant. *Id.* So too here. Visa relies on references in the specification to "a quick-response (QR) Code, Standard one dimensional bar code, [or] alpha numeric bar code (for example, Type-128)" and associated figures depicting those embodiments. *See* Resp. at 10; '531 Patent at 5:11-15, Fig. 8. Visa also cites several other examples from the specification in which an "information code" is displayed before "being scanned." Resp. at 4-5. But these references to optical scanning are merely examples of various potential embodiments of information codes that are scanned.

The specification also discloses *other* embodiments of "information codes" that cannot be reconciled with Visa's proposed construction, namely "an ***information code*** in the form of a networked or radio transmission, such as, for example, a Near Field Communication (NFC) or Bluetooth, or in the form of sensor information, such as, for example, a bump." '531 Patent at 12:7-15; *see also id.* at 5:15-17 ("The ***information code*** may be represented data sent by a radio transmission or by an electronic transmission broadcast over a network."). Throughout the

specification, the verb "scan" is used to describe the process of reading an "information code." *See id.* at 5:9-11 ("information necessary for the generation of an OVER File credential may be entered by *scanning an information code*."); *id.* at 5:29-31 ("The OVER File storage client 4 may generate a *information code* on the user device for *scanning* by the third party."); *id.* at 5: 39-42 ("The third party device may execute an application, such as the OVER File third party client 6, for *scanning the information code* and contacting an OVER File generation and verification engine 8."); *id.* at 6:66-7:1 ("As another example, if a user provides a *information code* to a third party for *scanning* and generation of a credential…."); *id.* at 11:29-32 ("After selecting the scan to add button 530, the scanning function of a user device may be activated to allow the user to *scan an information code* provided by an issuing agency."). Visa's attempts to explain away these references relies on a manufactured distinction between "scannable" and non-scannable information codes that exists nowhere in the specification. Resp. at 7. And that distinction cannot explain the specification's disclosure of information codes that cannot be "scanned" within the meaning of Visa's construction.

Considering "the specification as a whole," "scan" must be read to encompass *all* of the various disclosed embodiments of information code, not just those cherrypicked by Visa. *See Budde v. Harley-Davidson, Inc.*, 250 F.3d 1369, 1379-80 (Fed. Cir. 2001). Because Visa's narrow construction of scan improperly ignores the other information codes disclosed in the specification, it would improperly "render[] the patent internally [in]consistent." *Id.* Visa makes no attempt to reconcile its construction with the specifications' citations of Near-Field Communication or Bluetooth as potential embodiments. The incompatibility with a disclosed embodiment creates a "strong presumption against [Visa's] claim construction." *Immunex Corp.*, 977 F.3d at 1220 (cleaned up).

This presumption cannot be overcome by Cortex's clarification in *subsequent patents* that the OVER File platform applies to Near-Field Communications. Courts should look only to other claims of the "patent in question" as sources for the meaning of claim term. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005). Terms from the '859 Patent, which was issued in 2020, cannot be used to construe claims from the '531 or '854 Parents, which were issued in 2016 and

2018, respectively. That is because the subsequently filed patent was not incorporated by reference during the prosecution of earlier-filed patents. *See Goldenberg v. Cytogen, Inc.*, 373 F.3d 1158, 1168 (Fed. Cir. 2004) (finding that district court erred in relying on "new-matter content" from subsequent patent to construe claims of earlier patent). In any case, Visa's reference to the '859 Patent cannot explain away the earlier '531 Patent's reference to NFC and Bluetooth communications.

Visa's proposal to limit "scan" to optical scanning finds no support in the claim language either. The '531 Patent uses scan broadly to refer to data generated by the process of scanning, whatever form that scanning may take. Claim 1 makes this clear. *See* '531 Patent at 21:33-36 ("a verifying request to verify that the OVER file transmitted to the user authenticates the user based on a ***scan*** associated with the OVER file"); *id.* at 21:37-39 ("verifying that the ***scan*** associated with the OVER file corresponds with the information associated with the credential of the user that is stored in the OVER engine"); *id.* at 21:42-46 ("an authentication message comprising an indication of whether the scan associated with the OVER file on the device of the user corresponds to the information associated with the credential of the user that is stored in the OVER engine."). Nothing in this language suggests that the claims "require a 'scan' to be in image format, and therefore, capable of being 'read using a light sensitive device.'" Resp. at 6. Considering the specification's disclosure of networked or radio transmission—including specific references to Bluetooth or NFC—there is no support for reading a limitation of one type of scanning into the patent.

Visa's narrowing of scan does not accord with the generally understood meaning of the term. Scan is commonly used to describe radio communications, as in a radar or police scanner. As established in Cortex's opening brief, the term "scan" is commonly used in the context of Near-Field Communication protocols, consistent with the specification. That these examples relate to specific products released after Cortex's 2013 patent application does not change that fact. Visa provides no contrary evidence. And the law it cites is inapposite. Unlike *IQASR LLC v. Wendt Corp.*, 825 F. App'x 900, 903 (Fed. Cir. 2020), which declined to consider an email exchange that post-dated the issuance of the patent by five years to establish that the term "magnetic fuzz" had

9

*any* commonly understood meaning, neither party disputes that "scan" is a commonly understood term in the world of digital payments.

Visa's dictionary-definition evidence should also be disregarded for at least two reasons. *First,* Visa selectively cites dictionary definitions that accord with its construction while ignoring those that do not, including those cited in Cortex's brief. *Second,* they contradict the specification. As Visa itself recognizes, the fact that a term "has multiple dictionary meanings does not mean that all of these meanings are reasonable interpretations in light of [the] specification." *PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC*, 815 F.3d 747, 752 (Fed. Cir. 2016).

Lastly, Visa's construction is inconsistent with the position it has taken in pending IPR proceedings. In its '531 Petition, Visa "applies an interpretation of 'scan' that encompasses an optical scan (as addressed in Grounds 3-6), while also encompassing an NFC interaction (as addressed in Grounds 1-2 and asserted in the complaint)." Ex. 1 at 14. Visa's shifting positions shed doubt on the credibility of its proposed construction. By contrast, Cortex's evolving claim construction position—from a defined term to the plain and ordinary meaning—is entirely consistent with this Court's Standing Order for Patent Cases, which "encourages the continuing negotiation of mutually agreeable constructions even during the briefing process." Standing Order for Patent Cases at IV(E). Unlike Visa, the substance of Cortex's construction of the term "scan"— as incorporating various types of communication protocols—has not changed. Cortex merely asserts that the common and ordinary meaning of the term provides a more faithful reading than any construction proposed by the parties.

## IV.    "A Virtual Representation of the Credential That Has Been Verified by an Issuing Agency to Be an Official Representation of the Credential"

Visa presses for a construction of the term "virtual representation of the credential that has been verified by an issuing agency to be an official representation [of] the credential," but provides no reason why it should be exempted from this Court's Standing Order for Patent Cases, which states that the Court will construe only those terms that the parties designated as "most significant." Standing Order for Patent Cases at IV(A). Visa does not explain why it failed to designate the term as significant in the Joint Claim Construction Statement that was filed *after* Cortex's Preliminary

10

1   Response to the IPR proceedings which Visa asserts made the term's importance "evident".

2   *Compare* Dkt. 104-11 (IPR brief filed on May 6, 2024) *with* Dkt. 89 (Claim Construction Statement

3   filed on May 7, 2024). And Cortex did not even propose a construction of "virtual representation"—

4   or any other terms—in the IPR proceedings. *See* Dkt. 104-11 at 23. It was Visa who requested a

5   construction of the term on January 25, 2024, months before the parties exchanged preliminary

6   claim constructions in this litigation. *Id.* Yet Visa waited months before disclosing the alleged

7   significance of the term to the instant case.

8       Visa is also incorrect to describe the construction of this term as "case dispositive," Resp.

9   at 22, based on the pending IPR petitions. That argument mischaracterizes Cortex's arguments in

10  those proceedings. Cortex asserts that the '992 Oborne prior art does not disclose any verification

11  by an issuing agency because it "says nothing about a bank or independent agency that issued the

12  credential verifying the token." *Id.* at 24. The argument depends in no way on any construction of

13  "virtual representation."

14      Indeed, Cortex agrees with the substance of Visa's reading of the claim language, namely

15  that it "requires that the issuing agency has verified the '**virtual representation**' (and not the

16  'credential') to be an 'official representation of the credential.'" Resp. at 21. The issuing agency

17  must verify that the OVER File (or token) corresponds to a valid credential. That is the only

18  reasonable way to read the claim language and that is why no construction is necessary. Visa's

19  construction does nothing more than repeat terms that are found elsewhere in the claim language.

20  Adopting it would only confuse the jury by forcing them to needlessly refer back to the Court's

21  instructions. *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim

22  construction is a matter of resolution of disputed meanings and technical scope …. not an obligatory

23  exercise in redundancy.")

24      Because Visa's construction is procedurally deficient and substantively unnecessary, it

25  should be rejected.

26                              **CONCLUSION**

27      For the foregoing reasons, the Court should adopt Cortex's proposed constructions of all

28  disputed terms.

1

2 Dated: July 19, 2024                    SUSMAN GODFREY L.L.P.

3
                                         By: */s/ Kalpana Srinivasan*
4
                                         Kalpana Srinivasan (CA SBN: 237460)
5                                        ksrinivasan@susmangodfrey.com
                                         Davida Brook (CA SBN 275370)
6                                        dbrook@susmangodfrey.com
                                         SUSMAN GODFREY L.L.P.
7                                        1900 Avenue of the Stars, Suite 1400
                                         Los Angeles, California 90067-6029
8                                        Telephone: (310) 789-3100
                                         Facsimile: (310) 789-3150
9
                                         Max L. Tribble, Jr. (CA SBN: 326851)
10                                       mtribble @susmangodfrey.com
                                         Rocco Magni (*pro hac vice*)
11                                       rmagni@susmangodfrey.com
                                         Thomas V. DelRosario (CA SBN: 236264)
12                                       tdelrosario@susmangodfrey.com
                                         SUSMAN GODFREY L.L.P.
13                                       1000 Louisiana, Suite 5100
                                         Houston, Texas 77002-5096
14                                       Telephone: (713) 651-9366
                                         Facsimile: (713) 654-6666
15
                                         Tyler Finn (*pro hac vice*)
16                                       tfinn@susmangodfrey.com
                                         SUSMAN GODFREY L.L.P.
17                                       One Manhattan West
                                         New York, New York 10001
18                                       Telephone: (212) 336-8300
                                         Facsimile: (212) 336-8340
19
                                         *Attorneys for Plaintiff Cortex MCP, Inc*
20

21

22

23

24

25

26

27

28